B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS HUNTLEY AVENUE, LLC | DEFENDANTS AXOS FINANCIAL, INC., Delaware corporation; AXOS BANK, a banking subsidiary of AXOS FINANCIAL, INC.; CLI FUND 2, LLC; a California limited liability company; A2 CAPITAL, LLC, a California limited liability company |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) Matthew D. Resnik (Bar No. 182562) RHM LAW LLP 17609 Ventura Blvd., Ste. 314, Encino, CA 91316 Tel.  (818)285-0100 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only) ☑Debtor    □ U.S. Trustee/Bankruptcy Admin □ Creditor    □ Other □ Trustee | **PARTY** (Check One Box Only) □ Debtor    □ U.S. Trustee/Bankruptcy Admin □ Creditor    □ Other □ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
(1) DECLARATORY RELIEF; (2) VIOLATION OF BUSINESS AND PROFESSIONS CODE §17200, et seq.;  (3) ACCOUNTING; AND (4) OBJECTION TO CLAIM PURSUANT TO 11 U.S.C. §502

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
□ 11-Recovery of money/property - §542 turnover of property
□ 12-Recovery of money/property - §547 preference
□ 13-Recovery of money/property - §548 fraudulent transfer
□ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
□ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
□ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
□ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
□ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(h) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
☑ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
□ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
□ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought
Accounting of all funds, expenses and transactions related to plaintiff;Judgment and/or Order Disallowing any claims by Defendants; and Plaintiff's actual damages and attorney's fees.

**B1040 (FORM 1040) (12/24)**

| **BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES** | | |
|---|---|---|
| NAME OF DEBTOR<br>HUNTLEY AVENUE, LLC | BANKRUPTCY CASE NO.<br>2:25-BK-21645-BR | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Los Angeles | NAME OF JUDGE<br>Barry Russell |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Matthew D. Resnik | | |
| DATE<br>April 30, 2026 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Matthew D. Resnik | |

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF).  (CM/ECF captures the information on Form 1040 as part of the filing process.)  When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party**.  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Matthew D. Resnik (Bar. No. 182562)
Lesley B. Davis (Bar No. 188731)
**RHM LAW LLP**
17609 Ventura Blvd, Suite 314
Encino, California 91316
**Telephone**: (818) 285-0100
**Facsimile:** (818) 855-7013
matt@rhmfirm.com
roksana@rhmfirm.com
lesley@rhmfirm.com

*Attorneys for Plaintiff/Debtor*
HUNTLEY AVENUE, LLC

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.: 2:25-bk-21645-BR |
| | Adversary Case No. |
| HUNTLEY AVENUE, LLC, | Chapter 11 |
| Debtor and Debtor In Possession. | **COMPLAINT FOR:** |
| HUNTLEY AVENUE, LLC, | **(1) DECLARATORY RELIEF;** |
| Plaintiff, | **(2) VIOLATION OF BUSINESS AND PROFESSIONS CODE §17200, et seq.;** |
| vs. | |
| | **(3) ACCOUNTING; AND** |
| AXOS FINANCIAL, INC., a Delaware corporation; AXOS BANK, a banking subsidiary of AXOS FINANCIAL, INC.; CLI FUND 2, LLC; a California limited liability company; A2 CAPITAL, LLC, a California limited liability company, | **(4) OBJECTION TO CLAIM PURSUANT TO 11 U.S.C. §502** |
| Defendants. | |

Plaintiff Huntley Avenue, LLC, the debtor and debtor in possession in the above-captioned bankruptcy case and the plaintiff (the "Debtor" or "Plaintiff") herein states by way of this complaint against defendants Axos Financial, Inc., Axos Bank, CLI Fund 2, LLC, and A2 Capital, LLC, does hereby complain and allege as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 151,

-1-

HUNTLEY000011

**COMPLAINT**

157, 1334(a) and the Order of Reference from the United States District Court for the Central District of California.

2. This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

3. This action is a proceeding arising in and /or related to the bankruptcy case of *In re Huntley Avenue, LLC*, bearing Case No. 2:25-bk-21645-BR (the "Bankruptcy Case"), which is a case under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court" or "Court").

4. On December 29, 2025, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. (the "Petition Date").

5. Regardless of whether this action is ultimately deemed core or non-core, the Plaintiff consents to the entry of a final Order and/or the entry of a final Judgment by the Bankruptcy Court.

6. Venue is proper with this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

7. Plaintiff, Huntley Avenue, LLC, a California limited liability company, is the Debtor and Debtor in Possession in the Bankruptcy Case.

8. Axos Financial, Inc. ("AFI") is a Delaware corporation registered to do business and is doing business in California since September 12, 2018. Its business address is 9205 West Russell Road, Suite 400, Las Vegas, Nevada 89148.

9. Axos Bank ("Axos") formerly known as BofI Federal Bank is currently a banking subsidiary of Axos Financial, Inc. and is doing business in California since July 4, 2000.  Its business address is 4350 La Jolla Village Drive, Suite 140, San Diego, California 92122.

10. CLI Fund 2, LLC ("CLI") is a California limited liability company registered to do business and is doing business in California since August 23, 2024.  Its business address is 2625 Alcatraz Avenue #513, Berkeley, California 94705.

11. A2 Capital, LLC ("A2") is a California limited liability company registered to do business and is doing business in California since September 25, 2017.  Its business address is 2625 Alcatraz Avenue #214, Berkeley, California 94705.

/ / /

HUNTLEY000012

**COMPLAINT**

## FACTUAL ALLEGATIONS

12. Plaintiff is the owner of the property located at 4338-4342 Huntley Avenue, Culver City, California 90230 (the "Property").

13. On  or about December 2019, Plaintiff purchased the Property.

14. In 2022, the Plaintiff refinanced the mortgage on the Property, obtaining a loan from Defendant Axos in the amount of $1,600,000.00.  The borrower of the loan is the Plaintiff and the Plaintiff's principal Avraham Farzan (" Mr. Farzan") is a guarantor of the loan.

15. Plaintiff tendered timely payments to Axos.

16. In or around March 2024, Plaintiff received an annual escrow account disclosure statement account history, which reflected that Axos had overbilled Plaintiff approximately $32,850.49 to fund escrow accounts with the associated loan, which Plaintiff had paid.

17. Plaintiff's principal Farzan made repeated requests to Axos for the escrow refund, but to no avail.  In fact, Plaintiff did not receive this escrow overage check until in or around June of 2025.

18. In September 2024, the loan transferred to Defendants CLI and A2.

19. Plaintiff's principal Mr. Farzan did not receive proper notice of the loan transfer from CLI and/or A2 and continued to send payments to Axos.

20. Moreover, since Axos did not timely send Plaintiff the $32,850.49 check, the loan was boarded by CLI and A2 with an incorrect escrow balance of $34,004.16, when it should have been $66,859.65. This resulted in Defendants CLI and A2 misapplying Plaintiff's payments.

21. On September 28, 2024, Plaintiff's September 2024 payment in the amount of $58,631.87, check no. 19748, cured the balances owed for June through October 2024, bringing the loan current.  The Plaintiff's loan analysis is attached hereto as **Exhibit "1"** and check no. 19748 is attached hereto as **Exhibit "2."**  CLI, however, applied a different payment in the amount of the $58,329.44.  A2's processed payment history dated March 14, 2025, is attached hereto as **Exhibit "3."**  Plaintiff is informed and believes there was no payment made in the amount of $58,329.44. CLI's misapplication of the incorrect payment amount resulted in a credit to the Plaintiff in the amount of  $302.43.

22. On November 3, 2024, Plaintiff paid $13,000 to CLI/A2 who incorrectly applied the amount and once again owed Plaintiff a credit of $2150.00.  This payment brought the interest current

**COMPLAINT**

through November.  A2's statement indicated that the regular payment due was $10,333.33; at no time did A2's statement indicate that the regular monthly payment included an escrow payment amount to be paid.

23.     On November 21, 2024, A2 provided a statement to Plaintiff which reflected the regular payment due was $10,333.33, which is only an interest amount.   The November Statement is attached hereto as **Exhibit "4."**   Additionally, the statement shows that A2 applied $2354.58 to the escrow account from the November 3, 2024, payment, which is an incorrect application of the funds received by CLI and A2 in accordance with their monthly statement.  CLI and A2 not only misrepresented the amount due but misapplied the Plaintiff's payments in accordance with their monthly statement.

24.     On January 10, 2025, A2 issued a statement to Plaintiff, which once again indicated that the regular payment due was $10,333.33.   A2's January statement was a duplication of its November statement as <u>A2 failed to change the due date</u>. The January Statement is attached hereto as **Exhibit "5."**   These two flawed and incorrect statements were the **only** monthly statements issued to the Plaintiff.

25.     Thereafter, Mr. Farzan on behalf of Plaintiff tendered three cashier's checks to Defendants CLI and A2; $10,300 on January 15, 2025; $10,200 on February 15, 2025; and $4,700 on February 24, 2025.

26.     CLI returned the January check to Mr. Farzan because it was incorrectly considered a partial payment. Yet the January check in the amount of $10,300 was not a partial payment; as there was a credit in the amount of $2,452.43 from the November payments.  Additionally, the January statement showed a payment due of $10,333.33.  The A2 January 28, 2025, letter returning the payment is attached as **Exhibit "6."**

27.     The February 24 payment was returned on March 11, 2025, and the February 5, 2025 payment on September 3, 2025.  Defendants CLI and A2 never applied any of these payments to Plaintiff's account or offered any reason for the return payments.

28.     On April 11, 2025, Mr. Farzan wired $34,000 to A2, and received the funds returned the same day with a message "unable to apply due to partial payment." The Hamni Bank wire transfer is attached hereto as **Exhibit "7."**

29.     On March 14, 2025, CLI issued a payoff demand, accelerating the entire loan and on

**COMPLAINT**

April 25, 2025, recorded a Notice of Default, alleging $66,916.37 as the outstanding amount due under the loan documents.

30.     On April 29, 2025, Plaintiff is informed and believes that CLI and A2 claimed the Plaintiff never made the required monthly interest payments in December 2024, January, February, March or April of 2025. Additionally, CLI and A2 represented on April 29, 2025, that the October 2024 payment was properly applied.  The April 29, 2025, email of CLI and A2 counsel is attached hereto as **Exhibit "8."**   A review of the **Exhibit "1"** reflects a proper accounting of the funds and the misapplication of the incorrect amounts received from the Plaintiff by CLI/A2.

31.     On April 30, 2025, Defendants CLI and A2 sent Plaintiff a reinstatement quote totaling $89,154.37, which included $4,138 in "foreclosure fees" together with a $15,000.00 "estimated" attorney fee reserve, both without supporting documentation.

32.     In June 2025, when Plaintiff finally received the escrow refund for the overage, the account was already in a purported state of delinquency, due to the addition of improper interest, fees, and attorney's fees.  Therefore, while the account should have been current, Plaintiff was in active foreclosure.

33.     On October 20, 2025, Defendants CLI and A2 caused a Notice of Trustee's Sale to be recorded for the Property.

34.     This action arises from Defendants' systematic misapplication and rejection of Plaintiff's loan payments, coupled with the use of incorrect escrow accounting following a servicing transfer, which together created a false default. Defendants then relied on that manufactured default to impose default interest, late fees, and foreclosure-related charges, and to accelerate the loan, despite Plaintiff having tendered payments sufficient to maintain the loan in a current status.

## FIRST CLAIM FOR RELIEF
### (Declaratory Relief against All Defendants)

35.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 34,  inclusive,  of this Complaint as if set forth fully herein.

36.     Plaintiff contends that Defendants have improperly calculated, applied, and accounted for loan payments, wrongfully rejected valid payments, and assessed charges not permitted under the loan documents or applicable law.

37.     Defendants contend that Plaintiff is in default under the loan and that additional sums,

-5-                                      HUNTLEY000015

**COMPLAINT**

including default interest, fees, and foreclosure-related charges, are owed.

38.   An actual and justifiable controversy exists regarding (a) whether a default occurred, (b) the correct amount of indebtedness, if any, (c) the enforceability of fees, costs, and interest assessed, and (d) the validity of Defendants' acceleration of the loan.

39.   Plaintiff seeks a judicial determination that (i) no default occurred, (ii) Defendants' assessment of default-related charges is improper, and (iii) the loan is not subject to acceleration based on the alleged default.

### SECOND CLAIM FOR RELIEF

**(Violation of Business and Professions Code Section 17200 *et seq.* against All Defendants )**

40.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 39, inclusive, of this Complaint as if set forth fully herein.

41.   Defendants engaged in unlawful, unfair, and fraudulent business practices within the meaning of California Business and Professions Code § 17200, including but not limited to:

(a) misrepresenting the amount due under the loan;

(b) misapplying borrower payments;

(c) rejecting valid loan payments without contractual or legal basis;

(d) assessing default interest, late fees, and foreclosure-related charges based on a manufactured default; and

(e) failing to provide accurate loan statements.

42.   These acts violate, inter alia, California common law governing tender and contract performance, and constitute unfair practices because they offend established public policy and impose substantial harm on borrowers that outweighs any utility of Defendants' conduct.

43.   Plaintiff has been severely damaged by Defendants' unlawful, unfair, deceptive and wrongful conduct.

44.   Plaintiff is entitled to judgment against Defendants in an amount equal to the damages Defendants caused Plaintiff.

### THIRD  CLAIM FOR RELIEF

**(Accounting Against Defendants CLI and A2)**

45.   Plaintiff refers to and incorporates herein each and every allegation in Paragraphs 1

-6-                                                                HUNTLEY000016

**COMPLAINT**

through 44, inclusive, of this Complaint as if set forth fully herein.

46. At all relevant times, Defendants received, controlled, managed, and/or possessed money, property, proceeds, accounts, and credits in which Plaintiff has an interest.

47. A relationship existed between Plaintiff and Defendants requiring an accounting. There exist several loan transactions between Plaintiff and Defendants, pursuant to which money was tendered from Plaintiff for the loan, without record or statements reflecting application of those payments, including, without limitation, where Defendants' accounting reflects inconsistencies, misapplied payments, and charges that cannot be reconciled based on the information provided to Plaintiff

48. Defendants maintained the books and records relating to the loan transactions involving Plaintiff and Plaintiff's assets, funds or interests.

49. Plaintiff is informed and believes, and thereon alleges, that Defendants have failed and refused to provide a complete and accurate account of all monies received, paid, transferred, retained, charged, or otherwise handled on behalf of Plaintiff.

50. The account between Plaintiff and the Defendants are complicated and cannot be ascertained without an accounting from CLI and/or A2 because the relevant records and information are primarily within Defendants' possession, custody and control.

51. Plaintiff cannot determine the precise amount owed without an examination of Defendants' books and records.

52. Plaintiff has demanded an accounting from Defendants, but Defendants have failed and refused to provide a full and complete accounting.

53. As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged in an amount according to proof at trial.

## FOURTH CLAIM FOR RELIEF

### (Objection to Claim of CLI Pursuant to 11 U.S.C. § 502)

54. Plaintiff refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 53, inclusive, of this Complaint as though fully set forth herein.

55. On or about April 28, 2026, Defendant CLI filed Proof of Claim No. 3 (the "CLI Claim") in the Debtor's bankruptcy case, asserting a secured claim in the approximate amount of

-7-

HUNTLEY000017

**COMPLAINT**

$1,947,169.68, together with additional amounts for interest, fees, costs, and other charges. The CLI Claim is attached hereto as **Exhibit "9."**

56. The CLI Claim is not entitled to prima facie validity pursuant to Federal Rule of Bankruptcy Procedure 3001 because it does not accurately reflect the Debtor's payment history, includes amounts that were never properly incurred, and is based on a materially defective and incomplete accounting.

57. The Debtor tendered payments sufficient to maintain the loan in a current status, including, but not limited to, payments made in or about September 2024 which cured all amounts then due, and subsequent payments tendered in January, February, and April 2025. As alleged herein, Defendants CLI A2 improperly rejected, returned, or failed to apply such payments, often characterizing them as "partial payments" without basis.

58. A creditor may not refuse proper tender and thereafter manufacture a default. The alleged default underlying the CLI Claim was caused by Defendants' own conduct, including the rejection and misapplication of payments, and therefore is invalid and unenforceable and therefore cannot serve as the basis for an allowed claim in bankruptcy.

59. The CLI Claim improperly includes amounts for default interest, late fees, foreclosure-related charges, attorneys' fees, and other costs that are predicated on an invalid default and/or are unsupported by adequate documentation. Such amounts are not enforceable against the Debtor under applicable nonbankruptcy law.

60. The CLI Claim is further based on a materially inaccurate loan accounting. As alleged herein, prior to the transfer of the loan, Axos Bank overcharged the Debtor's escrow account and failed to timely refund such overage. Upon transfer, Defendants CLI and A2 boarded the loan with incorrect escrow figures, resulting in misapplication of payments and the artificial creation of delinquency.

61. Because the CLI Claim is derived from an accounting infected by errors, misapplied payments, and improper servicing practices, the amount asserted is unreliable and overstated.

62. To the extent the CLI Claim includes unmatured interest, default interest, or interest arising from an improper acceleration of the loan, such amounts must be disallowed pursuant to 11 U.S.C. § 502(b)(2).

63. Pursuant to 11 U.S.C. § 502(b)(1), the CLI Claim must be disallowed to the extent it is unenforceable against the Debtor under applicable law, including but not limited to amounts arising from an invalid default, improperly assessed fees, and inaccurate accounting.

HUNTLEY000018

**COMPLAINT**

64.    Additionally, pursuant to 11 U.S.C. § 502(d), any claim asserted by CLI and/or its assignees must be disallowed unless and until Defendants have accounted for and returned any amounts improperly collected or otherwise resolved the disputes regarding the loan and payment history.

65.    The Debtor cannot determine the precise amount, if any, owed to CLI without a full and complete accounting, as the relevant records and information are within Defendants' possession, custody, and control.

66.    Accordingly, the CLI Claim should be disallowed in its entirety or, alternatively, reduced to the extent the Court determines is supported by competent evidence following a full accounting.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Debtor respectfully requests that this Court enter a judgment in its favor and grant the following relief:

1.    On the First Claim for Relief, for a declaration of rights of the parties relative to the loan transaction, and for declaration that the Defendants' acts, omissions, conduct as alleged herein are wrongful, invalid, unenforceable, and/or in breach of applicable agreements;

2.    On the Second Claim for Relief, for a judgment against Defendants in the amount of Plaintiff's actual damages.

3.    On the Third Claim for Relief, for a full, complete and accurate accounting of all funds, expenses and transactions related to Plaintiff;

4.    On the Fourth Claim for Relief, for a judgment and/or order disallowing any claim(s) that Defendants may assert or has asserted against Debtor's estate under 11 U.S.C. §502 (b) and (d);

5.    On all Claims for Relief, for attorney's fees as permitted by law;

/ / /

/ / /

/ / /

/ / /

-9-     HUNTLEY000019

**COMPLAINT**

6.    On all Claims for Relief, for costs of suit as permitted by applicable law; and

7.    Such other relief as the Court deems just and proper.

Dated: April 30, 2026                                      **RHM LAW LLP**

BY: See next page
                                          Matthew D. Resnik
                                          Lesley B. Davis
                                          Attorneys for Plaintiff,
                                          HUNTLEY AVENUE, LLC

-10-

HUNTLEY000020

**COMPLAINT**

6.  On all Claims for Relief, for costs of suit as permitted by applicable law; and

7.  Such other relief as the Court deems just and proper.

Dated: April 30, 2026                                        RHM LAW LLP

                                                BY: _____
                                                    Matthew D. Resnik
                                                    Lesley B. Davis
                                                    Attorneys for Plaintiff,
                                                    HUNTLEY AVENUE, LLC

COMPLAINT

HUNTLEY000020

**EXHIBIT 1**

HUNTLEY AVENUE LLC LOAN ANALYSIS

| Payment due date(10 day grace period) | Payment Date | Description | Affects | Amount | Comments 1 | LBD Comments |
|---|---|---|---|---|---|---|
| | 11/10/2022 | Interest Payment | | $7,233 33 | | |
| | 11/14/2022 | Increase Escrow Balance 1 | | ($11,772 92) | | |
| | 11/15/2022 | Increase Escrow Balance 3 | | ($30,000 00) | | |
| | 1/11/2023 | Late Charge Assessed | | $533 89 | | |
| | 1/27/2023 | Waive Late Charges Assessed | | ($533 89) | | |
| 1/1/2023 | 1/30/2023 | Auto Transfer Credit(ACH) | | $26,064 71 | | |
| | | Escrow No  1 Balance Increase | Escrow Balance I | ($2,354 58) | | |
| | | Interest Payment Split Out | Interest Payment | ($10,677 77) | | |
| | | Escrow No  1 Balance Increase | Escrow Balance I | ($2,354 58) | | |
| | | Interest Payment Split Out | Interest Payment | ($10,677 78) | | |
| 2/1/2023 | 2/9/2023 | Auto Transfer Credit(ACH) | | $2,354 58 | | |
| | | Interest Payment Split Out | Interest Payment | ($2,354 58) | | |
| 3/1/2023 | 2/28/1953 | Auto Transfer Credit(ACH) | | $9,644 45 | | |
| | | Escrow No  1 Balance Increase | Escrow Balance I | ($2,354 58) | | |
| | | Interest Payment Split Out | Interest Payment | ($7,289 87) | | |
| 4/1/2023 | 3/27/2023 | Auto Transfer Credit(ACH) | | $13,032 36 | | |
| | | Escrow No  1 Balance Increase | Escrow Balance 1 | ($2,354 58) | | |
| | | Interest Payment Split Out | Interest Payment | ($10,677 78) | | |
| | | Decrease escrow balance 1 | | $2,269 95 | | |
| | | Decrease escrow balance 1 | | $2,380 68 | | |
| 5/1/2023 | 4/28/2023 | Auto Transfer Credit(ACH) | | $12,687 91 | | |
| | | Escrow No  1 Balance Increase | Escrow Balance 1 | ($2,354 58) | | |
| | | Interest Payment Split Out | Interest Payment | ($10,333 33) | | |
| 6/1/2023 | 5/31/2023 | Auto Transfer Credit(ACH) | | $13,032 36 | | |
| | | Escrow No  1 Balance Increase | Escrow Balance 1 | ($2,354 58) | | |
| | | Interest Payment Split Out | Interest Payment | ($10,677 78) | | |
| 7/1/2023 | 6/27/2023 | Auto Transfer Credit(ACH) | | $12,687 91 | | |
| | | Escrow No  1 Balance Increase | Escrow Balance 1 | ($2,354 58) | | |
| | | Interest Payment Split Out | Interest Payment | ($10,333 33) | | |
| 8/1/2023 | 8/3/2023 | Lockbox Regular Payment | | $12,538 02 | | |
| | | Escrow No  1 Balance Increase | Escrow Balance 1 | ($1,860 24) | | |
| | | Interest Payment Split Out | Interest Payment | ($10,677 78) | | |
| 8/1/2023 | 8/3/2023 | Lockbox Regular Payment | | $494 34 | | |
| | | Escrow No  1 Balance Increase | Escrow Balance 1 | ($494 34) | | |
| 9/1/2023 | 9/11/2023 | Auto Transfer Credit(ACH) | | $13,032 36 | Bounced or Returned; Axos returned pymt in amount of $13,032 16 even though Debtor's pymt was for $13,032 36 | per 10/16/2023 Axos stmnt amount due $13,549 03 |
| | | Escrow No  1 Balance Increase | Escrow Balance 1 | ($2,354 58) | | |
| | | Interest Payment Split Out | Interest Payment | ($10,677 78) | | |
| | 9/13/2023 | Interest Payment Reversal | | $10,677 78 | | |
| | | Late Charge Assessed | | $533 89 | | |
| | | Decrease escrow balance 1 Affects Y | | $2,354 58 | | |
| 10/1/2023 | 10/11/2023 | Late Charge Assessed | | $516 67 | | per 10/16/2023 Axos stmnt amount due $13221 80 |
| 11/1/2023 | 11/3/2023 | Auto Transfer Credit ACH | | $2,354 58 | | per 10/16/2023 Axos stmnt amount due on 11/1/2023 is $13,032 36 |
| | | Interest Payment Split Out | Interest Payment | ($2,354 58) | | |
| | 11/13/2023 | Auto Transfer Credit ACH | | $11,194 45 | $13,549 03 | pays 9/1/2023 balance (cells E57 plus E60) |
| | | Interest Payment Split Out | | ($516 67) | | |
| | | Escrow No  1 Balance Increase | | ($2,354 58) | | |
| | | Interest Payment Split Out | | ($8,323 20) | | |
| | 11/13/2023 | Late Charge Assessed | | $533 89 | | still remains behind in payments for Oct and Nov 2023 |
| | 11/14/2023 | Decrease escrow balance 1 | | $2,380 20 | | |
| | 11/14/2023 | Decrease escrow balance 1 | | $2,646 06 | | |
| | 11/27/2023 | Auto Transfer Credit ACH | | $12,705 13 | paid in full 10/1/2023 balance per 12/17/2023 Axos stmnt | 10/1/2023 pymt amout of $13221 80-516 67 (int rev) =$12705 13 |
| | | Interest Payment Split Out | | ($533 89) | | |
| | | Escrow No  1 Balance Increase | | ($2,354 58) | | |
| | | Interest Payment Split Out | | ($9,816 66) | | |
| | 12/11/2023 | Late Charge Assessed | | $516 67 | | still behind in payments for Nov and Dec per 12/17/2023 Axos stmnt; current pymt due on 1/1/2024 is $14, 082 92; Total due - $40,319 86 |
| | 1/11/2024 | Decrease escrow balance I | | $641 14 | | |
| | 1/11/2024 | Late Charge Assessed | | $533 89 | | |
| | 2/7/2024 | Secondary accrual debit | | $43,899 44 | | |
| | 2/7/2024 | Status Change | | $0 00 | | |
| | 2/7/2024 | Generated Accrual Adjustment | | ($43,899 44) | | |
| | 2/12/2024 | Late Charge Assessed | | $533 89 | | |
| | 2/13/2024 | NOD filed by AXOS on 2/13/2024 in the amount of $54,419.99 as of 2/12/2024 Interest Rate Change | | 18% | | comprised of 1/16 stmnt amt of 53886 10 plus late fee of $533 89; in default for Nov, Dec, and Jan, and current Feb payment  for total of $53886 10 |
| | 2/29/2024 | RE Foreclosure/BK Fees & Costs Assessed | | $4,373 00 | | |
| | 3/11/2024 | Late Charge Assessed | | $886 67 | | |
| | 3/20/2024 | RE Foreclosure/BK Fees & Costs Assessed | | $425 00 | | |
| | 3/22/2024 | Generated Accrual Adjustment | | $76,366 10 | | Don't know where this number comes from -cannot trace without missing statements |

HUNTLEY000011

| | Date | Description | Amount A | Amount B | Amount C | Note 1 | Note 2 | Note 3 |
|---|---|---|---|---|---|---|---|---|
| | 3/22/2024 | Status Change | | $0 00 | | | | |
| | 3/22/2024 | RE Foreclosure/BK Fees & Costs Payment | | ($4,373 00) | | | | |
| | 3/22/2024 | RE Foreclosure/BK Fees & Costs Payment | | ($425 00) | | | | |
| | 3/22/2024 | Interest Payment | | ($10,143 89) | | | | |
| | 3/22/2024 | Interest Payment | | ($10,333 33) | | | | |
| | 3/22/2024 | Interest Payment | | ($10,677 78) | | | | |
| | 3/22/2024 | Interest Payment | | ($10,677 77) | | | | |
| | 3/22/2024 | Interest Payment | | ($17,733 34) | ($59,566 11) | matches 4/15 stmt | per 3/21/2024 email from M Barisdale from Axos | |
| | 3/22/2024 | Late Charge Payment | | ($533 89) | | reversal of 9/13/2023 | 11/1/2023 Interest $10,143 89 Escrow $2354 58 = total $12,498 47 | |
| | 3/22/2024 | Late Charge Payment | | ($516 67) | | reversal of 10/11/2023 | 12/1/2023 interest $10,333 33 Escrow $2354 58 = total $12,687 91 | |
| | 3/22/2024 | Late Charge Payment | | ($533 89) | | reversal of 11/13/2023 | 1/1/2024 interest $ 10,677 78 Escrow $2354 58 = total $13,032 36 | |
| | 3/22/2024 | Late Charge Payment | | ($516 67) | | reversal of 12/11/2023 | 2/1/2024 interest $10,677 77 Escrow $2,354 58 = total $13,032 35 | |
| | 3/22/2024 | Late Charge Payment | | ($533 89) | | reversal of 1/11/2024 | 3/1/2024 interest $17,733 34 Escrow $2,408 01= total $20,141 35 | |
| | 3/22/2024 | Late Charge Payment | | ($533 89) | | reversal of 2/12/2024 | Late charges $4,055 57 | |
| | 3/22/2024 | Late Charge Payment | | ($332 78) | | reversal of 3/11/2024 | Trustee fees $4,798 | |
| | 3/22/2024 | Late Charge Payment | | ($533 89) | | reversal of 3/11/2024 | for total of 80246 01 | |
| | 3/22/2024 | Secondary accrual credit | | ($76,366 10) | | | | |
| | 3/22/2024 | Increase Escrow Balance 1 | | ($2,354 58) | | | | |
| | 3/22/2024 | Increase Escrow Balance 1 | | ($2,354 58) | | | | |
| | 3/22/2024 | Increase Escrow Balance 1 | | ($2,354 58) | | | | |
| | 3/22/2024 | Increase Escrow Balance 1 | | ($2,354 58) | | | | |
| | 3/22/2024 | Increase Escrow Balance 1 | | ($2,408 01) | ($11,826 33) | matches 4/15 stmt | | |
| | 3/25/2024 | Decrease escrow balance l | | $2,380 19 | | | | |
| | 3/25/2024 | Decrease escrow balance l | | $2,646 05 | | | | |
| | 3/25/2024 | Decrease escrow balance l | | $32,850 49 | | Check issued to Debtor but Debtor did not receive until June 2025 | | |
| | 3/26/2024 | RE Foreclosure/BK Fees & Costs Assessed | | $103 00 | | | | |
| | 3/29/2024 | Late Charge Payment | | ($20 00) | | | | |
| | 4/11/2024 | Late Charge Payment | | $1,240 00 | | | | |
| payment on 3/22/2024 | | | $80,246.01 | | Huntley is current | everything is cured through March 2024; May 16, 2024 stmnt shows paid yr to date in the amt of $80,246 01 | | |
| | 4/16/2024 | Interest Rate Change | | | 7 75% | | | |
| | 4/16/2024 | Generated Accrual Adjustment | | ($11,388 88) | | owes April 1, 2024 unpaid bal of $14,325 79 per Axos May 16, 2024 stmnt | | |
| | 5/13/2024 | Late Charge Assessed | | $516 67 | | owes May 1, 2024 unpaid bal of $12,466 15 per Axos May 16, 2024 stmnt | amount owed for April and May is 27091 94 | |
| 4US Image pays outgoing wire on 5/16/2024 | | | $13,771.94 | | applied payments on 6/7/2024 | | | |
| 4US Image pays outgoing wire on 5/21/2024 | | | $13,000.00 | | applied payments on 6/7/2024 | | | |
| | 6/7/2024 | Interest Payment | | ($10,677 78) | | current payment due on 6/1/2024 is $21,840 60; for total due of $48,612 54 | | |
| | 6/7/2024 | Interest Payment | | ($10,333 33) | | | | |
| | 6/7/2024 | Late Charge Payment | | ($1,240 00) | | | | |
| | 6/7/2024 | Late Charge Payment | | ($516 67) | | | | |
| | 6/7/2024 | Increase Escrow Balance 5 | | ($2,408 01) | | | | |
| | 6/7/2024 | Increase Escrow Balance 5 | | ($1,596 15) | ($26,771 94) | matches 6/16/2024 Axos stmt as to paid last month; applied to April and May 2024; still in default for June 2024 in the amt of $21,840 60 | | |
| | 6/11/2024 | Late Charge Assessed | | $1,012 22 | | wash | | |
| | 7/10/2024 | Waive Late Charges Assessed | | ($1,012 22) | | wash | | |
| | 7/11/2024 | Late Charge Assessed | | $516 67 | | owes June (21,840 60)and July 2024 (reg pymt is 11929 49 but with fees of 1012 22=$12,941 71, for total $34782 31 per 6/16/2024 Axos stmt | | |
| | 8/12/2024 | Late Charge Assessed | | $533 89 | | Per 8/18/2025 Axos stmnt - June bal - $22,357 27; July bal- $12,463 38; Aug bal - $12,273 92; and current Sept 1 bal - $12,273 93; Total due - $59368 50 | | |
| | 8/29/2024 | Lockbox Regular Payment | | $13,200 00 | | pymt shows on Axos 9/15/2024 stmt - applied on 8/29/2024 to June bal of $22,357 27- 13200=$9157 27 | owed $46,168 50; per CLI counsel L Jurich email of 4/29/2025 balance was $46,844 44 | |
| | | Interest Payment Split Out | | ($13,200 00) | | | | |
| | 8/30/2024 | Secondary accrual debit | | $38,044 45 | | | | |
| | 8/30/2024 | Staus Change | | $0 00 | | | | |
| | 8/30/2024 | Generated Accrual Adjustment | | ($38,044 45) | | | | |
| | 9/11/2024 | Late Charge Assessed | | $533 89 | | per 9/15/2024 Axos stmt - June bal- $9,157 27; July bal - $12,463 38; Aug bal - $12,807 81; Sept bal - $12,273 93; current bal due on Oct 1, 2024- $11,929 48; Total Bal due - $58,631 87 | | |
| | 9/19/2024 | RE Foreclosure/BK Fees & Costs Waived | | ($103 00) | | wash 3/26 | | |
| | 9/19/2024 | Waive Late Charges Assessed | | ($516 67) | | wash7/11 | | |
| | 9/19/2024 | Waive Late Charges Assessed | | ($533 89) | | wash 8/12 | | |
| | 9/19/2024 | Waive Late Charges Assessed | | ($533 89) | | wash9/11 | | |
| | 9/19/2024 | Decrease Secondary Accrual | | ($44,244 45) | | | | |
| | 9/19/2024 | Secondary accrual credit | | ($688 89) | | | | |
| | 9/19/2024 | Principal Reduction | | ($1,600,000 00) | | | | |
| | 9/19/2024 | Decrease Escrow Balance 3 | | $30,000 00 | | | | |
| | 9/19/2024 | Decrease Escrow Balance 5 | | $4,004 16 | | | | |
| | 9/20/2024 | Decrease Escrow Balance 1 | | ($1,049 71) | | | | |
| payment on 9/28/2024, check no. 19748; cleared 10/8/2024 | | | $58,631.87 | | applied by CLI; **NOT IN DEFAULT AND CURRENT**; OWED CREDIT OF $302.43; see row 141 above | wrong amount applied, CLI only applied 58329 44 per CLI counsel L Jurich email dtd 4/29/2025; $302 43 not applied | |

HUNTLEY000012

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Payment on 11/3/2024; cleared 11/20/2024 | | | $13,000 | | applied by CLI and rec'd on 11/19/2024; **CREDIT OF $2150.00** | | | | | | | |
| | | | | NO PAYMENT IN DEC | A2Capital Statement dated 11/21/2024 indicates the total payment due on 12/1/2024 was $10,333 33; Statement does not include any escrow payment due | | | | | | | |
| cashier's check issued on 1/15/2025; payment cleared bank on 1/15/2025, ck no. 19820 check used for purchase of cashier's check | | | $ 10,300.00 | | returned by CLI on January 28, 2025- considered partial payment; A2Capital Statement dated 1/10/2025 indicates the total payment due on 12/1/2024 is $10,333 33; Statement does not include any escrow payment due and the payment due date on the statement is incorrect | | | | | | | |
| issued on 2/5/2025; payment cleared on 2/5/2025; ck no. 19807; paid by cashiers check | | | $ 10,200.00 | | returned by CLI; rec'd 9/3/2025 | | | | | | | |
| cashier's check issued on 2/24/2025; payment cleared on 2/24/2025; ck no. 19809; paid by cashiers check | | | $ 4,700.00 | | returned by CLI; rec'd 3/11/2025 | | | | | | | |
| payment on 4/11/2025 by wire transfer | | | $ 34,000.00 | | returned by CLI; rec'd 4/11/2025 unable to apply due to partial payment | | | | | | | |
| | | | $ 59,200.00 | sum of all returned payments | | | | | | | | |
| NOD filed by CLI recorded on 4/25/2025; default amount $66,916.37 as of April 21, 2025 | | | | | | | | | | | | |
| NOS by CLI for 11/12/2025; recorded 10/20/2025 | | | | | | | | | | | | |

HUNTLEY000013

**EXHIBIT 2**

19748

**DBA LAWC-MELTON COMPANY**
2029 TWIN TOWER AT CENTURY PARK E., STE 400
LOS ANGELES, CA 90067
213-627-7661

HANMI BANK
16-3939/1220

9/28/2021

PAY TO THE
ORDER OF _Axos Bank_    $58631.87

_Fifty eight thousand six hundred thirty one_ 87/100 DOLLAR

VOID AFTER 90 DAYS

MEMO _Huntley 900990 41 998_

AUTHORIZED SIGNATURE

⑆019748⑆ ⑈122039399⑈ ▮▮▮▮▮▮▮▮▮

HUNTLEY000014

HUNTLEY000015



☐ CHECK BOX FOR MOBILE/REMOTE DEPOSIT

Chemical Wash
Detection Box

COLOR INSIDE THIS BOX
SHOULD BE WHITE

FORGING OR ALTERING THIS HIGH SECURITY CHECK IS EXTREMELY DIFFICULT DUE TO THESE FEATURES:

DO NOT CASH IF:

- Multi-dimensional
- Distinctive pattern
- Pink pad back and reappear
- Check pattern colors that blend
- Small microprint
- Stains or colored
- Stains or discoloration
- Ink on back looks
- Printed information appears
- Red/blue fibers and fibers are not visible under ultraviolet
- "VOID" appears in this box
- "SECURITY" is not visible
- "ORIGINAL DOCUMENT" is not on back
- An enabled color copier will not replicate image

features listed and unlisted exceed industry standards.
is a certification mark of Check Payment Systems Association

Mark: Mobile Deposit check mark to indicate check has been
deposited via mobile device.

**EXHIBIT 3**

A2 Capital, LLC

prepared:   3/14/2025

Processed Payment History

| LoanNumber | pmtRcvd | pmtAmount | pmtType | appliedPrincipal | appliedInterest | appliedLateFee | lateFee | Suspense | newPrincipal | newDailyInterest | nextDue | appliedEscrow | pmtProcessed | interestCurrentThru |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 99041998 | 19-Nov-24 | $13,000.00 | Check | $0.00 | $9,988.89 | $516.67 | TRUE | $139.86 | $1,600,000.00 | $344.44 | 01-Dec-24 | $2,354.58 | 20-Nov-24 | 19-Nov-24 |
| 99041998 | 08-Oct-24 | $58,329.44 | Other | $0.00 | $46,844.44 | $2,066.68 | TRUE | $0.00 | $1,600,000.00 | $344.44 | 01-Nov-24 | $9,418.32 | 31-Oct-24 | 21-Oct-24 |

HUNTLEY000016

A2 Capital, LLC                                        prepared:          4/29/2025

Escrow Balance History

| loanNumber | Rcvd | entryType | amount | currentBalance |
|---|---|---|---|---|
| 99041998 | 17-Sep-24 | loanacquired | $ 34,004.16 | $ 34,004.16 |
| 99041998 | 08-Oct-24 | monthlypmt | $ 9,418.32 | $ 43,422.48 |
| 99041998 | 19-Nov-24 | monthlypmt | $ 2,354.58 | $ 45,777.06 |
| 99041998 | 28-Apr-25 | ptax | $ (11,659.73) | $ 34,117.33 |

HUNTLEY000017

**EXHIBIT 4**

## A2 Capital, LLC

| | | | |
|---|---|---|---|
| Loan Number | 90099041998 | | |
| Statement Date | 11/21/2024 | Regular payment due | $10,333.33 |
| Borrower | Huntley Avenue, LLC<br>4338 Huntley Ave<br>Culver City, CA 90230 | Additional fees due | |
| | | Total Payment due if received by due date: | $10,333.33 |
| Date last payment received | 11/19/2024 | Due Date | 12/1/2024 |
| Amount received | $13,000.00 | Late fee if received after late date | $516.67 |
| applied to interest | $9,988.89 | | |
| applied to principal | $0.00 | Late Date | 12/11/2024 |
| applied to fees | $516.67 | | |
| applied to escrow account | $2,354.58 | Contact us to set up convenient automatic ACH Payment | |
| Outstanding principal balance (not a payoff amount) | $1,600,000.00 | | |
| current interest rate | 7.7500% | next rate adj | 12/01/2025 |

---

Huntley Avenue, LLC
4338 Huntley Ave
Culver City, CA 90230

| | | Regular Payment | |
|---|---|---|---|
| | | Additional Principal | |
| | | Additional payment | |
| | | Total enclosed | |
| Loan Number | 90099041998 | | |
| Due Date | 12/1/2024 | | |
| Late fees apply if received after | 12/11/2024 | | |

Make payable to A2 Capital, LLC

A2 Capital, LLC
2625 Alcatraz Ave., Suite 214
Berkeley, CA 94705-2702

NMLS #2495146 Calif DFPI #11193-99

Servicer for CLI Fund 2 LLC   - (510) 986-4400 M-F 9am-5pm Pacific Time - ls@a2capital.llc

HUNTLEY000018

**EXHIBIT 5**

A2 Capital, LLC

| | |
|---|---|
| Loan Number | 99041998 |
| Statement Date | 1/10/2025 |
| Borrower | Huntley Avenue, LLC<br>4338 Huntley Ave<br>Culver City, CA 90230 |
| Date last payment received | 11/19/2024 |
| Amount received | $13,000.00 |
| applied to interest | $9,988.89 |
| applied to principal | $0.00 |
| applied to  fees | $516.67 |
| applied to escrow account | $2,354.58 |
| Outstanding principal balance (not a payoff amount) | $1,600,000.00 |
| current interest rate | 7.7500% |

| | |
|---|---|
| Regular payment due | $10,333.33 |
| Additional fees due | |
| Total Payment due if received by due date: | $10,333.33 |
| Due Date | 12/1/2024 |
| Late fee if received after late  date | $516.67 |
| Late Date | 12/11/2024 |

YOUR PAYMENT IS LATE.
PLEASE REMIT FULL PAYMENT
IMMEDIATELY.

next rate adj 12/01/2025

---

Huntley Avenue, LLC
4338 Huntley Ave
Culver City, CA 90230

| | |
|---|---|
| Loan Number | 99041998 |
| Due Date | 12/1/2024 |
| Late fees apply if received after | 12/11/2024 |

NMLS #2495146 Calif DFPI #11193-99

| | |
|---|---|
| Regular Payment | |
| Additional Principal | |
| Additional payment | |
| Total enclosed | |

Make payable to A2 Capital, LLC

A2 Capital, LLC
2625 Alcatraz Ave., Suite 214
Berkeley, CA 94705-2702

Servicer for CLI Fund 2 LLC  - (510) 986-4400 M-F 9am-5pm Pacific Time - ls@a2capital.llc

HUNTLEY000019

**EXHIBIT 6**

# A2 Capital, LLC

2625 Alcatraz Ave., Suite 214, Berkeley, CA 94705

Via UPS Overnight

January 28, 2025

Avraham Farzan
C/o Huntley Avenue LLC
2029 Century Park East, Ste. 400
Los Angeles, CA 90067

Re:  Returning Partial Payment and Update on Evidence of Insurance

Dear Mr. Farzan:

On Jan 24, we received the enclosed check for $10,300.00.  As per the recent statement, also enclosed here, $24,660.14 is currently owed. The lender does not accept partial payment so your check is being returned and is enclosed herein. As well, since we have not received the requested current evidence of insurance for the property, the lender is pursuing force-placed insurance at your expense. The lender reserves all its rights.

Sincerely,

Loan Servicing
A2 Capital, LLC, Loan Servicer for CLI Fund 2, LLC
LS@a2capital.llc
Monday-Friday, 9am to 5pm, Pacific Time: (510) 986-4400

**EXHIBIT 7**

**122039399  Hanmi Bank**

Incoming Wire Detail

### General Information

| | |
|---|---|
| Wire Number | 85156253 |
| Type of Wire | Domestic Incoming Wire |
| Wire Status | Uploaded |
| OFAC Status | OFAC Passed |

### Originator Instructions

| | |
|---|---|
| Originating FI | United States |
| Originator | RTN IMAD 20250411GMQFMP01033452 D 890000181895 UNABLE TO APPLY DUE TO PARTIAL PAYMENT |

### Core Information

| | |
|---|---|
| Debit Account | Incoming Wires 1101005098 |
| Fee Account | Checking 3484726 |
| Credit Account | Checking ██████ ▇7 26 |
| Credit Tran Code | 011 |
| Override Flag | No |
| Wire Amount / Currency | $34,000.00 USD |
| Wire Fee | $10.00 Incoming Wire Fee |

### Basic Settlement Information

| | |
|---|---|
| Effective Date | 04/11/2025 |
| Sending FI | 122287251 AXOS BANK |
| Receiving FI | 122039399 |
| Fedwire Type | CTR 1002 |
| IMAD | 20250411MMQFMP9N001207 |
| OMAD | 20250411GMQFMP0104588504111721 |
| Previous Message IMAD | 20250411GMQFMP01033452 |
| Sender Reference | 1220393990535504 |
| Format Version | 30 P |
| Fed Acceptance Date / Time | 0411 1721 |
| Acceptance Appl ID | FT01 |

### Beneficiary Instructions

| | |
|---|---|
| Beneficiary | 4US IMAGE INC D ██████████ ▇7 26 2029 CENTURY PARK EAST SUITE 400 LOS ANGELES CA 90067 USA |
| Originator To Beneficiary | LOAN NO 90099041988 4338 HUNTLEY AVE CULVER CITY CA 90230 |

3
04.11.25
#34000

HUNTLEY000021

**EXHIBIT 8**

From: **Lance Jurich** ljurich@loeb.com
Subject: Response to April 22nd email
Date: April 29, 2025 at 9:25 PM
To: Avraham Farzan avrahamfarzan@gmail.com
Cc: ls@a2capital.llc, mposner@axosbank.com, PBower@axosbank.com, yoseffarzan@gmail.com

Dear Mr. Farzan:

As you are aware from our prior correspondence, I represent the current lender (CLI Fund 2, LLC, "Lender") on the loan made to Huntley Avenue, LLC ("Borrower"). I understand that you have personally guaranteed that debt. This e-mail will serve as a response to your e-mail dated April 22, 2025. I am also copying the predecessor lender, Axos Bank, since you copied certain employees of Axos Bank on your e-mail.

As an initial matter, the borrower has not made the required monthly interest payments in December 2024, January, February, March or April of 2025. Your April 22nd correspondence, and several of your prior e-mails, attempt to distort the true facts and make it appear as though the Borrower does not know where to pay its mortgage payment or that the Lender is somehow not complying with the express terms of the loan documents. Nothing could be further from the truth and Borrower is in monetary default under the loan. Moreover, Lender (and/or its loan servicer) has repeatedly responded to your numerous requests for information which appear to be the same requests in your April 22nd e-mail. Notwithstanding that the Borrower has already been provided this information, let me respond to each of the questions set forth in your e-mail.

First, you demand an immediate explanation of the application of the October $58,329.44 payment. As you are aware, <u>after</u> the Borrower was notified of the sale of the loan from Axos Bank to Lender, the Borrower paid Axos Bank this amount. Axos Bank subsequently remitted these funds to my client (as new Lender), and the funds were properly applied to previously unpaid amounts due under the loan. $46,844.44 of this $58,329.44 amount was applied to unpaid interest. An additional amount ($9,418.32) was placed into the escrow reserve account to supplement unpaid escrow amounts. Additionally, $2,066.68 was applied to late fees resulting from the missed interest payments. As an aside, no default interest was charged on these delinquent payments. Attached is a complete summary of the application of the $58,329.44. Simply put, the Borrower has received full credit for this $58,329 payment and this sum was applied to (1) previously missed interest payments, (2) delinquent escrow amounts and (3) late fees in accordance with the loan documents.

Second, you have requested "written confirmation of the current payment due as of today to cure the loan". Lender interprets this request as a reinstatement demand. Lender has attached a reinstatement demand per your request. The reinstatement amount is $89,154.37 and the per diem is set forth in the reinstatement.

Third, you request disclosure of the status and use of the $30,004.16 in escrow

HUNTLEY000022

Third, you request disclosure of the status and use of the $66,664.10 in escrow funds previously held by Axos Bank.  As you are aware, paragraph 8 of the Secured Promissory Note provides for an escrow for taxes and insurance.  Attached hereto is an accounting of those funds.  Lender has paid the most recent tax payment out of escrowed funds (in the amount of $11,659.73), and the balance in the escrow account currently totals $34,117.33.  Pursuant to Section 8.1 of the Secured Promissory Note, the Lender may continue to "impound or reserve for future payment of Taxes and insurance premiums" in Lender's "absolute discretion".  Given Borrower's multiple monetary defaults, Lender has exercised its discretion and will continue to hold these proceeds in the escrow to ensure Taxes and insurance are timely paid.

Fourth, you ask for a payment history related to accounting of interest, penalties, and escrow application to this loan.  The Servicer (through Sean) previously provided this to you on March 16th via e-mail.  Here it is again showing all payments made since Lender acquired the loan.

Finally, you ask for an immediate halt of all foreclosure proceedings.  Unfortunately, the Lender cannot agree to this and has recorded a Notice of Default based on the serious monetary defaults reflected above.

I trust this answers all of your questions.

Sincerely,
Lance N. Jurich

Lance N. Jurich, Esq.
Loeb & Loeb LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067-4120
Ph: 310-282-2211
Fax: 310-919-3897
Email: ljurich@loeb.com

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender. Please destroy the original transmission and its attachments without reading or saving in any manner. Thank you, Loeb & Loeb LLP.

A2 Capital, LLC                         prepared      4/29/2025
Accounting of the Oct 8th Payment

HUNTLEY000023

Case 2:26-ap-01097-BR   Doc 1   Filed 04/30/26   Entered 04/30/26 18:01:44   Desc
Main Document   Page 35 of 122

 

HUNTLEY000024

**E**  ls@a2capital.llc

**P**  (510) 986-4400  *(Mon-Fri, 9 AM - 5 PM PT)*

**NMLS #2495146  |  CA DFPI License #1119399**

A2 Capital, LLC                                                                                                    prepared:        3/14/2025

Processed Payment History

| LoanNumber | pmtRcvd | pmtAmount | pmtType | appliedPrincipal | appliedInterest | appliedLateFee | lateFee | Suspense | newPrincipal | newDailyInterest | nextDue | appliedEscrow | pmtProcessed | interestCurrentThru |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 99041998 | 19-Nov-24 | $13,000.00 | Check | $0.00 | $9,988.89 | $516.67 | TRUE | $139.86 | $1,600,000.00 | $344.44 | 01-Dec-24 | $2,354.58 | 20-Nov-24 | 19-Nov-24 |
| 99041998 | 08-Oct-24 | $58,129.44 | Other | $0.00 | $46,844.44 | $2,066.68 | TRUE | $0.00 | $1,600,000.00 | $344.44 | 01-Nov-24 | $9,418.32 | 31-Oct-24 | 21-Oct-24 |

**EXHIBIT 9**

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Huntley Avenue LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:25-bk-21645-BR |

Official Form 410

# Proof of Claim

04/25

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must **leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents**; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

CLI FUND 2, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| CLI FUND 2, LLC c/o A2 Capital, LLC <br> Name | CLI FUND 2, LLC c/o A2 Capital LLC <br> Name |
| 2625 Alcatraz Ave, #513 <br> Number       Street | 2625 Alcatraz Ave, #513 <br> Number       Street |
| Berkeley           CA        94705 <br> City            State       ZIP Code | Berkeley           CA        94705 <br> City            State       ZIP Code |
| Contact phone _____ | Contact phone _____ |
| Contact email  adam@serenim.com | Contact email _____ |

Uniform claim identifier (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____   Filed on _____
MM  /  DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

Official Form 410                          Proof of Claim

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**   $ 1,947,169.68 _____ . **Does this amount include interest or other charges?**

☐ No

See attached addendum.

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money loaned. See attached addendum. _____

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:**   Deed of Trust. See attached addendum. _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $ 2,395,000.00

**Amount of the claim that is secured:**   $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed) 18.00 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br><br>☐ Yes. *Check one:* | Amount entitled to priority |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐  I am the creditor.

☑  I am the creditor's attorney or authorized agent.

☐  I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐  I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    04/28/2026
                    MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Lance N. Jurich | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Partner | | |
| Company | Loeb & Loeb LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 10100 Santa Monica Blvd., Suite 2200 | | |
| | Number        Street | | |
| | Los Angeles | CA | 90067 |
| | City | State | ZIP Code |
| Contact phone | _____ | Email | ljurich@loeb.com |

HUNTLEY000027

Official Form 410                    Proof of Claim                    page 3

**ADDENDUM TO CLI FUND 2, LLC'S**
**PROOF OF CLAIM**

### I. Basis of the Indebtedness.

1. On December 29, 2025 (the "Petition Date"), Huntley Avenue LLC (the "Debtor"), filed for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Los Angeles Division. As of the Petition Date, the Debtor owed CLI Fund 2, LLC ("Secured Lender" or "CLI Fund 2") a secured claim in the amount of not less than $1,947,169.68, as further set forth below (the "Indebtedness"). Because Secured Lender is oversecured, post-petition interest fees (including attorneys' fees) and costs continued to accrue as set forth below.

2. The Indebtedness is owed on account of and in relation to that certain loan in the original principal amount of $1,600,000 extended by Axos Bank to the Debtor on or about November 1, 2022 (the "Loan"), which is secured by a Deed of Trust (*Exhibit B*) on the Debtor's real property located at 4338-4342 Huntley Avenue, Culver City, California 90230 (the "Property"), and which Loan was subsequently assigned to Secured Lender, as further set forth below. Specifically, the Indebtedness is owed on account of and in relation to the Debtor's failure to pay the monthly installments of principal and interest due under the Note, and upon acceleration of the Loan, Debtor's failure to pay all subsequent installments, default interest, late charges, property taxes, attorney's fees and costs, and additional unpaid amounts that the Debtor and Avraham Farzan ("Mr. Farzan"), as guarantor, were obligated to pay under the terms of the Loan Documents (as defined below).

3. In connection with the Loan, the Debtor delivered a Promissory Note (the "Note") to Axos Bank. A true and correct copy of the Note is attached hereto as **Exhibit A**. The Debtor also delivered a Deed of Trust on the Property to Axos Bank in connection with the Loan, which

Axos Bank caused to be recorded on November 14, 2022 in the Official Records of Los Angeles County, California ("LA Property Records"), as Instrument No. 20221068698 (the "DOT"). A true and correct copy of the DOT is attached hereto as **Exhibit B**.

4. Mr. Farzan, the principal and member of the Debtor at the time of the Loan, guaranteed the Debtor's obligations under the Loan Documents pursuant to a Guaranty dated as of November 1, 2022 (the "Farzan Guaranty"; together with the Note, the DOT and all other documents entered into in connection with the Loan, the "Loan Documents").

5. On September 17, 2024, Secured Lender, as buyer, entered into several agreements with Axos Bank, as seller, to purchase all of Axos Bank's right, title, interest, obligations, and duties in, to and under the Deed of Trust and the Note. Pursuant to an Allonge dated September 17, 2024. Axos assigned the Note to Secured Lender. A true and correct copy of the Allonge is attached hereto as **Exhibit C**. Axos Bank also assigned the DOT to Secured Lender by that certain *Assignment of Deed of Trust and Assignment of Rents*, dated September 17, 2024, and recorded on February 11, 2025 in LA Property Records, as Instrument No. 20250086603 (the "DOT Assignment"). A true and correct copy of the DOT Assignment is attached hereto as **Exhibit D**.

6. As of the Petition Date, Secured Lender's claim against the Debtor (and the Debtor's Property) totaled not less than $1,947,169.68 which amount is composed of: (a) principal in an amount not less than $1,600,000; plus (b) accrued and unpaid interest; plus (c) late fees; plus (d) costs; plus (e) attorneys' fees and other costs and expense in an amount according to proof and which continue to accrue. A true and correct copy of the Debtor's Indebtedness, calculated as of the Petition Date, is attached hereto as **Exhibit E.** Interest, legal fees and costs continue to accrue

on Secured Lender's claim. A true and correct copy of the Debtor's Indebtedness, calculated as of May 26, 2026, is attached hereto as **Exhibit F**.

7.  Secured Lender reserves the right to amend this Proof of Claim to assert the full amount of all principal, interest, fees, costs, and other amounts owed under the Loan Documents as they continue to accrue. Further, Secured Lender expressly asserts this claim as secured to the extent of its lien on the Property.

**II.  Supporting Documents.**

8.  The claims asserted herein are based on the following Loan Documents appended hereto:

- Exhibit A – Note
- Exhibit B – Deed of Trust
- Exhibit C – Allonge
- Exhibit D – DOT Assignment
- Exhibit E – Debtor's Indebtedness as of Petition Date
- Exhibit F – Debtor's Indebtedness as of May 26, 2026

Other Loan documents are burdensome to produce and already in the hands of Debtor. Copies of other supporting Loan Documents will be made available upon written request to Secured Lender's counsel at the address set forth below. Secured Lender reserves the right to supplement this Proof of Claim with additional documentation and to respond to any objection.

**III.  Notices.**

9.  All notices to Secured Lender relating to this Proof of Claim should be sent to:

> CLI FUND 2, LLC, c/o A2 Capital, LLC
> attn:  Kyle Albers
> 2625 Alcatraz Ave, #513
> Berkeley, California 94705

With a copy to:

> Lance N. Jurich, Esq.
> Loeb & Loeb LLP
> 10100 Santa Monica Blvd., Suite 2200
> Los Angeles, CA 90067
> ljurich@loeb.com
>
> -and-
>
> Vadim J. Rubinstein, Esq.
> Loeb & Loeb LLP
> 345 Park Avenue
> New York, NY 10154
> vrubinstein@loeb.com

The request for copies of notices to be sent to Loeb & Loeb LLP shall not be deemed authorization

of Loeb & Loeb LLP to accept service of process on behalf of Secured Lender.

### IV. Payments.

10.      Payments with respect to this Proof of Claim should be sent to:

> CLI FUND 2, LLC c/o A2 Capital, LLC
> attn:    Kyle Albers
> 2625 Alcatraz Ave, #513
> Berkeley, California 94705
> kyle@a2capital.llc

### V. Reservation of Rights and No Waiver.

11.      The execution and filing of this Proof of Claim is not (i) a waiver by Secured

Lender of the right to assert any and all other claims of whatever kind that it has, or may have, that

come to Secured Lender's attention or arise after the filing of this claim (and the filing of this claim

shall not be deemed a waiver of any such rights); (ii) a waiver of Secured Lender's rights to seek

treatment of the claims set forth herein as priority, administrative expense, or secured on any other

basis, or to exercise any right of recoupment relating thereto; (iii) a consent or submission by

Secured Lender to the jurisdiction of this Court with respect to any proceeding commenced in this or any other case against or otherwise involving Secured Lender. In particular, the Debtor agreed under the Loan Documents that any disputes arising out of or relating to the Loan would be determined in accordance with California Code of Civil Procedure 638 and determined by a Judicial Referee.  Secured Lender does not waive its right to have a Judicial Referee determine any non-Core issues arising under this Proof of Claim, rather than by the Bankruptcy Court.  Judicial Reference agreements are routinely enforced in California. *O'Donoghue v. Superior Ct.*, 219 Cal. App. 4th 245, 263 (2013) ("[J]ust as public policy favors arbitration, public policy should favor judicial reference."); *Woodside Homes of Cal., Inc. v. Superior Ct.*, 107 Cal. App. 4th 723, 732-33 (2003) ("arbitration [] and, by analogy, a general judicial reference provides economies both of time and expense"); (iv) a waiver of the right to withdrawal of the reference or a right to a jury trial with respect to the subject matter of the claim set forth herein, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving Secured Lender, or to challenge the constitutionality of any part of 28 U.S.C. § 157; (v) an election of remedy that waives or otherwise affects any other remedy; (vi) a waiver of or limitation on any rights or remedies of Secured Lender, at law or in equity (including any recoupment rights, lien rights, rights of recoupment or any other rights that Secured Lender may have against the Debtor or any other entity); or (vii) a waiver or limitation of any alternate claim or theory by Secured Lender or of any other rights or protections.

12.     Secured Lender expressly reserves its rights (i) to respond to any objection to this Proof of Claim, including by providing additional documentary support for the amounts asserted hereby; (ii) to file any other claims or proofs of claim with respect to the claims set forth herein or otherwise (which claims shall not be deemed to supersede this claim unless otherwise expressly

243382234.5
233739-10081                                    5                                    HUNTLEY000032

provided), including to seek secured, priority, or administrative expense treatment for the claims set forth herein or therein; (iii) to amend or supplement this claim in any respect, including but not limited to the filing of additional proofs of claim for claims not covered by this claim; (iv) to assert this Proof of Claim as an administrative claim, including without limitation under 11 U.S.C. § 503 and 507; and (v) to assert additional proofs of claim for any other claims of whatever kind that Secured Lender has, or may have, that come to Secured Lender's attention or arise after the filing of this Proof of Claim (and the filing of this claim shall not be deemed a waiver of any such rights). This Proof of Claim sets forth facts and claims and asserts theories which may constitute alternatives to one another. Nothing set forth in this Proof of Claim in one place shall limit the theories of recovery, *etc.* based on information set forth elsewhere, nor shall it preclude any alternate theories being asserted in other pleadings or filings.

# Exhibit A

Case 2:26-bk-21405-BBR   Doc 3   Filed 04/28/26   Entered 04/30/26 18:01:44   Desc
Main Document   86   Page 46 of 122

HUNTLEY000034

## SECURED PROMISSORY NOTE

**$1,600,000.00**                                                                 **November 1, 2022**

### 1.       Promise to Pay

For value received, **HUNTLEY AVENUE, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY** ("**Borrower**"), promises to pay to the order of **AXOS BANK™**, a federally chartered savings association ("**Lender**"), at 4350 La Jolla Village Drive, Suite 100, San Diego, California, 92122, or at such other place as may be designated in writing by Lender, the principal sum of **ONE MILLION SIX HUNDRED THOUSAND AND 00/100 DOLLARS ($1,600,000.00)**, with interest on the unpaid principal balance as set forth below. All sums owing hereunder are payable in lawful money of the United States of America, in immediately available funds, without offset, deduction or counterclaim of any kind.

### 2.       Secured by Security Instrument

This Note is secured by, among other things, that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (as the same may hereinafter be amended, modified, restated, renewed or extended from time to time, the "**Security Instrument**") of even date herewith, encumbering the Property (hereinafter defined).

### 3.       Definitions

For the purposes of this Note, the following terms shall have the following meanings:

"**Adjusted Rate**" shall mean, from and after each Rate Change Date (as defined below), a per annum interest rate that is the sum (rounded, as necessary, to the nearest 1/1000 of 1%) of the Index and the Margin; provided, however, the Adjusted Rate, in each case, shall never: (x) on each Rate Change Date change by more than **2.0** percentage point (whether higher or lower) than the Adjusted Rate in effect immediately preceding the Rate Change Date; (y) exceed **15.75%**; or (z) be less than **7.75%**, at any time and for the life of the loan (it being understood that this sub-clause (z), without limiting any provision requiring a higher Interest Rate, shall constitute a minimum Interest Rate irrespective of other parameters regarding the Adjustable Rate provided by this definition).

"**Affiliate**" shall mean, as to any Person, any other Person (i) which directly or indirectly through one or more intermediaries controls, or is controlled by, or is under common control with, such Person; or (ii) which, directly or indirectly, beneficially owns or holds ten percent (10%) or more of any class of stock or any other ownership interest in such Person; or (iii) ten percent (10%) or more of the direct or indirect ownership of which is beneficially owned or held by such Person; or (iv) which is a member of the family of such Person or which is a trust or estate, the beneficial owners of which are members of the family of such Person; or (v) which directly or indirectly is a general partner, controlling shareholder, managing member, officer, director, trustee or employee of such Person.

"**Available Tenor**" shall mean, as of any date of determination and with respect to the then-current Benchmark, as applicable, (x) if the then-current Benchmark is a term rate, any tenor for such Benchmark that is or may be used for determining the length of an interest period or (y) otherwise, any payment period for interest calculated with reference to such Benchmark, as applicable, pursuant to this Note as of such date.

"**Benchmark**" shall mean, initially, Ameribor; provided that if a replacement of the Benchmark has occurred, then "Benchmark" means the applicable Benchmark Replacement to the extent that such Benchmark Replacement has replaced such prior benchmark rate. Any reference to "Benchmark" shall include, as

applicable, the published component used in the calculation thereof.

HUNTLEY000035

"**Benchmark Replacement**" shall mean, for any Available Tenor, the alternatives set forth below that can be determined by the Lender:

(a) the sum of: (i) Term SOFR, (ii) 0.11448% (11.448 basis points) for an Available Tenor of one-month's duration, 0.26161% (26.161 basis points) for an Available Tenor of three-months' duration, and 0.42826% (42.826 basis points) for an Available Tenor of six-months' duration, and (iii) 0.25% (25 basis points in the event the Maturity Date occurs on or before the third anniversary of the date hereof, and 0.50% (50 basis points in the event the Maturity Date occurs after the third anniversary of the date hereof); or

(a) the sum of (i) a Replacement Index and (ii) a Replacement Margin Adjustment.

"**Benchmark Replacement Conforming Changes**" shall mean, with respect to any Benchmark Replacement, any technical, administrative or operational changes, such as changes to the definitions of "Business Day," or timing and frequency of determining rates and making payments of interest, that Lender decides may be appropriate to reflect the adoption and implementation of such Benchmark Replacement and to permit the administration thereof in a manner substantially consistent with market practice (or, if the Lender decides that adoption of any portion of such market practice is not administratively feasible or if Lender determines that no market practice for the administration of such Benchmark Replacement exists, in such other manner of administration as Lender decides is reasonably necessary in connection with the administration of this Note and the other Loan Documents).

"**Benchmark Transition Event**" shall mean the occurrence of a public statement or publication of information by or on behalf of the administrator of the then-current Benchmark, the regulatory supervisor for the administrator of such Benchmark, the Board of Governors of the Federal Reserve System, the Federal Reserve Bank of New York, an insolvency official with jurisdiction over the administrator for such Benchmark, a resolution authority with jurisdiction over the administrator for such Benchmark or a court or an entity with similar insolvency or resolution authority over the administrator for such Benchmark, announcing or stating that (a) such administrator has ceased or will cease on a specified date to provide all Available Tenors of such Benchmark, permanently or indefinitely, provided that, at the time of such statement or publication, there is no successor administrator that will continue to provide any Available Tenor of such Benchmark or (b) all Available Tenors of such Benchmark are or will no longer be representative of the underlying market and economic reality that such Benchmark is intended to measure and that representativeness will not be restored.

"**Business Day**" shall mean any day other than a Saturday, Sunday, legal holiday or other day on which commercial banks in New York, New York are authorized or required by law to close. All references in this Note to a "day" or a "date" shall be to a calendar day unless specifically referenced as a Business Day.

"**Closing Date**" shall mean the earlier of the date Lender releases any part of the Loan proceeds to Borrower or the date in which the Security Instrument is recorded in the official records of the county in which the Property is located.

"**Default Rate**" shall be the lesser of (i) eighteen percent (18%) and (ii) the maximum amount permitted by law applicable to Lender.

"**Event of Default**" shall have the meaning set forth in the Security Instrument.

"**First Interest Payment Date**" shall mean **01/01/2023**.

"**First Interest and Principal Payment Date**" shall mean **01/01/2026**.

"**Guarantor**" shall mean: **AVRAHAM FARZAN**

Secured Promissory Note (CA) (Version 3.0)

Page 2

HUNTLEY000036

**"Index"** shall mean the **six month** American Interbank Offered Rate for loans in United States Dollars ("AMERIBOR") as published in a reference publication of general circulation (the "Reference Publication") forty-five (45) days prior to applicable Rate Change Date, or if not published on such date, then most recently prior thereto. The initial Reference Publication is published for loans in United States Dollars by the American Financial Exchange, as obtained by Lender from Bloomberg Financial Services Systems with the code AMBOR6M. Lender, in Lender's sole discretion, shall have the right to select a substitute Reference Publication at any time and from time to time by written notice to Borrower delivered to Borrower not less than thirty (30) days prior to the Rate Change Date to which such substitution shall first apply. If If Lender determines (which determination shall be conclusive absent manifest error) that either: (i) the Benchmark ceases to exist or is no longer available; or (ii) a Benchmark Transition Event has occurred, then the Index hereunder shall be replaced with the then applicable Benchmark Replacement. In connection with the implementation of a Benchmark Replacement, Lender will have the right to make Benchmark Replacement Conforming Changes from time to time and, notwithstanding anything to the contrary herein or in any other Loan Document, and any amendments implementing such Benchmark Replacement Conforming Changes will become effective without any further action or consent of Borrower. Lender will promptly notify the Borrower of (i) the implementation of any Benchmark Replacement and (ii) the effectiveness of any Benchmark Replacement Conforming Changes. Any determination, decision or election that may be made by the Lender in connection with any Benchmark Replacement, including any determination with respect to a tenor, rate or adjustment or of the occurrence or non-occurrence of an event, circumstance or date and any decision to take or refrain from taking any action, will be conclusive and binding absent manifest error and may be made in its sole discretion and without consent from any other party hereto. Notwithstanding the foregoing, and for the avoidance of doubt, the Interest Rate shall not at any time be less than **7.75%** per annum. Lender shall notify Borrower of any Benchmark Replacement not less than thirty (30) days prior to the Rate Change Date to which such Benchmark Replacement shall first apply. **Borrower's Initials** _SFV_.

**"Initial Interest Rate"** shall mean **7.75%** per annum.

**"Interest Only Period"** shall mean from the Closing Date up to and including **12/01/2025**.

**"Interest Rate"** shall mean the Initial Interest Rate or the Adjusted Rate, as applicable.

**"Loan"** shall mean the aggregate of all principal and interest payments that accrue or are due and payable hereunder, together with any other amounts for which Borrower is liable under the Loan Documents.

**"Loan Documents"** shall mean this Note, the Security Instrument and any document executed in connection herewith or therewith. For the avoidance of doubt, notwithstanding any other clause of this Note, any "Guaranty" or "Environmental Indemnity Agreement" (including any rider(s) or successor documents thereto) shall not be secured by the Security Instrument.

**"Margin"** shall mean **Four** percent (**4.00%**).

**"Maturity Date"** shall mean **12/01/2032**.

**"Patriot Act"** shall mean United State Public Law 107-56, Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001, as amended from time to time, together with all rules and regulations promulgated from time to time thereunder.

**"Payment Date"** shall mean the first day of each calendar month.

**"Person"** means any individual, corporation, partnership, limited liability company, joint venture, estate, trust, unincorporated association, any other person or entity, and any federal, state, county or municipal government or any bureau, department or agency thereof and any fiduciary acting in such capacity on behalf of any of the foregoing.

HUNTLEY000037

**"Principal and Interest Period"** shall mean the period beginning on **01/01/2026** up to and including the Maturity Date.

**"Property"** shall mean that certain real property and improvements thereon owned by Borrower, together with all rights pertaining to such real property and improvements, located at the property commonly known as **4338 Huntley Avenue, Culver City, CA 90230**.

**"Rate Change Date"** shall mean **12/01/2025** and each six (6) months thereafter until the Maturity Date (as defined herein).

**"Relevant Governmental Body"** means the Board of Governors of the Federal Reserve System or the Federal Reserve Bank of New York, or a committee officially endorsed or convened by the Board of Governors of the Federal Reserve System or the Federal Reserve Bank of New York, or any successor thereto.

**"Replacement Index and Replacement Margin Adjustment"** shall mean, should SOFR no longer be available as an alternative due to Benchmark Transition Events, the Lender will make a reasonable, good faith effort to select a Replacement Index and Replacement Margin that, when added together, is reasonably expected to minimize any change in the cost of the loan taking into account the historical performance of the last Benchmark index applied to the Loan under this Agreement.

**"SOFR"** shall mean a rate per annum equal to the secured overnight financing rate for such Business Day published by the Federal Reserve Bank of New York (or a successor administrator of the secured overnight financing rate) on the website of the Federal Reserve Bank of New York, currently at http://www.newyorkfed.org (or any successor source for the secured overnight financing rate identified as such by the administrator of the secured overnight financing rate from time to time).

**"Term SOFR"** shall mean, for the applicable corresponding tenor, the forward-looking term rate based on SOFR that has been selected or recommended by the Relevant Governmental Body.

4.     Payment of Principal, Interest and Loan Fee

   4.1     Payments.

      (a)     Interest Only Period. During the Interest Only Period, Borrower shall pay consecutive monthly installments of interest only at the Interest Rate, amortized for the Interest Only Period for **thirty-six (36) months**, as set forth in Section 5 hereof. Such interest only payments shall commence on the First Interest Payment Date and shall be made thereafter on each Payment Date up until **but excluding** the First Principal and Interest Payment Date. The daily per diem during the Interest Only Period shall be **$344.44**.

      (b)     Principal and Interest Period. Beginning with the First Principal and Interest Payment Date, the unpaid principal balance shall be fully amortized for the Principal and Interest Period for **three hundred twenty-four (324) months** and Borrower shall pay consecutive monthly installments of amortized principal and interest at the Interest Rate, as set forth in Section 5 hereof. Such principal and interest payments shall commence on the First Interest and Principal Payment Date and shall be made thereafter on each Payment Date up to and including the Maturity Date, on which date all unpaid principal and accrued, but unpaid interest, shall be paid in full.

      (c)     Payments in Arrears. On the Maturity Date, all unpaid principal and accrued but unpaid interest shall be due and owing in full. All interest shall be paid in arrears, except that on the Closing Date, Borrower shall pre-pay all interest that will accrue from the date of funding through the end of that month. Whenever any payment to be made under this Note or any other Loan Document shall be stated to be due on a day other than a Business Day, such

Secured Promissory Note (CA) (Version 3.0)                                                                Page 4

HUNTLEY000038

payment shall be made on the next succeeding Business Day, unless such next succeeding Business Day would fall in the next calendar month, in which case such payment be payable on the next preceding Business Day.

4.2     Interest Accrual. Interest on the outstanding principal balance of this Note shall accrue at an annual rate equal to the Interest Rate calculated on an Actual/360 Basis. "**Actual/360 Basis**" shall mean on the basis of a 360-day year, charged based on the number of actual days elapsed for any whole or partial month in which interest is being calculated.

4.3     Loan Fee. On or prior to the Closing Date, Borrower shall pay to Lender **$11,000.00** as the "**Loan Fee**". The Loan Fee shall be deemed fully earned by Lender upon execution of this Note. In addition to the Loan Fee, Borrower shall also pay to Lender on or prior to the Closing Date, a $30.00 wire fee.

4.4     Application of Payments. In the absence of a specific determination by Lender to the contrary, all payments paid by Borrower to Lender in connection with the obligations of Borrower under this Note and under the other Loan Documents shall be applied in the following order of priority: (a) to amounts, other than principal and interest, due to Lender pursuant to this Note or the other Loan Documents; (b) to accrued but unpaid interest on this Note; and (c) to the unpaid principal balance of this Note.

5.     Interest Rate Change.

Prior to the first Rate Change Date, Borrower will pay interest at the Initial Interest Rate. On the Rate Change Date, and on each Rate Change Date thereafter, Lender will determine the new interest rate and the changed amount of the monthly payments based on the Adjusted Rate. The new interest rate shall become effective on each Rate Change Date. Borrower shall pay the amount of any new monthly interest payment beginning on the first Payment Date **following** any Rate Change Date. Lender will provide Borrower with notice of any changes in the amount of the monthly payment due under this Note. However, if Lender has not provided Borrower with prior notice of the monthly payment due on any Payment Date, then Borrower will pay on that Payment Date an amount equal to the monthly payment for which Borrower last received notice. If Lender at any time determines that Borrower has paid one or more monthly payments in an incorrect amount because of the preceding sentence, or because Lender has miscalculated the adjustable rate or has otherwise miscalculated the amount of any monthly payment, then Lender will give notice to Borrower of such determination. If such determination discloses that Borrower has paid less than the full amount due, Borrower, within thirty (30) calendar days after receipt of the notice from Lender, will pay to Lender the full amount of the deficiency. If such determination discloses that Borrower has paid more than the full amount due, then the amount of the overpayment will be credited to the next payment(s) of principal and interest due under this Note (or, if an Event of Default has occurred and is continuing, such overpayment will be credited against any amount owing by Borrower to Lender).

6.     Late Charge; Default Rate; NSF Charges

6.1     Late Charge. If any payment required hereunder is not paid on or before the tenth (10th) calendar day of the month in which it is due, or the payment is returned to Lender as a result of insufficient funds in Borrower's bank account, Borrower shall pay a late or collection charge equal to five percent (5%) of the amount of such unpaid payment. Borrower acknowledges that Lender will incur additional expenses as a result of any late payments hereunder, which expenses would be impracticable to quantify, and that Borrower's payments under this paragraph are a reasonable estimate of such expenses and do not constitute a penalty. The foregoing to the contrary notwithstanding, no late or collection charge shall be payable by Borrower as a result of any delay in the payment of any sum due and payable on the Maturity Date.

6.2     Default Rate. Commencing upon an Event of Default and continuing until such Event of Default shall have been cured by Borrower, all sums owing on this Note shall bear interest until paid in full at a rate per annum equal to the Default Rate.

HUNTLEY000039

6.3    Non-Sufficient Funds Charge. Any checks received that are returned to Lender marked for "non-sufficient funds" shall require payment by Borrower of a NSF fee of $25 or such other amount then charged by Lender in accordance with applicable law.

7.    Prepayments

7.1    Prepayment Premium. Prepayment of the Loan other than: (i) as provided in Section 4.1 hereof with respect to the interest pre-paid on the Closing Date; (ii) as a result of application of insurance proceeds or a condemnation award received by Lender pursuant to the Security Instrument; or (iii) a prepayment made after **12/01/2025**, as long as Lender has not granted forbearance or otherwise altered the payment schedule during the term of the Loan by written agreement with the Borrower prior to such date (in a writing signed by an officer of Lender holding a title of Executive Vice President or higher), shall result in Borrower owing to Lender a prepayment premium detailed as follows:

(a)    Four percent (4%) of the amount of principal amount of this Note that is then outstanding if the prepayment occurs on or prior to **12/01/2023**;

(b)    Three percent (3%) of the amount of principal amount of this Note that is then outstanding if the prepayment occurs on or prior to **12/01/2024**; and

(c)    One percent (1%) of the amount of principal amount of this Note that is then outstanding if the prepayment occurs on or prior to **12/01/2025**.

7.2    PREPAYMENT WAIVER. BORROWER HEREBY EXPRESSLY WAIVES THE RIGHT TO PREPAY THE INDEBTEDNESS EVIDENCED HEREBY IN WHOLE OR PART WITHOUT PENALTY, AND EXPRESSLY AGREES TO PAY THE AMOUNTS REQUIRED HEREIN IN THE EVENT OF AN ACCELERATION. BORROWER AGREES THAT THE PREPAYMENT CONSIDERATION REQUIRED HEREIN IS REASONABLE. BORROWER HAS GIVEN INDIVIDUAL WEIGHT TO THE CONSIDERATION IN THIS TRANSACTION FOR THIS WAIVER AND AGREEMENT. Any such prepayment shall not result in a reamortization, deferral, postponement, suspension or waiver of any and all other payments due under this Note. Pursuant to California Civil Code Section 2954.10, Borrower has initialed this provision of the Note expressly waiving the right to prepay the Note except as expressly permitted herein.

**Borrower Initials:** _____

8.    Taxes and Insurance

8.1    If requested by Lender, Borrower shall pay to Lender on each Payment Date an amount determined by Lender that will result in the deposit with Lender of sufficient funds to pay all such Taxes at least thirty (30) days prior to their respective due dates, and (ii) an amount determined by Lender that will result in the deposit with Lender of sufficient funds to pay all insurance premiums at least thirty (30) days prior to the expiration of the applicable insurance policies. "**Taxes**" shall mean all real estate and personal property taxes, assessments, water rates or sewer rents, maintenance charges, impositions, vault charges and license fees, now or hereafter levied or assessed or imposed against all or part of the Property. Such amounts will be transferred by Lender to an account maintained by Lender (the "**Tax and Insurance Account**"). Lender will (a) apply funds in the Tax and Insurance Account to payments of Taxes and insurance premiums required to be made by Borrower, provided that Borrower has promptly supplied Lender with notices of all Taxes and insurance premiums due, or (b) reimburse Borrower for such amounts within thirty (30) days after Lender's receipt of evidence of payment. In making any payment relating to Taxes and insurance premiums, Lender may do so according to any bill, statement or estimate procured from the appropriate public office (with respect to Taxes) or insurer or agent (with respect to insurance premiums), without inquiry into the accuracy of such bill, statement or estimate or into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof. If Lender determines in its reasonable judgment that the funds in the Tax and Insurance Account will be insufficient to pay (or in excess of) the Taxes or insurance premiums next coming due, Lender may increase (or decrease) the monthly

HUNTLEY000040

contribution required to be made by Borrower to the Tax and Insurance Account. Notwithstanding the foregoing, nothing contained herein shall cause Lender to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Lender pursuant to this Section. Lender shall not be obligated to pay or allow any interest on any sums held by Lender pending disbursement or application hereunder, and Lender may impound or reserve for future payment of Taxes and insurance premiums such portion of such payments as Lender may in its absolute discretion deem proper, applying the balance on the principal of or interest on the obligations secured hereby.

8.2     Should Borrower fail to deposit with Lender (exclusive of that portion of said payments which has been applied by Lender on principal of or interest on the indebtedness secured hereby) sums sufficient to fully pay such Taxes or insurance premiums, at least thirty (30) days before delinquency thereof, Lender may, at Lender's election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured by the Security Instrument and shall be repayable to Lender, or at the option of Lender the Lender may, without making any advance whatever, apply any sums held by it upon any obligation of Borrower secured by the Security Instrument.

8.3     As security for payment of the Loan and the performance by Borrower of all other terms, conditions and provisions of the Loan Documents, Borrower hereby pledges and assigns to Lender, and grants to Lender a security interest in, all Borrower's right, title and interest in and to the Tax and Insurance Account. Borrower hereby grants to Lender a continuing security interest in, and agrees to hold in trust for the benefit of Lender, all funds in the Tax and Insurance Account. Borrower shall not, without obtaining the prior written consent of Lender, further pledge, assign or grant any security interest in the Tax and Insurance Account, or permit any lien to attach thereto, or any levy to be made thereon, or any financing statements, except those naming Lender as the secured party, to be filed with respect thereto. This Note is, among other things, intended by the parties to be a security agreement for purposes of the UCC. Upon the occurrence and during the continuance of an Event of Default, Lender may apply any sums in the Tax and Insurance Account in any order and in any manner as Lender shall elect in Lender's discretion without seeking the appointment of a receiver and without adversely affecting the rights of Lender to foreclose the lien of the Security Instrument or exercise its other rights under the Loan Documents. The Tax and Insurance Account shall not constitute trust funds and may be commingled with other monies held by Lender. Upon repayment in full of this Note, all remaining funds in the Tax and Insurance Account, if any, shall be promptly disbursed to Borrower.

9.      Maximum Rate Permitted By Law

Neither this Note nor any of the other Loan Documents may be construed to require the payment or permit the collection of, in each case, any interest or any late payment charge to be charged to Borrower in excess of the maximum rate permitted by law applicable to Lender as a federally chartered savings association. If any such excess interest or late payment charge is provided for under this Note or any of the other Loan Documents or if this Note or any of the other Loan Documents shall be adjudicated to provide for such excess, neither Borrower nor Borrower's successors or assigns shall be obligated to pay such excess, and the right to demand the payment of any such excess shall be and hereby is waived, and this provision shall control any other provision of this Note or any of the other Loan Documents. If Lender shall collect amounts that are deemed to constitute interest and that would increase the effective interest rate to a rate in excess of the maximum rate permitted by law to be charged to Borrower, all such amounts deemed to constitute interest in excess of the maximum legal rate shall, upon such determination, at the option of Lender, be returned to Borrower or credited against the outstanding principal balance of this Note.

10.     Acceleration

If (a) Borrower shall fail to pay when due any sums payable under this Note; (b) any other Event of Default shall occur (taking into account the provisions of Section 14 hereof); or (c) any other event or condition shall occur which, under the terms of the Security Instrument or any other Loan Document, gives rise to a right of acceleration of sums owing under this Note, then Lender, at its sole option, shall have the right to declare all sums owing under this Note immediately due and payable; provided, however, if the Security Instrument or any other Loan Document provides for the automatic acceleration of payment of sums owing

under this Note, all sums owing under this Note shall be automatically due and payable in accordance with the terms of the Security Instrument or such other Loan Document.

11.    Recourse

Borrower shall have full recourse liability to Lender under all of the Loan Documents for the payment of the Loan and for the performance of all other obligations of Borrower under the Loan Documents.

12.    Disbursement of Loan Proceeds; Limitation of Liability

Borrower hereby authorizes Lender to disburse the proceeds of the Loan, after deducting any and all fees owed by Borrower to Lender in connection with the Loan to Borrower.  With respect to such disbursement, Borrower understands and agrees that Lender does not accept responsibility for errors, acts or omissions of others, including, without limitation, the escrow company, other financial institutions, communications carriers or clearinghouses through which the transfer of Loan proceeds may be made or through which Lender receives or transmits information, and no such entity shall be deemed Lender's agent.  As a consequence, Lender shall not be liable to Borrower for any actual (whether direct or indirect), consequential or punitive damages, whether or not (a) any claim for such damages is based on tort or contract; or (b) either Lender or Borrower knew or should have known of the likelihood of such damages in any situation.

13.    Notices.

All notices and other communications that are required or permitted to be given to a party under this Note shall be in writing and shall be sent to such party, either by personal delivery, by overnight delivery service, or by certified first-class mail, return receipt requested.  All notices and other communications shall include reference to Lender's loan number.  Any party may change its address for notice hereunder to any other location within the continental United States by giving thirty (30) days' notice to the other parties in the manner set forth above.  All such notices and communications shall be effective upon receipt, or in the case of notice via certified first-class mail, return receipt requested, upon the earlier of (i) receipt or (ii) five days of mailing.

The initial addresses of the parties shall be:

> LENDER:
> Axos Bank
> 4350 La Jolla Village Drive, Suite 140
> Mail Code CLO- 031
> San Diego, CA 92122
> Attn:  Loan Servicing
>
> BORROWER:
> HUNTLEY AVENUE, LLC
> 2029 CENTURY PARK EAST, SUITE 400
> LOS ANGELES, CA 90067

14.    Non-Trustor Borrower

If any Borrower is not also a trustor under the Security Instrument, such Borrower hereby makes all representations and warranties in favor of Lender contained in Article 5 of the Security Instrument, all covenants contained in Sections 6.4, 6.5, 6.6, 6.7, 6.23, 6.24 of the Security Instrument, and all indemnities in favor of Lender contained in Section 6.18 of the Security Instrument, jointly and severally with the trustor. In addition, if any Borrower is not also a trustor under the Security Instrument, any reference to the Trustor in the description of the Events of Default thereunder shall also be deemed to reference any such Borrower.

HUNTLEY000042

15.    Intentionally Omitted

16.    Assignment

This Note may be freely transferred and assigned by Lender, its successors, endorsees and assigns. Borrower's ability to assign, delegate, or otherwise, directly or indirectly, transfer its rights or obligations with respect to, in each case, its indebtedness, duties under the Loan Documents, or to be released from liability under this Note as a result of such an assignment, delegation, or other transfer shall be governed, in each case, by Section 6.14 of the Security Instrument regarding the "Transfer" of the trustor's interest therein (it being understood that "Transfer" has the meaning ascribed to it in Section 6.14.1 of the Security Instrument). The Borrower shall not "Transfer" its interest under any of the Loan Documents in violation of the provisions of Section 6.14 of the Security Instrument, such provisions being construed for the purposes of this Section of the Note as if the Borrower hereunder were the trustor under the Security Instrument. Any "Transfer" by the Borrower of its interest under any of the Loan Documents contrary to this provision shall be null and void *ab initio*. For clarity in construing these provisions, the trustor under the Security Instrument is referred to as "Borrower" in the text of the Security Instrument.

17.    Brokers and Financial Advisors

Borrower hereby represents that it has dealt with no financial advisors, brokers, underwriters, placement agents, agents or finders in connection with the Loan other than **Marcus & Millichap Capital Corporation** ("**Broker**") whose fees shall be paid by Borrower pursuant to a separate agreement. Borrower shall indemnify and hold Lender harmless from and against any and all claims, liabilities, costs and expenses (including attorneys' fees, whether incurred in connection with enforcing this indemnity or defending claims of third parties) of any kind in any way relating to or arising from a claim by any Person (including Broker) that such Person acted on behalf of Borrower in connection with the transactions contemplated herein. The provisions of this Section shall survive the expiration and termination of this Note and the repayment of this Note and satisfaction of all of its monetary and nonmonetary obligations set forth under the Loan Documents.

18.    Compliance With Laws

Borrower hereby represents, warrants and covenants that:

18.1    Neither Borrower nor Guarantor nor any of their respective Affiliates is or will be a Person (a) that is listed in the Annex to, or is otherwise subject to the provisions of, Executive Order 13224 issued on September 24, 2001 ("**EO13224**"), (b) whose name appears on the United States Treasury Department's Office of Foreign Assets Control ("**OFAC**") most current list of "Specifically Designated National and Blocked Persons," (c) who commits, threatens to commit or supports "terrorism," as defined in EO13224, or (d) who is otherwise affiliated with any entity or Person listed above (any and all parties or Persons described in subparts (a) through (d) above are herein referred to as a "**Prohibited Person**"). Neither Borrower nor Guarantor nor any of their respective Affiliates will knowingly (i) conduct any business, nor engage in any transaction or dealing, with any Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services to or for the benefit of a Prohibited Person, or (ii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in EO13224. Borrower shall deliver (from time to time) to Lender any such certification or other evidence as may be requested by Lender in its sole and absolute discretion, confirming each such representation.

18.2    Neither Borrower nor Guarantor, nor to the knowledge of Borrower, any agent or other Person acting on behalf of the Borrower or Guarantor, has (a) directly or indirectly, used any funds for unlawful contributions, gifts, entertainment or other unlawful expenses related to foreign or domestic political activity, (b) made any unlawful payment to foreign or domestic government officials or employees or to any foreign

Secured Promissory Note (CA) (Version 3.0)                                    Page 9

HUNTLEY000043

or domestic political parties or campaigns from corporate funds, (c) failed to disclose fully any contribution made by Borrower or Guarantor (or made by any Person acting on its behalf of which Borrower or Guarantor is aware) which is in violation of law, or (d) violated in any material respect any provision of the Foreign Corrupt Practices Act of 1977 (15 U.S.C. §§ 78dd-1, et seq.), as amended ("**FCPA**"). Each of Borrower and Guarantor shall cause any agent or other Person acting on its behalf to comply with the FCPA, including maintaining and complying with all policies and procedures to ensure compliance with this act.

18.3     Neither Borrower nor Guarantor, nor to the knowledge of Borrower, any agent or other Person acting on behalf of the Borrower or Guarantor, has (a) committed any crime or any violation of any applicable laws, ordinances, rules, regulations and requirements, (b) been indicted on or arraigned on charges that such Person has committed any crime or any violation of applicable laws, ordinances, rules, regulations and requirements, or (c) been convicted or accused of committing of crime or of violating any applicable laws, ordinances, rules, regulations and requirements. Each of Borrower and Guarantor shall not commit, and shall cause any agent or other Person acting on its behalf to not commit, any crime or violate any applicable laws, ordinances, rules, regulations and requirements. Borrower shall immediately notify Lender if Borrower, Guarantor, or any agent or other Person acting on behalf of the Borrower or Guarantor is convicted, indicted on, arraigned on or accused of committing any crime or of violating any applicable laws, ordinances, rules, regulations and requirements.

19.     <u>General Provisions</u>

19.1     <u>Joint and Several Liability</u>.  If this Note is executed by more than one Person or entity as Borrower, the obligations of each such Person or entity shall be joint and several.  No Person or entity shall be a mere accommodation maker, but each shall be primarily and directly liable hereunder.

19.2     <u>Waiver of Presentment</u>.  Except as otherwise provided in any other Loan Document, Borrower hereby waives presentment, demand, notice of dishonor, notice of default or delinquency, notice of acceleration, notice of nonpayment, notice of costs, expenses or losses and interest thereon, and notice of interest on interest and late charges.

19.3     <u>Delay in Enforcement</u>.  No previous waiver or failure or delay by Lender in acting with respect to the terms of this Note or the Security Instrument shall constitute a waiver of any breach, default or failure of condition under this Note, the Security Instrument or the obligations evidenced or secured thereby.  A waiver of any term of this Note, the Security Instrument or of any of the obligations evidenced or secured thereby must be made in writing signed by Lender, shall be limited to the express terms of such waiver, and shall not constitute a waiver of any subsequent obligation of Borrower.  The acceptance at any time by Lender of any past due amount shall not be deemed to be a waiver of the right to require prompt payment when due of any other amounts then or thereafter due and payable.

19.4     <u>Time of the Essence</u>.  Time is of the essence with respect to all Borrower's obligations hereunder involving: (i) the payment of money and (ii) providing notice to Lender.

19.5     <u>Governing Law</u>.  This Note and the other Loan Documents shall be governed by and construed under the internal laws of the State of California, except to the extent preempted by federal laws.

19.6     <u>Consent to Jurisdiction</u>. Borrower irrevocably submits to the jurisdiction of: (a) any state or federal court sitting in the State of California over any suit, action, or proceeding, brought by Borrower against Lender, arising out of or relating to this Note or the Loan evidenced hereby; (b) any state or federal court sitting in the state where the Property is located or the state in which Borrower's principal place of business is located over any suit, action or proceeding, brought by Lender against Borrower, arising out of or relating to this Note or the Loan evidenced hereby; and (c) any state court sitting in the county of the state where the Property is located over any suit, action, or proceeding, brought by Lender to exercise its STATUTORY POWER OF SALE under the Security Instrument or any action brought by Lender to enforce its rights with respect to the Property.  Borrower irrevocably waives, to the fullest extent permitted by law, any objection that Borrower may now or hereafter have to the laying of venue of any such suit, action, or proceeding

HUNTLEY000044

brought in any such court and any claim that any such suit, action, or proceeding brought in any such court has been brought in an inconvenient forum.

19.7    Heirs, Successors and Assigns.

(a)    All of the terms, covenants, conditions and indemnities of Borrower contained in this Note and the other Loan Documents shall be binding upon the heirs, successors and assigns of Borrower and shall inure to the benefit of the successors, indorsees and assigns of Lender.  The foregoing sentence shall not be construed to permit Borrower to assign the Loan or otherwise directly or indirectly transfer its interest therein contrary to Section 14 hereof.

(b)    Lender may assign its right, title, and interest in any or all of the Secured Obligations (as defined in the Security Instrument) arising under this Note to any Person and any such assignee shall succeed to all of Lender's rights with respect thereto.  Upon such assignment, Lender shall be released from all responsibility for the Collateral (as defined in the Security Instrument) to the extent same is assigned to any transferee.  Lender may from time to time sell or otherwise grant participations in any of the Secured Obligations (as defined in the Security Instrument) and the holder of any such participation shall, subject to the terms of any agreement between Lender and such holder, be entitled to the same benefits as Lender with respect to any security for the Secured Obligations (as defined in the Security Instrument) in which such holder is a participant.

19.8    Severability.  If any term of this Note, or the application thereof to any Person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Note, or the application of such term to Persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term of this Note shall be valid and enforceable to the fullest extent permitted by law.

19.9    Further Assurances.  Borrower shall, upon demand by Lender, execute, acknowledge (if appropriate) and deliver any and all documents and instruments and do or cause to be done all further acts reasonably necessary or appropriate to effectuate the provisions hereof.

19.10    Attorneys' Fees.  In the event it is necessary for Lender to retain the services of an attorney or any other party to enforce or to commence any legal action to enforce the terms of this Note, the Security Instrument, or any of the other Loan Documents, or any portion hereof or thereof, Borrower agrees to pay to Lender, in addition to damages or other relief, any and all costs and expenses incurred in connection therewith.

19.11    Disclaimers.  The relationship of Borrower and Lender under this Note and the other Loan Documents is, and shall at all times remain, solely that of borrower and lender; and Lender neither undertakes nor assumes any responsibility or duty to Borrower or to any third party with respect to the Property.  Notwithstanding any other provisions of this Note and the other Loan Documents:  (i) Lender is not, and shall not be construed to be, a partner, joint venturer, member, alter ego, manager, controlling Person or other business associate or participant of any kind of Borrower, and Lender does not intend to ever assume such status; (ii) Lender's activities in connection with this Note and the other Loan Documents shall not be "outside the scope of activities of a lender of money" within the meaning of California Civil Code Section 3434, as amended or recodified from time to time, and Lender does not intend to ever assume any responsibility to any Person for the quality, suitability, safety or condition of the Property; and (iii) Lender shall not be deemed responsible for or a participant in any acts, omissions or decisions of Borrower.

19.12    Separate and Community Property.  Any married Person who executes this Note or any other Loan Document as a Borrower agrees that any money judgment which Lender obtains pursuant to the terms of this Note or any other Loan Document may be collected by execution upon any separate property or community property, in each case, of that Person.

19.13    Integration; Interpretation.  The Loan Documents contain or expressly incorporate by reference the entire agreement of the parties with respect to the matters contemplated therein and supersede all prior

HUNTLEY000045

negotiations or agreements, written or oral. The Loan Documents shall not be modified except by written instrument executed by all parties. Any reference in any of the Loan Documents to the Property shall include all or any part of the Property. Any reference to the Loan Documents includes any amendments, renewals or extensions now or hereafter approved by Lender in writing.

19.14   Commercial Purpose. Borrower represents that the indebtedness evidenced by the Note is being incurred by Borrower solely for the purpose of carrying on a business or commercial enterprise, and not for personal, family or household purposes.

20.   WAIVER OF RIGHT TO JURY TRIAL.

BORROWER HEREBY EXPRESSLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY ANY APPLICABLE LAWS, ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS NOTE OR ANY OTHER LOAN, DOCUMENT (2) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS NOTE OR ANY OTHER LOAN DOCUMENT OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE. BORROWER HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY. NOTWITHSTANDING THE FOREGOING TO THE CONTRARY, IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, BORROWER HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE. PURSUANT TO SUCH JUDICIAL REFERENCE, BORROWER AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE WITH LENDER. IF THE PARTIES ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. BORROWER ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER AND THE AGREEMENTS CONTAINED HEREIN. BORROWER HEREBY AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS AND HAS BEEN AFFORDED THE OPPORTUNITY TO HAVE ITS LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN.

21.   PATRIOT ACT. Lender hereby notifies Borrower that pursuant to the requirements of the Patriot Act, it is required to obtain, verify and record information that identifies Borrower, which information includes the name and address of Borrower and other information that will allow Lender to identify Borrower in accordance with the Patriot Act. Borrower will provide such information promptly upon the request of Lender.

[SIGNATURE PAGE FOLLOWS]

HUNTLEY000046

IN WITNESS WHEREOF, Borrower has duly executed this Note to be effective the day and year first above written.

**BORROWER:**

**Huntley Avenue, LLC,**
a California limited liability company

By: _____
Avraham Farzan, Manager for Huntley Avenue, LLC

HUNTLEY000047

# Exhibit B

HUNTLEY000048



**This page is part of your document - DO NOT DISCARD**



## 20221068698



**Pages:
0046**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**11/14/22 AT 08:00AM**

| | |
|---|---|
| FEES: | 227.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 452.00 |



**L E A D S H E E T**



202211140140027

00022935182



013773509

**SEQ:
01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**



2676024067-52
HUNTLEY000049

OLD REPUBLIC TITLE COMPANY

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

AXOS BANK™
4350 La Jolla Village Drive, Suite 140
Mail Code CLO- 031
San Diego, CA 92122

Tax Parcel(s)/APN: **4215-017-041**

**4215-017-042**

2676024067-S2

(Space Above For Recorder's Use)

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

Huntley Avenue, LLC, a California limited liability company

(Trustor)

to

FIRST AMERICAN TITLE INSURANCE COMPANY

(Trustee)

in favor of

AXOS BANK™

(Lender)

**DATED:** NOVEMBER 1, 2022

HUNTLEY000050

OLD REPUBLIC TITLE COMPANY

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

AXOS BANK™
4350 La Jolla Village Drive, Suite 140
Mail Code CLO- 031
San Diego, CA 92122

Tax Parcel(s)/APN: **4215-017-041**

**4215-017-042**
2676024067-S2

                    (Space Above For Recorder's Use)

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

Huntley Avenue, LLC, a California limited liability company

(Trustor)

to

FIRST AMERICAN TITLE INSURANCE COMPANY

(Trustee)

in favor of

AXOS BANK™

(Lender)

**DATED:** NOVEMBER 1, 2022

HUNTLEY000051

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "**Deed of Trust**"), dated as of **November 1, 2022** is entered into by **Huntley Avenue, LLC, a California limited liability company** ("**Trustor**"), as Trustor, having its principal place of business **AT 2029 CENTURY PARK EAST, SUITE 400, LOS ANGELES, CA 90067,** in favor of First American Title Insurance Company ("**Trustee**"), as Trustee, for the benefit of AXOS BANK™, a federally chartered savings association ("**Lender**"), as beneficiary, having its principal place of business at 4350 La Jolla Village Drive, Suite 100, San Diego, California, 92122.

### RECITALS:

A.      Lender is making a loan (the "**Loan**") to Trustor ("**Borrower**"), which is evidenced by a Secured Promissory Note (all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms), collectively, the "**Note**") in the principal amount of **ONE MILLION SIX HUNDRED THOUSAND AND 00/100 DOLLARS ($1,600,000.00)**, executed by Borrower in favor of Lender, dated the same date as this Deed of Trust, payable to the order of Lender.

B.      The loan documents include this Deed of Trust, the Note and the other documents described in the Note as Loan Documents (the "**Loan Documents**").

## ARTICLE 1

## DEED OF TRUST

1.1.      Grant. For the purposes of and upon the terms and conditions of this Deed of Trust, Trustor irrevocably grants, conveys and assigns to Trustee, in trust for the benefit of Lender, with power of sale and right of entry and possession, all estate, right, title and interest which Trustor now has or may hereafter acquire in, to, under or derived from any or all of the following:

(a)      All right, title and interest which Trustor now has or may later acquire in any real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances, strips and gores of land, streets, ways, alleys, passages, thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water, water courses and water rights and powers, and all sewers and sewer rights, pipes, conduits, wires and other facilities furnishing utility or services to the real property, air rights and development rights and credits, pumps, pipes, flumes and ditches and ditch rights, water stock, ditch and/or reservoir stock or interests, rights to oil, gas, minerals, coal and other substances of any kind or character (the "**Land**") located in the **County of Los Angeles, State of California**, and more particularly described on Exhibit A attached hereto;

(b)      All right, title and interest which Trustor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected, used or placed on the Land, including, without limitation, all plant equipment, apparatus, machinery, appliances and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "**Improvements**");

(c)      All right, title and interest which Trustor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Property (hereinafter defined);

A-1

Security Instrument

HUNTLEY000052

(d)     All additions and accretions to the property described above;

(e)     All licenses, authorizations, certificates, variances, consents, approvals and other permits now or hereafter pertaining to the Land and all estate, right, title and interest of Trustor in, to, under or derived from all trade names or business names relating to the Land or the present or future development, construction, operation or use of the Land;

(f)     Any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Trustor and all subsequent owners of the Property (hereinafter defined) which may be made with respect to the Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Property, which said award or awards are hereby assigned to Lender;

(g)     Any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Property;

(h)     Any and all claims or demands which Trustor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Property;

(i)     Any and all claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Property, now or hereafter, whether or not such policies name Lender as an insured and whether or not such policies are required by Lender, and whether or not such claims thereunder are characterized as personal claims;

(j)     All goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Property or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Property, together with any and all accessions, accessories, attachments and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Property;

(k)     All instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights and transferable development rights; all of Trustor's right, title and interest in and to any awards, remunerations, settlements or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Trustor from non-governmental sources;

(l)     All leases of the Property, Personalty (as defined below), Fixtures (as defined below), or any part thereof, now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Trustor now or hereafter existing pertaining to the use and enjoyment of the Property; and all right, title and interest of Trustor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Property;

A-2

Security Instrument

HUNTLEY000053

(m)     All permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property; and

(n)     All rents, income, issues and profits (subject, however, to the rights given in this Deed of Trust to Lender to collect and apply same), including, without limitation, the accounts, revenues and proceeds of any business operation conducted by or on behalf of Trustor on or through the use of the Property, prepaid municipal and utility fees, bonds, revenues, income and other benefits to which Trustor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive. It is the intent of Trustor to encumber hereby all property located or to be located upon the above-described real property. Said real property (or the leasehold estate if this Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "**Property.**" As used herein, the term "**Fixtures**" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term "**Personalty**" shall include all furniture, furnishings, equipment, machinery, goods, contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in this Deed of Trust (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Trustor's right, title, and interest in and to all such property.

## ARTICLE 2

## OBLIGATIONS SECURED

2.1.    <u>Obligations Secured</u>. Trustor makes the foregoing grant and assignment for the purpose of securing the following obligations (the "**Secured Obligations**"):

(a)     Full and punctual payment to Lender of all sums at any time owing under the Note by Borrower;

(b)     Payment and performance of all covenants and obligations of Trustor under this Deed of Trust including, without limitation, indemnification obligations and advances made to protect the Property;

(c)     Payment and performance of all additional covenants and obligations of Trustor and Borrower, in each case, under the Loan Documents except for the Trustor's and/or Borrower's covenants and obligations under any Environmental Indemnity Agreement, executed in favor of Lender, as of the date hereof, including any riders and amendments thereto or replacements thereof (collectively, the "**Environmental Indemnity Agreement**"). For the avoidance of doubt, the Secured Obligations, notwithstanding anything to the contrary contained herein, shall not include, obligations or covenants, in each case, pursuant to: (i) any guarantee of the Loan, including, without limitation, any amendment thereto or replacement thereof (it being understood that the guarantor(s) under such guarantee/guarantees shall not be the Trustor); (ii) any environmental indemnity regarding the Property executed by, in each case, the Borrower, Trustor and/or any guarantor/additional indemnitor, including, without limitation, the Environmental Indemnity Agreement; and (iii) any similar guarantee or indemnity, including any rider(s) and amendments thereto or replacements thereof, by which a person guarantees or otherwise acts as a surety regarding the Trustor's obligations under the Loan Documents (it being understood that guarantee and guarantees, as used in this Section 2.1(c), shall not be construed to include this Deed of Trust, even if this Deed of Trust is executed by a Trustor that is not the Borrower). For the avoidance of doubt and without limiting the generality of the foregoing provisions of this Section 2.1(c), this Deed of Trust does not secure

A-3

Security Instrument

HUNTLEY000054

and shall not be construed to secure, in each case, the Environmental Indemnity Agreement and any guarantee of the Loan.

(d)      Payment and performance of all covenants and obligations, if any, that any rider, attached as an exhibit to this Deed of Trust, recites are secured hereby;

(e)      Payment and performance of all future advances and other obligations that the then record owner of all or part of the Property may agree to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Lender when the obligation is evidenced by a writing that recites that it is secured by this Deed of Trust; however, any obligation secured by this Deed of Trust shall not be construed to be part of any guarantee or Environmental Indemnity Agreement (as the terms guarantee/guarantees and Environmental Indemnity Agreement are used in Section 2.1(c) hereof, including, in each case, any rider(s) or successor documents thereto);

(f)      All interest and charges on all obligations secured hereby including, without limitation, prepayment charges, late charges and Loan-related fees; and

(g)      All modifications, extensions and renewals of any of the obligations secured hereby, however evidenced, including, without limitation: (i) modifications of the required principal payment dates or interest payment dates or both, as the case may be, deferring or accelerating payment dates wholly or partly; and (ii) modifications, extensions or renewals at a different rate of interest whether or not any such modification, extension or renewal is evidenced by a new or additional promissory note or notes.

2.2.      Obligations.    The term "**obligations**" is used herein in its broadest and most comprehensive sense and shall be deemed to include, without limitation, all interest and charges, prepayment charges, late charges, reimbursements for expenses, and Loan-related fees at any time accruing or assessed on any of the Secured Obligations.

2.3.      Incorporation.  All terms and conditions of the documents that evidence any of the Secured Obligations are incorporated herein by this reference.  All persons who may have or acquire an interest in the Property shall be deemed to have notice of the terms of the Secured Obligations and to have notice that the rate of interest on one or more Secured Obligations may vary from time to time.  As used in this Deed of Trust, "person" or "persons" shall refer to both a natural person and a legal person.

## ARTICLE 3

## ASSIGNMENT OF RENTS AND LEASES

3.1.      Assignment.  Trustor absolutely, irrevocably, and unconditionally grants, transfers and assigns to Lender all of Trustor's right, title and interest in, to and under:  (a) all present and future leases of the Property or any portion thereof, all licenses and agreements relating to the management, leasing or operation of the Property or any portion thereof, and all other agreements of any kind relating to the use or occupancy of the Property or any portion thereof, whether such leases, licenses and agreements are now existing or entered into after the date hereof (collectively, the "**Leases**"); and (b) the rents, issues, deposits and profits of the Property, including, without limitation, all amounts payable and all rights and benefits accruing to Trustor under the Leases (the "**Payments**").  The term "**Leases**" shall also include all guarantees of and security for the tenants' performance thereunder, and all amendments, extensions, renewals or modifications thereto that are permitted hereunder.  This is a present and absolute assignment, not an assignment for security purposes only, and Lender's right to the Leases and Payments is not contingent upon, and may be exercised without possession of, the Property.

3.2.      Grant of License.  Lender confers upon Trustor a revocable license (the "**License**") to collect and retain the Payments as they become due and payable, until the occurrence of an Event of Default (as hereinafter defined).  Upon an Event of Default, the License shall be automatically revoked and Lender may collect and apply the Payments pursuant to the terms hereof without notice and without taking possession of the Property.  All Payments thereafter collected by Trustor shall be held by Trustor as trustee

A-4

Security Instrument

HUNTLEY000055

under a constructive trust for the benefit of Lender. Trustor hereby irrevocably authorizes and directs the tenants under the Leases to rely upon and comply with any notice or demand by Lender for the payment to Lender of any rental or other sums which may at any time become due under the Leases, or for the performance of any of the tenants' undertakings under the Leases, and the tenants shall have no right or duty to inquire as to whether any Event of Default has actually occurred or is then existing. Trustor hereby relieves the tenants from any liability to Trustor by reason of relying upon and complying with any such notice or demand by Lender. Lender may apply, in its sole discretion, any Payments so collected by Lender against any Secured Obligation or any other obligation of Trustor or any other person or entity, under any document or instrument related to or executed in connection with the Loan Documents, whether existing on the date hereof or hereafter arising. Collection of any Payments by Lender shall not cure or waive any Event of Default or notice of an Event of Default or invalidate any acts done pursuant to such notice.

3.3. <u>Effect of Assignment</u>. The foregoing irrevocable assignment shall not cause Lender to be: (a) a mortgagee in possession; (b) responsible or liable for the control, care, management or repair of the Property or for performing any of the terms, agreements, undertakings, obligations, representations, warranties, covenants and conditions of the Leases; (c) responsible or liable for any waste committed on the Property by the tenants under any of the Leases or by any other parties for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee, invitee or other person; or (d) responsible for or impose upon Lender any duty to produce rents or profits. Lender shall not directly or indirectly be liable to Trustor or any other person as a consequence of: (e) the exercise or failure to exercise any of the rights, remedies or powers granted to Lender hereunder; or (f) the failure or refusal of Lender to perform or discharge any obligation, duty or liability of Trustor arising under the Leases.

3.4. <u>Covenants</u>.

    (a)    <u>All Leases</u>. Trustor shall, at Trustor's sole cost and expense:

    (i)    perform all obligations of the landlord under the Leases and use reasonable efforts to enforce performance by the tenants of all obligations of the tenants under the Leases;

    (ii)    use reasonable efforts to keep the Property leased at all times to tenants that Trustor in good faith believes are creditworthy, at rents not less than the fair market rental value (including, but not limited to, free or discounted rents to the extent the market so requires);

    (iii)    promptly upon Lender's request, deliver to Lender a copy of each requested Lease and all amendments thereto and waivers thereof, as well as any landlord or tenant estoppel certificates requested by Lender;

    (iv)    promptly upon Lender's request, execute and record any additional assignments of landlord's interest under any Lease to Lender and specific subordinations of any Lease to this Deed of Trust, in form and substance satisfactory to Lender; and

    (v)    promptly upon Lender's request, but in any event by June 30th of each year, provide Lender a current rent roll, certified by Trustor as being true and correct, containing the names of all tenants with respect to the Property, the terms of their respective Leases, the spaces occupied and the rentals or fees payable thereunder and the amount of each tenant's security deposit.

Unless consented to in writing by Lender or otherwise permitted under any other provision of the Loan Documents, Trustor shall not:

A-5

Security Instrument

HUNTLEY000056

(vi)    grant any tenant under any Lease any option, right of first refusal or other right to purchase all or any portion of the Property under any circumstances;

(vii)    grant any tenant under any Lease any right to prepay rent more than one (1) month in advance;

(viii)    except upon Lender's request, execute any assignment of landlord's interest in any Lease;

(ix)    except as set forth in Section 3.4(a)(vii), collect rent or other sums due under any Lease in advance, other than to collect rent one (1) month in advance of the time when it becomes due;

(x)    modify any Lease in a manner inconsistent with the Loan Documents;

(xi)    <u>Intentionally Omitted</u>

(xii)    <u>Intentionally Omitted</u>

(xiii)    <u>Intentionally Omitted</u>

(xiv)    execute any lease for a term of greater than five (5) years, which deviates materially from the standard form Lease approved by Lender in writing.

Any such attempted action in violation of the provisions of this Section 3.4(a) shall be null and void.

(b)    <u>Major Leases</u>. Trustor shall, at Trustor's sole cost and expense, give Lender prompt written notice of any material default by landlord or tenant under any Major Lease (as defined below). Unless consented to in writing by Lender or otherwise permitted under any other provision of the Loan Documents, Trustor, in each case, shall not:

(i)    enter into any Major Lease that (aa) is not on fair market terms (which terms may include free or discounted rent to the extent the market so requires); (bb) does not contain a provision requiring the tenant to execute and deliver to the landlord an estoppel certificate in form and substance satisfactory to the landlord promptly upon the landlord's request; (cc) allows the tenant to assign or sublet the premises without the landlord's consent; does not provide for automatic self-operative subordination to this Deed of Trust;

(ii)    reduce any rent or other sums due from the tenant under any Major Lease;

(iii)    terminate or materially modify or amend any Major Lease; or

(iv)    release or discharge the tenant or any guarantor under any Major Lease from any material obligation thereunder.

Any such attempted action in violation of the provisions of this Section 3.4(b) shall be null and void.

Without in any way limiting the requirement of Lender's consent hereunder, any sums received by Trustor in consideration of any termination or material modification or amendment of any Major Lease or any release or discharge of any tenant under any Major Lease from any material obligation

A-6

Security Instrument

HUNTLEY000057

thereunder shall be applied to reduce the outstanding Secured Obligations (without payment of a prepayment charge) and any such sums received by Trustor shall be held in trust by Trustor for such purpose; provided, however, so long as no Event of Default exists at the time, any sums received by Trustor in consideration of any termination (or the release or discharge of any tenant), modification or amendment of any Major Lease that:  (A) total less than $50,000 shall be payable to Trustor; and (B) total $50,000 or more shall be placed into an impound account and shall be released to Trustor from time to time upon delivery of an executed replacement tenant lease and satisfactory evidence as to the completion of re-tenanting work.  Following the completion of such re-tenanting work, and provided no Default exists at such time, Lender shall release any excess funds received by Trustor with respect to the termination of any Major Lease to Trustor. "**Major Lease**," as used herein, shall mean, in each case, (x) a Lease of more than twenty percent (20%) of the total rentable area of all buildings forming a part of the Property (assuming the exercise of all expansion rights and all preferential rights to lease additional space contained in any such Lease), as  determined by Lender, (y) cell tower Leases, (z) Leases of oil, gas and mineral rights.   Trustor's obligations with respect to Major Leases shall be governed by the provisions of Section 3.4(a) hereof applicable to all Leases as well as by the provisions of this Section 3.4(b).  Lender's failure to deny any written request by Trustor for consent as required by this Section 3.4(b) within twenty (20) Business Days after Lender's receipt of such request (and all documents and information reasonably related thereto) shall be deemed to constitute Lender's consent to such request. "**Business Day**" shall mean any day other than a Saturday, Sunday, legal holiday or other day on which commercial banks in New York, New York are authorized or required by law to close.  All references in this Deed of Trust to a "day" or a "date" shall be to a calendar day unless specifically referenced as a Business Day.

3.5.    Estoppel Certificates.  Within thirty (30) days after request by Lender, Trustor shall deliver to Lender and to any party designated by Lender, estoppel certificates relating to the Leases (excluding Leases of storage units) executed by Trustor and by each of the tenants, in form and substance acceptable to Lender; provided, however, if any tenant fails or refuses to so execute and deliver any such estoppel certificate upon request, Trustor shall use reasonable efforts to cause such tenant to execute and deliver such estoppel certificate but such tenant's continued failure or refusal to do so, despite Trustor's reasonable efforts, shall not constitute a default by Trustor under this Section 3.5.

3.6.    Right of Subordination.  Lender may at any time and from time to time by specific written instrument intended for the purpose unilaterally subordinate the lien of this Deed of Trust to any Lease, without joinder or consent of, or notice to, Trustor, any tenant or any other person.  Notice is hereby given to each tenant under a Lease of such right to subordinate.  No subordination referred to in this Section 3.6 shall constitute a subordination to any lien or other encumbrance, whenever arising, or improve the right of any junior lienholder.  Nothing herein shall be construed as subordinating this Deed of Trust to any Lease.

ARTICLE 4

SECURITY AGREEMENT AND FIXTURE FILING

4.1.    Security Interest.  This Deed of Trust shall also constitute and serve as a security agreement and financing statement for Personalty, Fixtures, and any of the Property in which a security interest can be perfected under and within the meaning of Division 9 of the California Uniform Commercial Code (the "**Collateral**"), and shall grant to Lender, until the obligations secured hereby shall be satisfied, a first priority security interest, including but not limited to a fixture filing, pursuant to Division 9 of the California Uniform Commercial Code with respect to the Personalty and Fixtures.  To this end, Trustor shall and hereby does grant to Lender, a first priority security interest in, under and to the Collateral.

4.2.    Financing Statements.  Trustor authorizes Lender to file such financing statements and cause such financing statements and other assurances as Lender may from time to time require to be recorded and filed at such times and places as may be required or permitted by law to create, perfect and preserve such security interest.

A-7

Security Instrument

HUNTLEY000058

4.3. <u>Remedies on Default</u>. Upon an event of default, Lender may, at its option: (i) exercise any remedy permitted by law or in equity, including without limitation, all the rights and remedies of a secured party under the California Uniform Commercial Code in any jurisdiction where enforcement is sought, whether in California or elsewhere; (ii) notify any parties obligated on any of the Personalty or Fixtures to make payment to Lender and enforce collection thereof; (iii) apply any sums received or collected from or on account of any Personalty or Fixtures, including the proceeds of any sales thereof, to the payment of any indebtedness of Trustor to Lender in any order, including the costs and expenses incurred in preserving and enforcing the rights of Lender and attorneys' fees, in such order and manner as Lender in Lender's sole discretion determines. All of Lender's rights and remedies shall be cumulative and not exclusive.

4.4. <u>Fixture Filing</u>. This Deed of Trust shall constitute a fixture filing under the California Uniform Commercial Code.

4.5. <u>Additional Covenants of Trustor</u>. Trustor, at its sole cost and expense, (a) shall give Lender at least thirty (30) days' prior written notice of any change in Trustor's principal place of business and the acquisition or use of a trade name or style by Trustor; (b) shall promptly notify Lender in writing of any claim, lien, security interest, right, encumbrance or any other occurrence that may be adverse to Lender's security interest in the Collateral; (c) shall defend the Collateral from all claims, liens, security interests, rights, encumbrances and other matters that are adverse to Lender's security interest in the Collateral; (d) shall promptly pay all costs and expenses relating to the purchase, ownership, or use of the Collateral, including all liens, taxes, assessments and charges of any board, commission, department, agency, court, or other body of any governmental unit (e.g., without limitation, (i) the federal government and the departments thereof and (ii) applicable state governments and any cities, counties, or other political subdivisions or special districts organized thereunder) having jurisdiction over, in each case, the matter, thing, or person in question (collectively, "**Governmental Authorities**") levied, assessed or imposed on all or part of the Collateral; (e) shall not sell, transfer, pledge (including, without limitation, any assignment for the benefit of creditors other than Lender), hypothecate, lease or otherwise dispose of or abandon all or part of the Collateral without Lender's prior written consent, except for the sale of inventory in the ordinary course of Trustor's business or the disposition of any Collateral that is replaced with new Collateral of substantially comparable value and utility; (f) shall not remove any material part of the Collateral that consists of tangible personal property from its location on the Property without Lender's prior written consent; (g) shall, upon Lender's request, give notice, in form and substance acceptable to Lender, to any or all account debtors designated by Lender of Trustor's grant of a security interest in any Collateral that consists of accounts, contract rights, instruments, documents, or general intangibles (collectively, the "**Accounts**" and individually, an "**Account**"); (h) following the occurrence of any Event of Default, shall not compromise, settle, adjust, or grant any discount, credit, or allowance to any Account debtor without Lender's prior written consent; (i) shall undertake any and all other acts necessary or appropriate to maintain, preserve and protect the Collateral and Lender's security interest therein, including any actions requested by Lender; (j) shall not without Lender's prior written consent, given at Lender's sole discretion and signed by an officer of Lender holding the title of Executive Vice President or higher, make or acquiesce in Trustor making any changes to organizational documents of, in each case, Trustor or any affiliate thereof or interest holder therein (e.g., without limitation, articles of organization, articles of incorporation, operating agreement, bylaws, certificate of formation, partnership agreement) that, in each case, violate or are inconsistent with Trustor's obligations under the Loan Documents or materially alter Trustor's performance of its duties under the Loan Documents (each an "**Unauthorized Amendment**"), and Trustor hereby agrees that Unauthorized Amendments shall not adversely affect Lender's rights and remedies against Trustor under the Loan Documents and that Trustor shall be estopped from using any Unauthorized Amendment as a defense to or to otherwise impair, delay, or undermine Lender's remedies against Trustor under the Loan Documents; and (k) shall execute and deliver to Lender such other documents as Lender may request in order to evidence, effectuate, perfect, maintain, preserve or protect Lender's security interest in the Collateral, including, without limitation, financing statements, continuation financing statements, financing statement amendments, security agreements, and assignments. If Trustor fails to execute and deliver to Lender any document requested by Lender pursuant to this Section 4.4 within ten (10) days after such request, then Trustor irrevocably appoints Lender, with full power of substitution, as Trustor's attorney-in-fact, coupled with an interest, with full power, in its own name or in the name of Trustor, to execute such document on behalf of Trustor. Trustor has set forth above its full and correct name, and Trustor does not presently use

A-8

Security Instrument

HUNTLEY000059

any other names or tradenames, except for those tradenames specifically disclosed in writing by Trustor to Lender prior to the recordation of this Deed of Trust. Nothing contained in this Article 4 may be construed to obligate Lender to act on behalf of Trustor as attorney-in-fact.

4.6.    FOR PURPOSES OF THE UCC THE FOLLOWING INFORMATION IS FURNISHED:

Name, address of Debtor(s):

HUNTLEY AVENUE, LLC
2029 CENTURY PARK EAST, SUITE 400
LOS ANGELES, CA 90067

Name and address
of Secured Party

Axos Bank
4350 La Jolla Village Dr., Ste. 140
San Diego, CA 92122

Description of the type
(or items) of property (constituting the
Collateral):

See Section 4.1.

Description of real property
to which the Collateral
is attached or upon which
it is or will be located:

See Exhibit A hereto.

## ARTICLE 5

## REPRESENTATIONS AND WARRANTIES

5.1.    Trustor's Representations and Warranties. Trustor represents and warrants to Lender that the following statements are true and correct as of the date set forth in the preamble, each and every date during the existence of the Loan, or any portion thereof, as the context admits or requires:

(a)    Legal Status. Trustor is qualified or licensed to do business in all jurisdictions in which such license or qualification is required.

(b)    No Conflicts. The execution, delivery and performance of the Loan Documents by Trustor and the transactions contemplated hereby will not conflict with or result in a breach of any of the terms or provisions of, or constitute a default under, or result in the creation or imposition of any lien or encumbrance (other than pursuant to the Loan Documents) upon any of the property of Trustor pursuant to the terms of, any agreement or instrument to which Trustor is a party or by which its property is subject, nor will such action result in any violation of the provisions of any statute or any order, rule or regulation of any governmental authority having jurisdiction over Trustor or any of its properties. Any consent, approval, authorization, order, registration or qualification of or with any governmental authority required for the execution, delivery and performance by Trustor of the Loan Documents has been obtained and is in full force and effect.

(c)    Permits. Trustor, or an affiliate thereof if permitted to do so under applicable law, possess all permits, franchises, licenses, entitlements, trade names and fictitious names, necessary for Trustor to undertake the business activities related to its possession of the Property.

(d)    Authorization and Validity. The execution and delivery of this Deed of Trust have been duly authorized and this Deed of Trust constitutes a valid and binding obligation of Trustor, in

A-9

Security Instrument

HUNTLEY000060

accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency, moratorium or other laws affecting the enforcement of creditors' rights, or by the application of rules of equity.

(i)      The person executing this Deed of Trust has all necessary power and authority to execute and deliver this Deed of Trust for, on behalf of, and in the name of such Trustor.

(ii)      If Trustor is a trust or Trustor has caused any trust documents to be delivered to Lender in connection with its organizational structure, Trustor's trust documents or such other trust documents have not been amended or altered (except for such amendments as have been provided to Lender) and are in full force and effect as of the date hereof.

(iii)      Trustor has had an adequate opportunity to consult with legal counsel of Trustor's choosing prior to executing and delivering this Deed of Trust.

(e)      Non-Circumvention. The execution, delivery and performance by Trustor of this Deed of Trust do not violate any provision of any law or regulation, or result in any breach or default under any contract, obligation, indenture or other instrument to which Trustor is a party or by which Trustor is bound.

(f)      Litigation. There are no pending or threatened actions, claims, investigations, suits or proceedings before any Governmental Authorities, court or administrative agency that may adversely affect the financial condition or operations of Trustor other than those previously disclosed in writing by Trustor to Lender.

(g)      Financial Statements. The financial statements of Trustor, of each general partner (if Trustor is a partnership) and/or of each member (if Trustor is a limited liability company) previously delivered by Trustor to Lender: (i) are materially complete and correct; (ii) present fairly the financial condition of such party; and (iii) have been prepared in accordance with the same accounting standard used by Trustor to prepare the financial statements delivered to and approved by Lender in connection with the making of the Loan, or other accounting standards approved by Lender. Since the date of such financial statements, there has been no material adverse change in such financial condition, nor have any assets or properties reflected on such financial statements been sold, transferred, assigned, mortgaged, pledged or encumbered except as previously disclosed in writing by Trustor to Lender, prior to Lender's issuing a final commitment letter, and approved in writing by Lender.

(h)      Income Taxes. There are no pending assessments or adjustments of Trustor's income tax payable with respect to any year.

(i)      Title. Trustor lawfully holds and possesses fee simple title to the Property, without limitation on the right to encumber same. This Deed of Trust is a first lien on the Property prior and superior to all other liens and encumbrances on the Property except: (i) liens for real estate taxes and assessments not yet due and payable; (ii) senior exceptions previously approved by Lender and shown in the title insurance policy insuring the lien of this Deed of Trust; and (iii) other matters, if any, previously disclosed to Lender by Trustor and approved by Lender in a writing specifically referring to this representation and warranty.

(j)      Items Due and Payable. No Event of Default exists under this Deed of Trust, and all of the following items regarding this Deed of Trust which have become due and payable have been paid.

(k)      Liens. There are no mechanics' or similar liens or claims that have been filed for work, labor or material (and no rights are outstanding that under law could give rise to any such liens) affecting the Property that are or may be prior to or equal to the lien of this Deed of Trust.

A-10

Security Instrument

HUNTLEY000061

(l)    Encroachments.  To the best of Trustor's knowledge, except as shown in the survey, if any, previously delivered to Lender, none of the buildings or other improvements that were included for the purpose of determining the appraised value of the Property lies outside of the boundaries or building restriction lines of the Property, and no buildings or other improvements located on adjoining properties encroach upon the Property.

(m)    Tax Returns.  Trustor has provided true, correct and complete copies of the tax returns for Trustor, or of the person whose tax return contains the tax liabilities of Trustor if Trustor is a disregarded entity (collectively, the "**Tax Return**"), which Tax Return is the most recent tax return prepared for Trustor.  The Tax Return gives a true, correct and complete statement of financial condition for Trustor as of the date hereof.

(n)    Taxes Paid.  Trustor has filed all federal, state, county and municipal tax returns required to have been filed by Trustor, and has paid all taxes which have become due pursuant to such returns or to any notice of assessment received by Trustor, and Trustor has no knowledge of any basis for additional assessment with respect to such taxes.  To the best of Trustor's knowledge, there are not presently pending any special assessments against the Property or any part thereof.

(o)    Leases.  All existing Leases are in full force and effect and are enforceable in accordance with their respective terms.  No material breach or default by any party, or event that would constitute a material breach or default by any party after notice or the passage of time, or both, exists under any existing Lease.  None of the landlord's interests under any of the Leases, including, but not limited to, rents, additional rents, charges, issues or profits, has been transferred or assigned.  No rent or other payment under any existing Lease has been paid by any tenant for more than one (1) month in advance.

(p)    Collateral.  Trustor has good title to the existing Collateral.  Trustor has not previously assigned or encumbered Trustor's interest in any of the Collateral, and no financing statement that remains in force covering any of the Collateral has been delivered to any other person or entity.  Trustor's principal place of business is located at the address shown in Section 4.6.

(q)    Condition and Use of Property.  Except as shown in the property condition survey or other engineering reports, if any, previously delivered to or obtained by Lender, the Property is in good condition and repair and is free from any damage, waste or defect that would materially and adversely affect the value of the Property as security for the Loan or the intended use of the Property.  The Property is and shall remain for the term of Loan exclusively used for the same commercial purpose as existing as of the date this Deed of Trust is entered into.

(r)    Wetlands.  No part of the Property consists of or is classified as wetlands, tidelands or swamp and overflow lands.

(s)    Compliance with Laws; ERISA.

(i)    The Property is used exclusively for **Single Family Residential** use and other appurtenant and related uses.  In the event that all or any part of the Improvements are destroyed or damaged, said Improvements shall be legally reconstructed to their condition prior to such damage or destruction, and thereafter exist for the same use without violating any zoning or other ordinances applicable thereto and without the necessity of obtaining any variances or special permits.  No legal proceedings are pending or, to the knowledge of Trustor, threatened with respect to the zoning of the Property.  Neither the zoning nor any other right to construct, use or operate the Property is in any way dependent upon or related to any property other than the Property.  All certifications, permits, licenses and approvals, including certificates of completion and occupancy permits required for the legal use, occupancy and operation of the Property (collectively, the "**Licenses**"), have been obtained and are in full force and effect.  The use being made of the Property is in conformity with the certificate of occupancy issued for the Property and all other restrictions, covenants and conditions affecting the Property.

A-11

Security Instrument

HUNTLEY000062

(ii)     Trustor shall not engage in any transaction that would cause any obligation, or action taken or to be taken, hereunder (or the exercise by Lender of any of its rights under the Note, this Agreement and the other Loan Documents) to be a non-exempt (under a statutory or administrative class exemption) prohibited transaction under the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**").

(iii)     Trustor (i) is not and shall not be an "employee benefit plan," as defined in Section 3(3) of ERISA, or a "plan," as defined in Section 4975 of the Code, (ii) none of the assets of Trustor constitutes or will constitute "plan assets" of one or more "benefit plan investors" (as those terms are defined in the Plan Asset Regulation), (iii) Trustor is not and shall not be a "governmental plan" within the meaning of Section 3(32) of ERISA, and (iv) transactions by or with Trustor are not and will not be subject to state statutes regulating investment of, and fiduciary obligations with respect to, governmental plans. As of the date hereof, neither Trustor, nor any ERISA affiliate maintains, sponsors or contributes to any Plan or any Welfare Plan that provides any benefits to any former employee (or the spouse or dependent of any such former employee) of the Trustor or any of its ERISA Affiliates after such employee's retirement or termination of employment (other than COBRA continuation coverage required to be provided pursuant to Sections 601 through 607 of ERISA or Section 4980B of the Code).

(t)     <u>Change in Business or Operation of Property</u>. Borrower shall not cease to operate the Property as a **Single Family Residential** property.

(u)     <u>Property Taxes and Other Liabilities</u>. All taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, and ground rents, if any, that previously became due and owing in respect of the Property have been paid.

(v)     <u>Condemnation</u>. There is no proceeding pending or threatened for the total or partial condemnation of the Property.

(w)     <u>Homestead</u>. There is no homestead, dower, or other exemption available to Borrower that would materially interfere with the right to sell the Property at a trustee's sale or the right to foreclose this Deed of Trust.

(x)     <u>Property</u>. Trustor owns (or will own, prior to the date set forth in the preamble) fee simple title to the Property. This Deed of Trust creates the lien and security it purports to create and is a valid and binding obligation of Trustor enforceable against Trustor and the Property in accordance with its terms.

(y)     <u>No Default</u>. The execution, delivery and performance of the obligations imposed on Trustor under this Deed of Trust will not cause Trustor to be in default under the provisions of any agreement, judgment or order to which Trustor is a party or by which Trustor is bound.

(z)     <u>Items Due and Payable</u>. No Event of Default exists under the Loan, and all of the following items regarding the Property which have become due and payable have been paid, or, with the approval of Lender, an escrow fund sufficient to pay them has been established:  taxes; government assessments; insurance premiums; water, sewer and municipal charges; leasehold payments; ground rents; and any other charges affecting the Property.

(aa)     <u>Compliance with Applicable Laws and Regulations</u>. All Improvements to the Property and the use of the Property comply with all applicable statutes, rules and regulations, including, without limitation, all applicable statutes, rules and regulations pertaining to requirements for equal opportunity, anti-discrimination, fair housing, environmental protection, zoning and land use. Improvements on the Property comply with applicable health, fire, and building codes and the Americans with Disabilities Act 42 U.S.C.A. Section 12101 et seq., as amended from time to time (the "**ADA**"), or, if exempt from the ADA, the Improvements are accessible to and useable by persons with disabilities and shall at all times

A-12

Security Instrument

HUNTLEY000063

during the term of the Loan be in compliance with applicable law and regulations. There is no evidence of any illegal activities relating to controlled substances on the Property. All required permits, licenses and certificates for the lawful use and operation of the Property, including, but limited to, certificates of occupancy, municipal licenses, or the equivalent, have been obtained and are current and in full force and effect.

(bb)    Insurance Policies. Trustor has furnished to Lender all insurance policies and certificates required pursuant to the Loan Documents.

(cc)    No Insolvency Proceeding or Judgment. Trustor is not currently (a) the subject of or a party to any completed or pending bankruptcy, reorganization or insolvency proceeding; or (b) the subject of any judgment unsatisfied of record or docketed in any court of the state in which the Property is located or in any court located in the United States.

(dd)    No Subordinate Financing. Except as otherwise expressly approved by Lender in writing signed by an officer of Lender holding the title Executive Vice President or more senior, no part of the Property is, or will become, subject to a subordinate mortgage, deed of trust, security instrument (other than this Deed of Trust), or other type of subordinate lien.

(ee)    No Labor or Material Supplier Claims. All parties furnishing labor and materials have been paid in full and, except for such liens or claims insured against by the policy of title insurance to be issued in connection with the Loan, there are no mechanics', laborers' or material supplier's liens or claims outstanding for work, labor or materials affecting the Property, whether prior to, equal with or subordinate to the lien of this Deed of Trust.

(ff)    No Other Interests. No person has (a) any possessory interest in the Property or right to occupy the same except under and pursuant to the provisions of existing leases by and between tenant and Trustor, the material terms of all such leases having been previously disclosed to Lender, or (b) an option to purchase the Property or an interest therein (including, without limitation, any right of first offer or refusal).

(gg)    Property Characteristics. No part of the Property is included or assessed under or as part of another tax lot or parcel, no part of any other property is included or assessed under or as part of the tax lot or parcels for the Property, other than as expressly disclosed to Lender in writing and accepted by Lender during its underwriting process prior to Lender issuing its final commitment letter.

(hh)    Operating Statements. Trustor has provided Lender a true, correct and complete copy of its most recent operating statement (the "**Operating Statement**") prepared for the Property. The Operating Statement gives a true, correct and complete statement of financial conditions for the Property as of the date hereof.

(ii)    Service Contracts. Trustor has provided Lender with a true, correct and complete list of all service contracts and service agreements relating to the Property and/or the ownership, maintenance and operation of the Improvements located on the Property (the "**Service Contracts**"). Each of the Service Contracts is in full force and effect in accordance with its terms; neither party is in default under any of the Service Contracts; true, correct and complete copies of each of the Service Contracts have been provided to Lender in connection with its underwriting of the Loan; and each of the Service Contracts is terminable on not more than thirty (30) days' notice without the payment of any fee, penalty, cost or expense.

(jj)    Furniture, Fixtures and Equipment. Except for furniture and trade fixtures, equipment, and other personal property owned by any tenant of the Property, all furniture, fixtures and equipment used in connection with the ownership, management, operation and maintenance of the Property are free and clear of any right, title or interest of any other person or entity.

A-13

Security Instrument

HUNTLEY000064

(kk)     Financial Statements.  The financial statements of Trustor reflect a positive net worth as of the date thereof.

(ll)     Insolvency.  Trustor is not presently insolvent, and the Loan will not render Trustor insolvent.  The term "insolvent" means, either and in each case, that (i) the sum total of all of an a person's liabilities (whether secured or unsecured, contingent or fixed, or liquidated or unliquidated) is in excess of the value of all such entity's non-exempt assets, i.e., all of the assets of the entity that are available to satisfy claims of creditors or (ii) a person will not be able to pay all creditors as obligations are become due.

(mm)     Fraudulent Transfer.  Trustor has not entered into the Loan or any Loan Document with the actual intent to hinder, delay, or defraud any creditor, and Trustor has received reasonably equivalent value in exchange for its obligations under the Loan Documents.  Giving effect to the transactions contemplated by the Loan Documents, the fair saleable value of Trustor's assets exceeds and will, immediately following the execution and delivery of the Loan Documents, exceed Trustor's total probable liabilities, including subordinated, unliquidated, disputed or contingent liabilities, including the maximum amount of its contingent liabilities or its debts as such debts become absolute and matured.  Trustor's assets do not and, immediately following the execution and delivery of the Loan Documents will not, constitute unreasonably small capital to carry out its business as conducted or as proposed to be conducted. Trustor does not intend to, and does not believe that it will, incur debts and liabilities (including contingent liabilities and other commitments) beyond its ability to pay such debts as they mature (taking into account the timing and amounts to be payable on or in respect of obligations of Trustor).

(nn)     Working Capital.  After the Loan is made, Trustor will have sufficient working capital, including cash flow from the Property or other assets, not only to adequately maintain the Property, but also to pay all of Trustor's outstanding debts as they come due.

(oo)     No Material Change.  There has been no material change in the occupancy of the Property or the business, financial condition or results of operations of Trustor, the Property or, to the best of Trustor's knowledge, any tenant of the Property, from the date of the application to Lender to make the Loan, other than in connection with the regular commencement and/or, expiration of short-term leases and rental agreements ordinarily occurring as part of the business conducted on the Property and as disclosed by Trustor to Lender in Lender's underwriting process for the Loan.

(pp)     Investigation and Inquiry.  Trustor makes the representations and warranties contained this Section 5.1 following Trustor's reasonable inquiry and investigation into the matters and facts to which Trustor is attesting, and Trustor's inquiry and investigation has confirmed the accuracy of Trustor's statements made in this Section 5.1.

(qq)     Federal Reserve Regulations; Investment Company Act.  No part of the proceeds of the Loan will be used for the purpose of purchasing or acquiring any "margin stock" within the meaning of Regulation U of the Board of Governors of the Federal Reserve System or for any other purpose that would be inconsistent with such Regulation U or any other regulation of such Board of Governors, or for any purpose prohibited by Legal Requirements or any Loan Document.  Trustor is not (i) an "investment company" or a company "controlled" by an "investment company," within the meaning of the Investment Company Act of 1940, as amended; or (ii) subject to any other federal or state law or regulation which purports to restrict or regulate its ability to borrow money.

(rr)     Intentionally Omitted

(ss)     Intentionally Omitted

(tt)     Intentionally Omitted

A-14

Security Instrument

HUNTLEY000065

## ARTICLE 6

## RIGHTS AND DUTIES OF THE PARTIES

6.1.   Maintenance and Preservation of the Property.   Trustor shall:  (a) keep the Property in good condition and repair; (b) complete or restore promptly and in workmanlike manner the Property or any part thereof which may be damaged or destroyed (unless, if and to the extent permitted under Section 6.11 hereof, Lender elects to require that insurance proceeds be used to reduce the Secured Obligations and after such repayment the ratio of Secured Obligations to the value of the Property, as reasonably determined by Lender is the same as or lower than it was immediately before the loss or taking occurred); (c) comply and cause the Property to comply with (i) all laws, ordinances, regulations and standards, (ii) all covenants, conditions, restrictions and equitable servitudes, whether public or private, of every kind and character and (iii) all requirements of insurance companies and any bureau or agency which establishes standards of insurability, which laws, covenants or requirements affect the Property and pertain to acts committed or conditions existing thereon, including, without limitation, any work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (d) operate and manage the Property at all times in a professional manner and do all other acts that from the character or use of the Property may be reasonably necessary to maintain and preserve its value; (e) promptly after execution, deliver to Lender a copy of any management agreement concerning the Property and all amendments thereto and waivers thereof; and (f) execute and acknowledge all further documents, instruments and other papers as Lender or Trustee deems necessary or appropriate to preserve, continue, perfect and enjoy the benefits of this Deed of Trust and perform Trustor's obligations, including, without limitation, statements of the amount secured hereby then owing and statements of no offset.  Trustor shall not:  (g) remove or demolish all or any material part of the Property; (h) alter either (i) the exterior of the Property in a manner that materially and adversely affects the value of the Property or (ii) the roof or other structural elements of the Property in a manner that requires a building permit; (i) initiate or acquiesce in any change in any zoning or other land classification that affects the Property; (j) materially alter the type of occupancy or use of all or any part of the Property; or (k) commit or permit waste of the Property.

6.2.   Compliance with Laws.   Trustor shall comply with all federal, state and local laws, rules and regulations applicable to the Property, including, without limitation, all zoning and building requirements and all requirements of the ADA.  Trustor shall possess and maintain in full force and effect at all times (a) all certificates of occupancy and other licenses, permits and authorizations required by applicable law for the existing use of the Property and (b) all permits, franchises and licenses and all rights to all trademarks, trade names, patents and fictitious names, if any, required by applicable law for Trustor to conduct the business(es) in which Trustor is now engaged.

6.3.   Litigation.   Trustor shall promptly notify Lender in writing of any litigation pending or threatened against either Trustor claiming damages in excess of $50,000 and of all pending or threatened litigation against either Trustor if the aggregate damage claims against Trustor exceed $100,000.00.

6.4.   Business Structure Change, Alienation of Assets.   Trustor shall not:  (a) merge or consolidate with any other entity, except when authorized to do so with the prior written consent of Lender as expressly authorized pursuant to Section 6.14 hereof; (b) make any substantial change in the nature of Trustor's business or structure; (c) acquire all or substantially all of the assets of any other entity or permit Trustor to acquire all or substantially all of the assets of any other entity; or (d) sell, lease, assign, transfer or otherwise dispose of a material part of Trustor's assets except in the ordinary course of Trustor's business.

6.5.   Accounting Records.   Trustor shall maintain adequate books and records in accordance with the same accounting standard used by Trustor to prepare the financial statements delivered to and approved by Lender in connection with the making of the Loan or other accounting standards approved by Lender.  Trustor shall permit any representative of Lender, at any reasonable time and from time to time, to inspect, audit and examine such books and records and make copies of same.

A-15

Security Instrument

HUNTLEY000066

6.6.   Financial Statements and Accounts.

   6.6.1.   Statements Required. During the term of the Loan or while any liabilities of Trustor to Lender under any of the Loan Documents remain outstanding and unless Lender otherwise consents in writing, Trustor shall provide to Lender or cause to be provided to Lender, each in a form acceptable to Lender, the following:

   (a)   Leasing Schedule. Not later than thirty (30) days after written request by Lender, a schedule, signed and dated by Trustor, showing the following lease information regarding each tenant: the name of the tenant, a description of the premises, monthly or other periodic rental amount, dates of commencement and expiration of the lease, and payment status;

   (b)   Balance Sheet and Annual Financial Statements. With respect to Trustor, not later than ninety (90) days after the close of the respective fiscal years of Trustor, any guarantor, and any indemnitor, balance sheet and financial statements, including, as applicable and without limitation: (i) balance sheet for the Property, signed and dated by Trustor; (ii) a schedule, signed and dated by Trustor, showing all revenues and expenses during such fiscal year, relating to the Property; (iii) financial statements showing all assets and liabilities of Trustor that shall be certified by a principal, managing member or general partner of Trustor as being true, correct and complete, or upon the request of Lender, audited by an independent certified public accountant; and (iv) financial statements showing all assets and liabilities of each indemnitor and guarantor under any indemnity or guarantee, which shall be certified by such guarantor or indemnitor or the principal, managing member or general partner of such indemnitor or guarantor, as being true, correct and complete, or upon the request of Lender, audited by an independent certified public accountant;

   (c)   Tax Returns. Not later than April 30th of each year, copies of all tax returns (with all schedules) or extensions filed by Trustor (or on Trustor's behalf, if Trustor is a disregarded entity), unless an extension has been obtained, but no event later than the earlier of (i) September 1st of each year or (ii) within twenty (20) days after filing;

   (d)   Other Information. From time to time, such other information with regard to Trustor or the Property as Lender may reasonably request in writing.

   6.6.2.   Form; Warranty. Trustor agrees that all financial statements to be delivered to Lender, pursuant to Section 6.6.1 hereof, regardless of whether they pertain to Trustor shall: (a) be complete and correct; (b) present fairly the financial condition of the party; (c) disclose all liabilities that are required to be reflected or reserved against; and (d) be prepared in accordance with the same accounting standard used by Trustor to prepare the financial statements delivered to and approved by Lender in connection with the making of the Loan or other accounting standards acceptable to Lender. By delivering any such financial statement, Trustor shall be deemed to warrant and represent that, as of the date of delivery of any such financial statement, there has been no material adverse change in financial condition, nor have any assets or properties been sold, transferred, assigned, mortgaged, pledged or encumbered since the date of such financial statement except as disclosed by Trustor in a writing delivered to Lender.

   Trustor agrees that all leasing schedules and other information to be delivered to Lender pursuant to Section 6.6.1 hereof and this Section 6.6.2, in each case, shall not contain any misrepresentation or omission of a material fact.

   6.6.3.   Accounts and Primary Banking Relationships. Trustor shall establish its primary deposit and operating accounts with Lender.

A-16

Security Instrument

HUNTLEY000067

6.7.    <u>Costs, Expenses and Fees</u>.  Trustor agrees to pay to Lender immediately and upon demand all costs and expenses incurred by Trustee and Lender in the enforcement of the terms and conditions of this Deed of Trust (including, without limitation, statutory trustee's fees, court costs and attorneys' fees, whether incurred in litigation or not) with interest from the date of expenditure until said sums have been paid at the rate of interest applicable to the principal balance of the Note as specified therein. Trustor shall pay to Lender the full amount of all costs and expenses, including, without limitation, attorneys' fees (i.e., outside counsel), incurred by Lender in connection with: (a) appraisals and inspections of the Property or Collateral required by Lender as a result of (i) a Transfer (as hereinafter defined) or proposed Transfer, or (ii) an Event of Default; (b) any acts performed or proposed to be performed by Lender at Trustor's request or wholly or partially for the benefit of Trustor (including, without limitation, the preparation or review of amendments, consents, authorizations, assumptions, waivers, releases, reconveyances, estoppel certificates or statements of amounts owing under any Secured Obligation); (c) when permissible pursuant to applicable law and without limitation to Lender's rights under sub-clauses (a), (b), and (d) of this Section 6.7, any out-of-pocket expenses or costs incurred by Lender in taking any action prudent or reasonably necessary, in each case, in Lender's judgment to protect or preserve the priority of, in each case, Lender's liens securing the Secured Obligations; and (d) when permissible pursuant to applicable law and without limitation to Lender's rights under the preceding sub-clauses (a), (b), and (c) of this Section 6.7, any out-of-pocket costs and expenses incurred by Lender and its agents in responding to third-party legal process, subpoenas, or similar legal demands received by Lender and its agents as a result of or in relation to, in each case, the Secured Obligations, the Loan Documents, or Trustor's business with Lender, including, without limitation charges, expenses, attorney's fees and costs upon any appeal, and in any bankruptcy proceedings and in any arbitration proceeding (including, without limitation, any adversary proceeding, contested matter or motion) or otherwise incurred by Lender as a result thereof. Trustor shall pay all costs and expenses arising under this Section 6.7 immediately upon demand by Lender.  Any administrative fees owed to Lender pursuant to the Loan Documents, including, without limitation, those owed pursuant to Section 6.14 hereof (but excluding 6.14.4(a)) shall be due and payable immediately upon Trustor requesting the action from Lender and shall be non-refundable, irrespective of the disposition of the request by Lender.  Trustor shall have no expectation that Lender commence review of any matter or request prior to Trustor paying the required fee pursuant to the Loan Documents.  In addition and without limitation to Lender's right to recover all its out-of-pocket expenses from Trustor on demand as provided in this Section 6.7, Lender shall have the right to require Trustor to provide a legal deposit (i.e., payment in advance) before engaging outside counsel to do any legal work and to refresh that deposit, at Lender's request, over the pendency of the matter. Trustor shall have no expectation that Lender commence any legal work with outside counsel prior to Trustor paying any legal deposit requested by Lender.  For the avoidance of doubt, any reference in the Loan Documents to out-of-pocket costs or expenses incurred by Lender shall be construed, without limitation to other kinds of costs and expenses incurred by Lender, to include attorneys' fees (i.e., outside counsel).  For the further avoidance of doubt, no other provision regarding Lender's right to payment of fees, costs, and expenses from Trustor contained in either (i) this Deed of Trust or (ii) any other Loan Document, in each case, may be construed to limit Lender's rights pursuant to this Section 6.7, including, without limitation, Lender's right to require an advance deposit for legal fees (it being understood that any other provision of the Loan Documents pertaining to Lender's right to payment of fees, costs, and expenses, from Trustor in each case, shall be construed consistent with this Section 6.7). Without limiting the generality of the immediately preceding sentence, no provision specifically requiring payment of a fee, cost, or expense to Lender by Trustor, by being so affirmatively and specifically stated in any Loan Document, may be construed to limit Lender's rights to payment pursuant to this Section 6.7 for any fee, cost, or expense, in each case, provided for by this Section 6.7, but not so specifically stated.  In the event that any party brings any suit or other proceeding with respect to the subject matter or enforcement of this Deed of Trust, including without limitation, in appellate proceedings or in any action or participation in, or in connection with, any case or proceeding under Chapter 7, 11 or 13 of the Bankruptcy Code, 11 United States Code Sections 101 et seq., or any successor statutes, the prevailing party (as determined by the court, agency or other authority before which such suit or proceeding is commenced) shall, in addition to such other relief as may be awarded, be entitled to recover reasonable attorneys' fees, expenses and costs of investigation.

6.8.    <u>No Other Liens, Encumbrances and Charges</u>.  Without obtaining Lender's prior written consent pursuant to Section 6.14 (which consent shall be granted or withheld in Lender's sole and absolute

A-17

Security Instrument

HUNTLEY000068

discretion and at Trustor's sole cost and expense), Trustor shall not incur against the Property any debt, secured or unsecured, direct or indirect, absolute or contingent (including guaranteeing any obligation), other than the Loan and trade debt incurred in the ordinary course of Trustor's business (with any such trade debt to be paid within sixty (60) days of the date such debt was incurred and, in any event, prior to delinquency). Trustor shall immediately discharge by bonding or otherwise any lien, charge or other encumbrance that attaches to the Property in violation of Section 6.14. Subject to Trustor's right to contest such matters under this Deed of Trust or as expressly permitted in the Loan Documents, Trustor shall pay when due all obligations secured by or reducible to liens and encumbrances that shall now or hereafter encumber or appear to encumber all or any part of the Property or any interest therein, whether senior or subordinate hereto, including, without limitation, all claims for work or labor performed, or materials or supplies furnished, in connection with any work of demolition, alteration, repair, improvement or construction of or upon the Property, except such as Trustor may in good faith contest or as to which a bona fide dispute may arise (provided that provision is made to the satisfaction of Lender for eventual payment thereof in the event that Trustor is obligated to make such payment and that any recorded claim of lien, charge or other encumbrance against the Property is immediately discharged by bonding or otherwise).

6.9. <u>Taxes and Other Liabilities</u>. Trustor shall pay and discharge when due any and all indebtedness, obligations, assessments and taxes, both real and personal and including federal and state income taxes and state and local property taxes and assessments by or before the due date. Trustor shall promptly provide to Lender copies of all tax and assessment notices pertaining to the Property. Trustor hereby authorizes Lender to obtain, at Trustor's expense, a tax service contract which shall provide tax information on the Property to Lender for the term of the Loan and any extensions or renewals of the Loan.

6.10. <u>Insurance Coverage</u>. Trustor shall insure the Property against loss or damage by fire and such other hazards as Lender shall from time to time require, however, not to exceed full replacement cost; provided, however, (a) Lender, at Lender's election, may only require flood insurance if all or any portion of the Improvements located on the Property is or becomes located in a special flood hazard area; and (b) Lender, at Lender's election, may only require earthquake insurance if all or any portion of the Property is or becomes located in an earthquake fault zone. Trustor shall also carry public liability insurance and such other insurance as Lender may require, including, without limitation, business interruption insurance or loss of rents insurance. Such policies shall contain a standard mortgage clause naming Lender and its successors and assigns as a loss payee or additional insured, as appropriate, and requiring at least thirty (30) days' prior notice to the holder at termination or cancellation. Trustor shall maintain all required insurance at Trustor's expense, in companies, and in substance and form satisfactory to Lender, including, without limitation, an agreed amount endorsement. Neither Lender nor Trustee, by reason of accepting, rejecting, approving or obtaining insurance shall incur any liability for: (c) the existence, nonexistence, form or legal sufficiency of any insurances; (d) the solvency of any insurer; or (e) the payment of claims.

If Trustor fails to maintain and deliver to Lender the original policies or certificates of insurance required by this Deed of Trust, upon ten (10) days' prior notice to Trustor, Lender may procure such insurance at Trustor's sole cost and expense. Trustor agrees to deliver to Lender promptly upon receipt, but in any event no later than thirty (30) days' prior to the termination of any of such insurance policies, a renewal policy (or certificate of insurance evidencing the same) satisfying the requirements of this Deed of Trust.

6.11. <u>Insurance and Condemnation Proceeds</u>.

(a) <u>Assignment of Claims</u>. Trustor absolutely and irrevocably assigns to Lender all of the following rights, claims and amounts (collectively, the "**Claims**"), all of which shall be paid to Lender: (i) all awards of damages and all other compensation payable directly or indirectly by reason of a condemnation or proposed condemnation for public or private use affecting all or any part of, or any interest in, the Property; (ii) all other claims and awards for damages to or decrease in value of all or any part of, or any interest in, the Property; (iii) all proceeds of any insurance policies payable by reason of loss sustained to all or any part of the Property; and (iv) all interest which may accrue on any of the foregoing. Trustor shall give Lender prompt written notice of the occurrence of any casualty affecting, or the institution of any

A-18

Security Instrument

HUNTLEY000069

proceedings for eminent domain or for the condemnation of, the Property or any portion thereof. Lender may, in each case, commence, appear in, defend or prosecute any Claim, and may adjust, compromise, and settle all Claims, but shall not be responsible for any failure to commence, appear in, defend, prosecute or collect any such Claim regardless of the cause of the failure. All awards, proceeds, and other sums described herein shall be payable to Lender.

(b)    Application of Proceeds; No Event of Default. (1) So long as no Event of Default has occurred and is continuing at the time of Lender's receipt of the proceeds of the Claims (the "Proceeds") and no Event of Default occurs thereafter, Lender shall apply the Proceeds in the following order of priority: First, to Lender's expenses in settling, prosecuting or defending the Claims; Second, to the repair or restoration of the Property; and Third, to Trustor if and only if the repair or restoration of the Property has been completed to the satisfaction of Lender, but otherwise, to the Secured Obligations, in any order, without suspending, extending or reducing any obligation of Trustor to make installment payments if the repair or restoration of the Property has not been completed. (2) Notwithstanding the foregoing, Lender shall not have any obligation to make any Proceeds available for the repair or restoration of the Property unless and until all the following conditions have been satisfied in Lender's sole and absolute discretion: (i) delivery to Lender of the Proceeds plus any additional amount that is needed to pay all costs of the repair or restoration (including, without limitation, taxes, financing charges, insurance and rent during the repair period); (ii) establishment of an arrangement for lien releases and disbursement of funds acceptable to Lender; and (iii) delivery to Lender in form and content acceptable to Lender of all of the following: (aa) plans and specifications for the work; (bb) a contract for the work, signed by a contractor acceptable to Lender; (cc) a cost breakdown for the work; (dd) if required by Lender, a payment and performance bond for the work; (ee) evidence of the continuation of all Leases unless consented to in writing by Lender; (ff) evidence that, upon completion of the work, the size, capacity, value, and income coverage ratios for the Property will be at least as great as those which existed immediately before the damage or condemnation occurred; and (gg) evidence of the satisfaction of any additional conditions that Lender may reasonably establish to protect Lender's security. Trustor acknowledges that the specific conditions described above are reasonable.

(c)    Application of Proceeds; Event of Default. If an Event of Default has occurred and is continuing at the time of Lender's receipt of the Proceeds or if an Event of Default occurs at any time thereafter, Lender may, at Lender's absolute discretion and regardless of any impairment of security or lack of impairment of security, but subject to applicable law governing use of the Proceeds, if any, apply all or any of the Proceeds to Lender's expenses in settling, prosecuting or defending the Claims and then apply the balance to the Secured Obligations in any order without suspending, extending or reducing any obligation of Trustor to make installment payments, and may release all or any part of the Proceeds to Trustor upon any conditions Lender chooses.

6.12.    Defense and Notice of Losses, Claims and Actions. Trustor shall protect, preserve and defend the Property and title to and right of possession of the Property, the security and priority of this Deed of Trust, and the rights and powers of Lender and Trustee hereunder, in each case, at Trustor's sole expense against all adverse claims, whether the claim: (a) is against a possessory or non-possessory interest; (b) arose prior or subsequent to the date set forth in the preamble; or (c) is senior or junior to Trustor's or Lender's rights. Trustor shall provide Lender and Trustee prompt notice in writing of the assertion of any claim, of the filing of any action or proceeding, of the occurrence of any damage to the Property and of any condemnation offer or action.

6.13.    Right of Inspection. Lender and its independent contractors, agents and employees may enter the Property from time to time at any reasonable time for the purpose of inspecting the Property and ascertaining Trustor's compliance with the terms of this Deed of Trust. Lender will use commercially reasonable efforts to assure that Lender's entry upon and inspection of the Property will not materially and unreasonably interfere with the business or operations of Trustor's tenants on the Property.

6.14.    Transfer of Property or Interests in Trustor.

A-19

Security Instrument

HUNTLEY000070

6.14.1. <u>Prohibition</u>. Trustor acknowledges that Lender has relied upon the principal(s) of Trustor and such principal's or principals' experience in owning and operating properties similar to the Property in connection with the closing of the Loan. Accordingly, except pursuant to the prior written consent of Lender, which Lender may withhold, delay, or condition in Lender's sole discretion (including, without limitation, pursuant to the terms of Section 6.14.4 hereof), Trustor shall not cause or permit any Transfer (as defined herein) of, in each case, itself (i.e., the Trustor), the Property, the Collateral (except for equipment and inventory in the ordinary course of its business, with respect to the Collateral only), or this Deed of Trust. "**Transfer**" means any: (a) sale or exchange; (b) mortgage, pledge, hypothecation, lien, or encumbrance; (c) assignment, including, without limitation, assignment by operation of law or for the benefit of creditors or the delegation of duties; (d) direct or indirect conveyance, transfer, or disposition, including, without limitation, any direct transfer, grant, or release of title or legal ownership and any indirect transfer through the use of a nominee, trustee, or receiver (other than a receiver appointed at Lender's request); (e) direct or indirect change of control of the Trustor through any means, including without limitation, serial transactions, contracts, or a change in the ultimate control or beneficial ownership of Trustor (including, without limitation, any transfer of or by, in each case, (i) a general or limited partnership interest; (ii) stock, shares, or other equity; (iii) issuance of new or treasury stock, shares, or other equity or changes in voting rights or the creation of a new class of stock, shares, or other equity interests, in each case, that, whether through one action or a series of actions, effects a direct or indirect change of control in an entity; (iv) a limited liability company or membership interest; (v) direct or indirect control of a trust; (vi) interest in a joint venture contract; (vii) an Unauthorized Amendment made or permitted in violation of clause (j) of Section 4.4 hereof; or (viii) any other interest analogous or otherwise similar to items (i)-(vii) of this list), as well as changing of a key control person, whether legal or natural, relied upon by Lender as provided in this Section 6.14, such as, without limitation, the naming a new general partner of a partnership or manager or managing member of a limited liability company); and (f) any action, transfer, or event of similar effect to the preceding list of items (a)-(e), and the meaning of the meaning of Transfer shall include any of the foregoing circumstances listed in (a)-(f) whether occurring, in each case, voluntarily, involuntarily, by operation of law, through one action or event, or through a series of transactions, legal transfers, or other actions or events even if each individually would not constitute a change of (1) control in or (2) beneficial ownership of Trustor but as a series would constitute a Transfer. If a Transfer is made without the prior written consent of Lender (including, without limitation, any Transfer requiring Lender's prior written consent under Section 6.14.2 hereof), Lender shall have the absolute right at its option, without prior demand or notice, to declare all of the Secured Obligations immediately due and payable, except to the extent prohibited by applicable law, and to pursue its rights and remedies under Article 7 hereof. Lender's consent to one such Transfer shall apply only to the Transfer consented to in that instance and shall not be deemed to be a waiver of the right to require prior written consent to future or successive Transfers. Without limiting the generality of the foregoing provisions of this Section 6.14.1, the capitalized term "**Assignment**" refers to the subset of Transfers encompassing: (i) any assignment of Trustor's interest in this Deed of Trust, in each case, including, without limitation, an assignment by operation of law, and (ii) any delegation of duties by Trustor under this Deed of Trust. Unless Lender, in writing, subsequently ratifies an Assignment made contrary to this Section 6.14, any Assignment by Trustor, whether voluntarily or involuntarily, made contrary to this Section (including, without limitation, any Assignment requiring Lender's prior written consent under Section 6.14.2 hereof) shall be null and void *ab initio*. Lender's consent to or ratification of, in each case, one such Assignment shall apply only to the Assignment consented to or ratified in that instance and shall not be deemed to be a waiver of the right to require prior written consent to future or successive Assignments. With regard to any proposed Transfer or Assignment, or other assumption, substitution, or similar action provided for in this Section 6.14 or in Sections 7.1(m)-7.1(p) hereof, in each case, irrespective of whether Lender's consent is required for such action, Trustor shall (i) comply with the provisions of Section 7.1(o) hereof and (ii) provide to Lender or cause to be provided to Lender, in each case, at Lender's request, any information required by Section 6.14.4 hereof (it being understood that it is Lender's prerogative to review any proposed Transfer or Assignment, or other assumption, substitution, or similar action, unless exempt under the limited exception pursuant to Section 7.1(o) hereof applicable only to a Trustor that is a Public Company (as defined in Section 7.1(o)), to allow Lender to determine proper classification and disposition of the proposed action, as well as fees or reimbursements owed, if any, pursuant to, in each case this Section 6.14, Section 6.7 hereof, and Sections 7.1(m)-7.1(p) hereof.

A-20

Security Instrument

HUNTLEY000071

6.14.2. <u>Other Permitted Transfers</u>. Notwithstanding and without limiting the generality of the foregoing Section 6.14.1, the following actions shall be permitted subject to the terms of (i) this Section 6.14.2 and (ii) the terms of Section 6.14.1 with respect to any action that requiring Lender's prior written consent that is taken without such consent (e.g., regarding (x) the definition of Transfer, (y) Assignments that are void, and (z) Lender's rights and remedies, including, without limitation, acceleration, payment of the prepayment fee). In the case of the actions described in clauses (a) and (c) of this Section 6.14.2, the actions described therein shall be permitted only with the prior written consent of Lender, which consent shall not be unreasonably withheld. In the case of actions described in clause (b) of this Section 6.14.2, Lender's consent shall not be necessary; however, Trustor shall comply with all applicable terms of this Deed of Trust, including, without limitation, the terms this Section 6.14, Section 6.7 hereof, and of Sections 7.1(m)-7.1(p) regarding Lender's rights to: (i) review the proposed action and determine its proper classification, (ii) request and receive any due diligence information as provided by Section 6.14.4 hereof, and (iii) receive an advance deposit for or reimbursement from Trustor, in each case, of any out-of-pocket expenses Lender may incur. In addition, any Transfer contemplated pursuant to clauses (a), (b) and (c) of this Section 6.14.2, shall be permitted, subject to the provisions of this Section 6.14, only so long as Trustor remains as a legal person or, if required, e.g., in the case of a joint venture or general partnership, is reconstituted, following such Transfer, properly authorized hereunder, and so long as those persons responsible for the management of the Property and Trustor remain unchanged following such gift or that any replacement management is approved by Lender pursuant to the terms hereof.

(a)     Without limiting the provisions of Sections 7.1(m)-7.1(p) hereof, the direct one-time transfer (i.e., of the interest itself, and not by a higher-level change in control) of up to forty-nine (49%) of: the (i) limited partnership interests in any Trustor that is a limited partnership; (ii) membership interests in any Trustor that is a limited liability company (other than the membership interests (x) of a member that is the manager or managing member of such Trustor or (y) that otherwise enables direct or indirect control of such Trustor, which, in each case, shall not be transferable without the prior written consent of Lender, which may be withheld, conditioned or delayed by Lender in its sole and absolute discretion); or (iii) voting stock in any Trustor that is a corporation (other than preferred, special, or similar stock that, despite holding less than 50% of the corporation's total stock allows for direct or indirect control of, in each case, the corporation or its board of directors or other governing body, which shall not be transferable without the prior written consent of Lender, which may be withheld, conditioned or delayed by Lender in its sole and absolute discretion).

(b)     Without limiting the provisions of Sections 7.1(m)-7.1(p) hereof, any involuntary transfer caused by the death or court-adjudicated incapacity of any natural person that is (i) a general partner, shareholder, joint venturer or member of Trustor; (ii) any manager or managing member of Trustor if Trustor is a limited liability company; and (iii) a beneficial owner or other natural person that controls a trust. For the avoidance of doubt, (x) this Section 6.14.2(b) applies only to involuntary transfers and not to planned estate gifts, which are provided for by Section 6.14.2(c) hereof and (y) this Section 6.14.2(b) applies to involuntary transfers caused by death or court-adjudicated incapacity of natural persons in the roles specified in this Section 6.14.2(b) and not where Trustor is a natural person (i.e., one individual), which is provided for in Section 7.1(p) hereof.

(c)     Without limiting the provisions of Sections 7.1(m)-7.1(p) hereof, gifts for estate planning purposes of any natural person's interests in Trustor or in any of Trustor's general partners, members or joint venturers to the spouse or any lineal descendant of such individual, or to a properly constituted trust for the benefit of any one or more of such individual, spouse or lineal descendant. Notwithstanding the foregoing provisions of this Section 6.14.2(c), nothing in this Section 6.14.2(c) authorizes title to the Property to be transferred without Lender's prior written consent that would be otherwise required, in each case, under Section 6.14.1 hereof or any other provision this Deed of Trust.

A-21

Security Instrument

HUNTLEY000072

(d)    Notwithstanding anything to the contrary contained herein, under no circumstances shall Trustor cause or permit any Transfer of the Trustor, the Property, the Collateral, this Deed of Trust or any interest therein to any of the following without the prior written consent of Lender, which Lender may withhold, delay, or condition in Lender's sole discretion (including, without limitation, pursuant to the terms of Section 6.14.4 hereof), to any of the following: (i) any Person (1) that is listed in the Annex to, or is otherwise subject to the provisions of, Executive Order 13224 issued on September 24, 2001 ("EO13224"), (2) whose name appears on the United States Treasury Department's Office of Foreign Assets Control ("OFAC") most current list of "Specifically Designated National and Blocked Persons," (3) who commits, threatens to commit or supports "terrorism," as defined in EO13224, or (4) who is otherwise affiliated with any entity or Person listed above (any and all parties or Persons described in subparts (1) through (4) above are herein referred to as a "Prohibited Person"); (ii) any Person that has (1) directly or indirectly, used any funds for unlawful contributions, gifts, entertainment or other unlawful expenses related to foreign or domestic political activity, (2) made any unlawful payment to foreign or domestic government officials or employees or to any foreign or domestic political parties or campaigns from corporate funds, (3) failed to disclose fully any contribution made by Borrower or Guarantor (or made by any Person acting on its behalf of which Borrower or Guarantor is aware) which is in violation of law, or (4) violated in any material respect any provision of the Foreign Corrupt Practices Act of 1977 (15 U.S.C. §§ 78dd-1, et seq.), as amended ("FCPA"); or (iii) any Person that has (1) committed any crime or any violation of applicable laws, ordinances, rules, regulations and requirements, (2) been indicted on or arraigned on charges that such Person has committed any crime or any violation of applicable laws, ordinances, rules, regulations and requirements, or (3) been convicted of crime.

6.14.3. Lender's Written Consent or Ratification:  As used in this Section 6.14, any reference to Lender's written consent, approval, or ratification of a Transfer, in each case, requires a writing made by Lender executed by an officer of Lender holding the title Executive Vice President or higher.

6.14.4. Transfer Costs:  In connection with any Transfer requiring Lender's consent:

(a)    Trustor shall pay an assumption fee in the amount of one percent (1%) of the then unpaid principal balance of the Loan, which shall be due and payable at the closing of the Transfer transaction.

(b)    Trustor shall pay to Lender both (i) an administrative fee of one thousand five hundred dollars ($1,500.00) for Lender processing the Transfer request (irrespective of the disposition thereof) and (ii) all Lender's out-of-pocket costs (including, without limitation, any out-of-pocket legal expenses paid to outside counsel and the cost of any appraisal); and

(c)    The cost of either (i) a "date down" endorsed to Lender's title insurance policy, including any additional endorsements required by Lender, or (ii) a new title insurance policy, satisfactory to Lender in its discretion, if a "date down" is not available.

In addition to the above-stated, Trustor shall comply with all Lender's policies and procedures in connection with providing its consent to a Transfer, including but not limited to (i) Trustor and its transferee entering an assumption agreement acceptable to Lender and providing, as determined by Lender in Lender's sole and absolute discretion, (x) a reaffirmation of guarantee by a then guarantor and/or (y) a substitute guarantor (acceptable to Lender in Lender's sole and absolute discretion) who shall sign a guarantee agreement acceptable to Lender (in Lender's sole and absolute discretion) and (ii) compliance with the provisions of Sections 7.1(o) hereof.  Without limiting the generality of the foregoing sentence of this paragraph of this Section 6.14.4, Trustor shall require, in each case, any prospective recipient of the Transfer, prospective new guarantor, prospective new member, partner, or shareholder of Trustor, or prospective new joint venturer to comply with any requests for due diligence information regarding such prospective new interest holder in, as applicable, Trustor or the Property.  Nothing in this Section 6.14 may be construed to require Lender to accept any Transfer, Assignment, assumption or similar action where the prospective person receiving or becoming an interest holder in Trustor or the Property or assuming a role of guarantor is a person with which Lender may not conduct business pursuant to law applicable to Lender

A-22

Security Instrument

HUNTLEY000073

(a "**Prohibited Person**"), and Lender shall not be deemed to have breached its obligations under any of the Loan Documents for refusing to consent to, approve, or honor any action that requires or may foreseeably require Lender in the future to conduct business with a Prohibited Person.

Nothing in this Section 6.14.4 limits Lender's discretion to withhold, delay, or condition, in each case, its consent pursuant to the provisions of Sections 6.14.1 and 6.14.2 hereof, including, without limitation, Lender's right to: (i) require other conditions not provided for in this Section 6.14.4; (ii) make decisions regarding Lender's assessment of the creditworthiness of any prospective substitute guarantor or party assuming the obligations hereunder as a result of a proposed Transfer; (iii) require additional conditions related to its credit evaluation of any Transfer or party thereto; (iv) require execution of additional documentation; or (v) refer matters to outside counsel at Trustor's expense to assist with reviewing or consummating any proposed Transfer.

6.15.  Acceptance of Trust; Powers and Duties of Trustee.  Trustee accepts this trust when this Deed of Trust is recorded.  From time to time upon written request of Lender and presentation of this Deed of Trust, or a certified copy thereof, for endorsement, and without affecting the personal liability of any person for payment of any indebtedness or performance of any Secured Obligation, Trustee may, if authorized by Lender, without liability therefor and without notice: (a) reconvey all or any part of the Property; (b) consent to the making of any map or plat of the Property; (c) join in granting any easement on the Property; (d) join in any declaration of covenants and restrictions; or (e) join in any extension agreement or any agreement subordinating the lien or charge of this Deed of Trust.  Nothing contained in the immediately preceding sentence shall be construed to limit, impair or otherwise affect the rights of Trustor in any respect.  Except as may otherwise be required by applicable law, Trustee or Lender may from time to time apply to any court of competent jurisdiction for aid and direction in the execution of the trusts hereunder and the enforcement of the rights and remedies available hereunder, and Trustee or Lender may obtain orders or decrees directing or confirming or approving acts in the execution of said trusts and the enforcement of said remedies.  Trustee has no obligation to notify any party of any pending sale or any action or proceeding (including, without limitation, actions in which Trustor, Lender or Trustee shall be a party) unless held or commenced and maintained by Trustee under this Deed of Trust.  Trustee shall not be obligated to perform any act required of it hereunder unless the performance of the act is requested in writing and Trustee is reasonably indemnified and held harmless against loss, cost, liability and expense.

6.16.  Compensation of Trustee.  Trustor shall pay to Trustee reasonable compensation and reimbursement for services and expenses in the administration of this trust, including, without limitation, reasonable attorneys' fees.  Trustor shall pay all indebtedness arising under this Section 6.16 immediately upon demand by Trustee or Lender.

6.17.  Exculpation.  Lender shall not directly or indirectly, be liable to Trustor or any other person as a consequence of: (a) the exercise of the rights, remedies or powers granted to Lender in this Deed of Trust; (b) the failure or refusal of Lender to perform or discharge any obligation or liability of Trustor under any agreement related to the Property or under this Deed of Trust; or (c) any loss sustained by Trustor or any third party resulting from Lender's failure to lease the Property after an Event of Default or from any other act or omission of Lender in managing the Property after an Event of Default unless the loss is caused by the willful misconduct and bad faith of Lender.  No liability contrary to the terms of this Section 6.17 may be asserted or enforced against Lender, and Trustor expressly waives all such liability, and to the fullest extent permitted by applicable law, releases Lender therefrom.

6.18.  Indemnity.  (1) Without in any way limiting any other indemnity contained in this Deed of Trust, Trustor agrees to defend, indemnify and hold harmless Trustee and the Lender Group (hereinafter defined) from and against any claim, loss, damage, cost, expense or liability directly or indirectly arising out of: (a) the making of the Loan, except for violations of banking laws or regulations by the Lender Group, but subject to the terms of clause (g) of this Section 6.18; (b) this Deed of Trust; (c) the execution of this Deed of Trust or the performance of any act required or permitted hereunder or by law; (d) any failure of Trustor to perform its obligations under this Deed of Trust or the other Loan Documents; (e) any alleged obligation or undertaking on the Lender Group's part to perform or discharge any of the representations, warranties, conditions, covenants or other obligations contained in any other document related to the

A-23

Security Instrument

HUNTLEY000074

Property; (f) any act or omission by Trustor or any contractor, agent, employee or representative of Trustor with respect to the Property; or (g) any prohibited transaction, in the sale of a prohibited loan, or in obtaining any individual prohibited transaction exemption under ERISA that may be required, in Lender's sole discretion (it being understood that the indemnification owed under this Section 6.18 shall not be limited by clause (a) of this Section 6.18 hereof to the extent a prohibited transaction, sale of a prohibited loan, or transaction with a Prohibited Person may otherwise fall within clause (a) of this Section 6.18; and (h) an Event of Default under Article 7 hereof, including, without limitation, Lender's exercise of rights and remedies provided pursuant to Article 7 hereof. (2) Notwithstanding the foregoing provisions of this Section 6.18(1), this indemnity shall not include any claim, loss, damage, cost, expense or liability directly or indirectly arising out of the gross negligence or willful misconduct of any member of the Lender Group or Trustee, or any claim, loss, damage, cost, expense or liability incurred by the Lender Group or Trustee arising from any act or incident on the Property occurring after the full reconveyance and release of the lien of this Deed of Trust on the Property; however, this indemnity shall include, without limitation: (aa) all consequential and incidental damages (including, without limitation, any third party tort claims or governmental claims, fines or penalties against Trustee or the Lender Group) and (bb) all court costs and attorneys' fees (including, without limitation, expert witness fees) paid or incurred by Trustee or the Lender Group. "**Lender Group**," as used in this Deed of Trust, shall mean (i) Lender (including, without limitation, any participant in the Loan); (ii) any entity controlling, controlled by or under common control with Lender; (iii) the directors, officers, employees, and agents of Lender and such other entities of the Lender Group; and (iv) the successors, heirs and assigns of the entities and persons described in foregoing clauses (i) through (iii). Trustor shall pay immediately upon Trustee's or Lender's demand any amounts owing under this indemnity. Trustor agrees to use legal counsel acceptable to Trustee and the Lender Group in any action or proceeding arising under this indemnity. IF THE TRUSTOR IS ALSO THE BORROWER, THE PROVISIONS OF THIS SECTION 6.18 SHALL SURVIVE THE TERMINATION AND RELEASE OF THIS DEED OF TRUST, BUT SUCH PROVISIONS SHALL REMAIN SUBJECT TO ANY LIMITATIONS SET FORTH IN THE NOTE.

6.19. <u>Substitution of Trustee</u>. From time to time, by a writing signed and acknowledged by Lender and recorded in the official records of the county in which the Property is located, Lender may appoint another trustee to act in the place and stead of Trustee or any successor. Such writing shall set forth any information required by applicable law. The execution of such instrument of substitution shall discharge Trustee herein named and shall appoint the new trustee as the trustee hereunder with the same effect as if originally named trustee herein. A writing recorded pursuant to the provisions of this Section 6.19 shall be conclusive proof of the proper substitution of such new trustee.

6.20. <u>Releases, Extensions, Modifications and Additional Security</u>. Without notice to or the consent, approval or agreement of any persons or entities having any interest at any time in the Property or in any manner obligated under the Secured Obligations (the "**Interested Parties**"), Lender may, from time to time: (a) fully or partially release any person or entity from liability for the payment or performance of any Secured Obligation; (b) extend the maturity of any Secured Obligation; (c) make any agreement with Trustor increasing the amount or otherwise altering the terms of any Secured Obligation; (d) accept additional security for any Secured Obligation; or (e) release all or any portion of the Property, Collateral and other security for any Secured Obligation. None of the foregoing actions releases or reduces the personal liability of any of the Interested Parties, or releases or impairs the priority of the lien of this Deed of Trust upon the Property.

6.21. <u>Reconveyance</u>. Upon Lender's written request, and upon surrender of this Deed of Trust or certified copy thereof and any note, instrument or instruments setting forth all obligations secured hereby to Trustee for cancellation, Trustee shall reconvey, without warranty, the Property or that portion thereof then held hereunder. The recitals of any matters of fact or facts in any reconveyance executed hereunder shall be conclusive proof of the truthfulness thereof. To the extent permitted by law, the reconveyance may describe the grantee as "the person or persons legally entitled thereto." Neither Lender nor Trustee has any duty to determine the rights of persons claiming to be rightful grantees of any reconveyance. When the Property has been fully released reconveyed, the last such reconveyance shall operate as a reassignment of all future rents, issues and profits of the Property to the person or persons legally entitled thereto.

A-24

Security Instrument

HUNTLEY000075

6.22.   Subrogation. If and in each case, (i) any or all of the proceeds of the Note have been used to pay, reduce, extinguish, extend or renew any indebtedness heretofore existing against the Property or (ii) if Lender pays or discharges any lien or encumbrance against or affecting the Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property (collectively, **"Subrogated Interests"**) heretofore held by, or in favor of, the holder of such indebtedness or other Subrogated Interest. If any Subrogated Interest exists, without adversely affecting the priority of this Deed of Trust and the Secured Obligations, any such Subrogated Interest shall be construed in favor of Lender, whether or not it is of record, or has been released, or has been paid in whole or in part. Nothing in this Section 6.22 may be construed to (x) limit the rights and remedies of Lender under, in each case, this Deed of Trust or any of the other Loan Documents or (y) make the Lender liable for any act or omission of any person previously entitled to enforce or collect amounts due in relation to any Subrogated Interest.

6.23.   Sale or Participation of Loan. Trustor agrees that Lender may at any time sell, assign, participate or securitize all or any portion of Lender's rights and obligations under this Deed of Trust, and that any such sale, assignment, participation or securitization may be to one or more financial institutions or other entities, to private investors, and/or into the public securities market, in Lender's sole discretion. Trustor further agrees that Lender may disseminate to any such actual or potential purchaser(s), assignee(s) or participant(s) all documents and financial and other information heretofore or hereafter provided to or known to Lender with respect to: (a) the Property and its operation; and/or (b) any party connected with the Loan (including, without limitation, Trustor, any partner or member of Trustor, or any constituent partner or member of Trustor). In the event of any such sale, assignment, participation or securitization, Lender and the other parties to the same shall share in the rights and obligations of Lender set forth in this Deed of Trust as and to the extent they shall agree among themselves. In connection with any such sale, assignment, participation or securitization, Trustor further agrees that this Deed of Trust shall be sufficient evidence of the obligations of Trustor to each purchaser, assignee or participant, and Trustor within fifteen (15) days after request by Lender, deliver an estoppel certificate verifying for the benefit of Lender and any other party designated by Lender the status and the terms and provisions of the Loan in form and substance acceptable to Lender, and enter into such amendments or modifications to this Deed of Trust as may be reasonably required in order to facilitate any such sale, assignment, participation or securitization without impairing Trustor's rights or increasing Trustor's obligations. The indemnity obligations of Trustor under this Deed of Trust shall also apply with respect to any purchaser, assignee or participant.

6.24.   ERISA.

(a)   Trustor shall not engage in any transaction which would cause any obligation, or action taken or to be taken, hereunder (or the exercise by Lender of any of its rights under the Note, this Agreement or the other Loan Documents) to constitute a "prohibited transaction" (as defined in Section 406 of ERISA or Section 4975 of the Code) for which there is no applicable statutory or administrative exemption.

(b)   Trustor shall not (i) maintain, sponsor, contribute to or become obligated to contribute to, or suffer or permit any ERISA Affiliate of Trustor to, maintain, sponsor, contribute to or become obligated to contribute to, any Plan or any Welfare Plan that provides any benefits to any former employee (or the spouse or dependent of any such former employee) of the Trustor or any of its ERISA Affiliates after such employee's retirement or termination of employment (other than COBRA continuation coverage required to be provided pursuant to Sections 601 through 607 of ERISA or Section 4980B of the Code) or (ii) permit the assets of Trustor to become "plan assets" within the meaning of the Plan Asset Regulation.

(c)   Trustor shall deliver to Lender such certifications or other evidence from time to time throughout the Term, as requested by Lender in its sole discretion, that (A) Trustor is not and does not maintain a Plan or a "governmental plan" within the meaning of Section 3(32) of ERISA; (B) Trustor is not subject to state statutes regulating investments and fiduciary obligations with respect to governmental plans; and (C) the assets of Trustor do not constitute "plan assets" within the meaning of the Plan Asset Regulation.

6.25.   Intentionally Omitted

A-25

Security Instrument

HUNTLEY000076

6.26. Intentionally Omitted

6.27. Intentionally Omitted

6.28. Intentionally Omitted

6.29. Intentionally Omitted

ARTICLE 7

DEFAULT AND REMEDIES

7.1. Event of Default. An "**Event of Default**" occurs automatically upon the occurrence of any one or more of the following events:

(a) Monetary. Borrower or Trustor (as applicable) fails to, in any case: (i) pay when due any sums that by their express terms require immediate payment without any grace period or sums that are payable on the Maturity Date hereunder or under any of the other Loan Documents secured by this Deed of Trust; or (ii) pay within five (5) days when due any other sums payable hereunder or under any of the other Loan Documents secured by this Deed of Trust, including, without limitation, any monthly payment due under the Note.

(b) Borrower's Performance of Non-Monetary Obligations Under Other Loan Documents. If Borrower fails to observe, perform or discharge any of its obligations, covenants, conditions or agreements to Lender or any third person, other than Borrower's payment obligations, under any of the Loan Documents (excluding this Deed of Trust); provided that Borrower's breach or failure to perform obligations to a third person shall be a default hereunder only where such breach or failure may materially affect Borrower's assets or Borrower's ability to repay the Loan or perform its obligations under the Loan Documents.

(c) Trustor's Performance of Non-Monetary Obligations Under Deed of Trust. Trustor fail to observe, perform or discharge any of Trustor's obligations, covenants, conditions or agreements, other than Trustor's payment obligations, under this Deed of Trust, other than as specifically provided in this Section 7.1, and (i) such failure shall remain uncured for thirty (30) days after written notice thereof shall have been given to Trustor, as the case may be, by Lender; or (ii) if such failure is of such a nature that it cannot be cured within such thirty (30) day period, Trustor shall fail to commence to cure such failure within such thirty (30) day period or shall fail to diligently prosecute such curative action thereafter or shall fail to cure such default within ninety (90) days after written notice thereof was first given to Trustor.

(d) Representations and Warranties. Any representation, warranty, certificate or other statement (financial or otherwise) made or furnished by or on behalf of Trustor, if any, to Lender or in connection with any of the Loan Documents, or as an inducement to Lender to make the Loan or to take any action for the benefit of Trustor, in each case, is false, incorrect, incomplete or misleading in any material respect when made or furnished. There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(d).

(e) Condemnation, Attachment. The condemnation, seizure or appropriation of any material portion (as reasonably determined by Lender) of the Property, or the sequestration or attachment of, or levy or execution upon any of the Property, the Collateral or any other collateral provided by Trustor under any of the Loan Documents, or any material portion of the other assets of Trustor, which sequestration, attachment, levy or execution is not released or dismissed within forty-five (45) days after its occurrence, or the sale of any assets affected by any of the foregoing.

(f) Uninsured Casualty. The occurrence of an uninsured casualty with respect to any material portion (as determined by Lender) of the Property unless: (i) no other Event of Default has occurred

A-26

Security Instrument

HUNTLEY000077

and is continuing at the time of such casualty or occurs thereafter; (ii) Trustor promptly notifies Lender of the occurrence of such casualty; and (iii) not more than forty-five (45) days after the occurrence of such casualty, Trustor delivers to Lender immediately available funds ("**Restoration Funds**") in an amount sufficient, in Lender's reasonable opinion, to pay all costs of the repair or restoration (including, without limitation, taxes, financing charges, insurance and rent during the repair period). So long as no Event of Default has occurred and is continuing at the time of Lender's receipt of the Restoration Funds and no Event of Default occurs thereafter, Lender shall make the Restoration Funds available for the repair or restoration of the Property. Notwithstanding the foregoing, Lender shall have no obligation to make any Restoration Funds available for repair or restoration of the Property unless and until all the conditions set forth in clauses (ii) and (iii) Section 6.11(b)(2) of this Deed of Trust have been satisfied. Trustor acknowledges that the specific conditions described above are reasonable.

(g) <u>Adverse Financial Change</u>. Any adverse change in the financial condition of Trustor, or any of their partners, or members, or any guarantor, or any other person or entity from the condition shown on the financial statements submitted to Lender and relied upon by Lender in making the Loan, and which change Lender determines will have a material adverse effect on (i) the business, operations or condition of the Property; or (ii) the ability of Trustor to pay or perform Trustor's obligations in accordance with the terms of this Deed of Trust, and the other Loan Documents.

(h) <u>Voluntary Bankruptcy, Insolvency, Dissolution</u>. (i) Trustor's filing a petition for relief under the Bankruptcy Reform Act of 1978, as amended or recodified ("**Bankruptcy Code**"), or under any other present or future state or federal law regarding bankruptcy, reorganization or other relief to debtors (collectively, "**Debtor Relief Law**"); or (ii) Trustor's filing any pleading in any involuntary proceeding under the Bankruptcy Code or other Debtor Relief Law that admits the jurisdiction of a court to regulate Trustor or the Property or the petition's material allegations regarding Trustor's insolvency; or (iii) Trustor's making a general assignment for the benefit of creditors; or (iv) Trustor's applying for, or the appointment of, a receiver, trustee, custodian or liquidator of Trustor or any of its property; or (v) the filing by or against Trustor of a petition seeking the liquidation or dissolution of Trustor or the commencement of any other procedure to liquidate or dissolve Trustor. There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(h).

(i) <u>Involuntary Bankruptcy</u>. Trustor's failure to effect a full dismissal of any involuntary petition under the Bankruptcy Code or other Debtor Relief Law that is filed against Trustor or in any way restrains or limits Trustor or Lender regarding the Loan or the Property, prior to the earlier of the entry of any order granting relief sought in the involuntary petition or forty-five (45) days after the date of filing of the petition.

(j) <u>Shareholders, Members and Partners</u>.

(1) If an event specified in Sections 7(h) or 7(i) hereof occurs as to Trustor or any general partner, shareholder or member of Trustor, there shall be no cure period for any Event of Default arising from a breach of this Section 7.1(j)(1).

(2) If all or any material part of the assets of Trustor, or any shareholder, director, general partner or manager of Trustor are attached, seized, subjected to a writ or levied upon by any court process and Trustor fails to cause such attachment, seizure, writ or levy to be fully released or removed within sixty (60) days after the occurrence of such event. The cure provision contained in this Section 7.1(j)(2) shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

(3) For the avoidance of doubt, the provisions of this Section 7.1(j) shall not be limited because a shareholder, member or general partner of Trustor, in each case, may also be a guarantor of the Loan; rather, in that instance,

A-27

Security Instrument

HUNTLEY000078

an Event of Default under this Section 7.1(j) shall exist regarding the condition of such shareholder, member or general partner of Trustor, and the provisions of Section 7.1(k) hereof shall apply regarding Trustor's duty to obtain an acceptable substitute guarantor. The cure provisions contained in this Section 7.1(j) shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

(k)    Guarantors.

(1)    If any an event specified in Sections 7(h) or 7(i) hereof as to any guarantor of the Loan, remains uncured for at least forty-five (45) days, and Trustor fails to provide a substitute guarantor acceptable to Lender within sixty (60) days after the occurrence an event specified in Sections 7(h) or 7(i) hereof as to any guarantor of the Loan.

(2)    If all or any material part of the assets of any guarantor of the Loan are attached, seized, subjected to a writ or levied upon by any court process and Trustor fails to either (i) cause such attachment, seizure, writ or levy to be fully released or removed within sixty (60) days after the occurrence of such event or (ii) provide a substitute guarantor acceptable to Lender within sixty (60) days after all or any material part of the assets of any guarantor of the Loan are attached, seized, subjected to a writ or levied upon by any court process.

(3)    If any guarantor of the Loan dies and Trustor fails to provide a substitute guarantor of the Loan acceptable to Lender within sixty (60) days after the death of such guarantor; however, nothing in this Section 7.1(k)(3) may be construed to reduce or limit any rights and remedies Lender may have against the estate of or successors in interest to such guarantor of the Loan who has died, including, without limitation, any right to enforce a guarantee of the Loan against the estate of a guarantor of the Loan who has died.

(4)    For the avoidance of doubt, Trustor acknowledges that, in consideration of the Loan, Borrower and Trustor (as applicable) are required to provide a guarantor of the Loan acceptable to Lender, in Lender's sole discretion, and this Section 7.1(k) shall be construed consistent with such obligation of Trustor. Nothing in this Section 7.1(k) may be construed to suggest that this Deed of Trust secures any obligations under any guarantee of the Loan (it being understood that this Deed of Trust does not secure any guarantee of the Loan). The cure provisions contained in this Section 7.1(k) shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

(l)    Injunctions. If a court order is entered against Trustor or any shareholder, general partner, member or manager of Trustor enjoining the conduct of all or part of such person's business and Trustor fails to cause such injunction to be fully stayed, dissolved or removed within sixty (60) days after such order is entered. The cure provision contained in this Section 7.1(l) shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

(m)    Dissolution. If Trustor or any shareholder, general partner, member or manager of Trustor is a corporation, partnership, limited liability company or trust, the dissolution, liquidation, or termination of existence of such person. There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(m).

A-28

Security Instrument

HUNTLEY000079

(n) <u>Unauthorized Transfers and Assignments</u>. Any Transfer made or attempted, in each case, in violation of to Section 6.14 hereof (For the avoidance of doubt, the term Transfer includes any Assignment, as defined in Section 6.14 hereof). There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(n).

(o) <u>Admission of New Partners, Members, or Shareholders</u>. If applicable, unless Trustor is a publicly traded company listed on a nationally recognized stock exchange (a "**Public Company**") and the trading of shares in such Public Company or other transaction affecting such Public Company does not constitute a Transfer pursuant to Section 6.14 hereof, the admission to Trustor of any new member, partner, shareholder, or joint venturer, in each case, without having first having (i) informed Lender of the proposed admission of a new member, partner, shareholder, or joint venturer, in each case, and (ii) Trustor having received a written response from Lender regarding Lender's review and disposition of the request pursuant to this Section 7.1(o) and Section 6.14 hereof. Any admission of a new member, partner, joint venturer contrary to this Section 7.1(o) shall be deemed a Transfer in violation of Section 6.14 hereof (For the avoidance of doubt, this Section 7.1(o) does not provide and shall not be construed to provide any Trustor that is a Public Company any right to make or participate in a Transfer in violation of Section 6.14 hereof). There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(o).

(p) <u>Death; Incompetency</u>. If Trustor or any general partner, manager, or managing member of Trustor is an individual (i.e., a natural person), the death or incompetency of such person, except (i) where applicable law limits or prohibits Lender's declaration of a default based on such occurrences and (ii) in the case of the death or mental incompetence of a general partner, manager, or managing member, Trustor causes a substitute general partner, manager or managing member, as applicable, to be admitted to Trustor or appointed to such role and Lender, pursuant to Section 6.14 hereof, in good faith determines that the financial condition, credit history, character, experience, ability and expertise of such substitute general partner, manager, or managing member are comparable to the affected general partner or manager and that such substitute general partner or manager is otherwise acceptable to Lender (For the avoidance of doubt, any substitutions or Transfers contemplated by this Section 7.1(p) shall be made consistent with the terms of both Section 7.1(o) hereof and Section 6.14 hereof).

(q) <u>Impairment of Priority</u>. If (i) the priority of this Deed of Trust or Lender's security interest under any of the other agreements securing any or all of the Obligations is impaired for any reason; or (ii) the value of the Property has deteriorated, declined or depreciated as a result of any intentional tortious act or omission by Trustor. There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(q).

(r) <u>Condemnation</u>. If all or any material part of the Property is transferred to any Governmental Authorities as a result of any condemnation proceeding or action with respect to all or any material part of the Property. There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(r).

(s) <u>Failure to Repair Casualty</u>. If there is an uninsured casualty with respect to the Property, and Trustor (i) fails to commence repairs and reconstruction of the Property within ninety (90) days after such damage or (ii) thereafter fails to diligently prosecute such repairs and reconstruction to completion. The cure provisions contained in this Section 7.1(s) shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

(t) <u>Licenses</u>. Trustor fails to do any act or execute any document at any time requested by Lender to provide it an assignment of all licenses necessary to operate the business for its intended use. There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(t).

7.2. <u>Acceleration</u>. Upon the occurrence of an Event of Default, Lender may, at its option, declare all sums owing to Lender under the Note and the other Loan Documents immediately due and payable.

A-29

Security Instrument

HUNTLEY000080

7.3.    Rights and Remedies. In addition to the rights and remedies in Section 7.2 above and as otherwise provided to Lender in this Deed of Trust, at any time after an Event of Default, Lender and Trustee shall each have all of the following rights and remedies:

(a)    Entry on Property. With or without notice, and without releasing Trustor from any Secured Obligation, and without becoming a mortgagee in possession, to enter upon the Property from time to time and to do such acts and things as Lender or Trustee deem necessary or desirable in order to inspect, investigate, assess and protect the security hereof or to cure any Event of Default, including, without limitation: (i) to take and possess all documents, books, records, papers and accounts of Trustor or the then owner of the Property that relate to the Property; (ii) to make, terminate, enforce or modify leases of the Property upon such terms and conditions as Lender deems proper; (iii) to make repairs, alterations and improvements to the Property necessary, in Trustee's or Lender's sole judgment, to protect or enhance the security hereof; (iv) to appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Lender or Trustee hereunder; (v) to pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien which, in the sole judgment of either Lender or Trustee, is or may be senior in priority hereto, the judgment of Lender or Trustee being conclusive, as between the parties hereto; (vi) to obtain insurance; (vii) to pay any premiums or charges with respect to insurance required to be carried hereunder; and/or (viii) to employ legal counsel, accountants, engineers, consultants, contractors and other appropriate persons to assist them;

(b)    Appointment of Receiver. To apply to a court of competent jurisdiction for and obtain appointment of a receiver of the Property as a matter of strict right and without regard to: (i) the adequacy of the security for the repayment of the Secured Obligations; (ii) the existence of a declaration that the Secured Obligations are immediately due and payable; or (iii) the filing of a notice of default; and Trustor consents to such appointment;

(c)    Judicial Foreclosure, Injunction. To commence and maintain an action or actions in any court of competent jurisdiction to foreclose this instrument as a mortgage or to obtain specific enforcement of the covenants of Trustor hereunder, and Trustor agrees that such covenants shall be specifically enforceable by injunction or any other appropriate equitable remedy and that for the purposes of any suit brought under this subparagraph, Trustor waives the defense of laches and any applicable statute of limitations and shall not require Lender to post a point to seek an injunction or any other kind of specific performance;

(d)    Nonjudicial Foreclosure. To execute a written notice of such an Event of Default and of the election to cause the Property to be sold to satisfy the Secured Obligations. Trustee shall give and record such notice as applicable law then requires as a condition precedent to a trustee's sale. When the minimum period of time required by law after such notice has elapsed, Trustee, without notice to or demand upon Trustor except as required by applicable law, shall sell the Property at the time and place of sale fixed by it in the notice of sale, at one or several sales, either as a whole or in separate parcels and in such manner and order, all as Lender in its sole discretion may determine, at public auction to the highest bidder for cash, in lawful money of the United States, payable at time of sale. Neither Trustor nor any other person other than Lender has the right to direct the order in which the Property is sold. Subject to requirements and limits imposed by applicable law, Trustee may, from time to time postpone sale of all or any portion of the Property by public announcement at such time and place of sale previously stated, and from time to time, may also postpone the sale by public announcement at the time and place fixed by the preceding postponement. A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein. Trustee shall deliver to the purchaser at such sale a deed conveying the Property or portion thereof so sold, but without any covenant or warranty, express or implied from Lender. The recitals in the deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustee, Trustor or Lender may purchase at the sale;

Upon sale of the Property at any judicial or nonjudicial foreclosure, Lender may credit bid (as determined by Lender in its sole and absolute discretion) all or any portion of the Secured Obligations. In determining such credit bid, Lender may, but is not obligated to, take into account all or any of the

A-30

Security Instrument

HUNTLEY000081

following: (i) appraisals of the Property as such appraisals may be discounted or adjusted by Lender in its sole and absolute underwriting discretion; (ii) expenses and costs incurred by Lender with respect to the Property prior to foreclosure; (iii) expenses and costs that Lender anticipates will be incurred with respect to the Property after foreclosure, but prior to resale, including, without limitation, costs of structural reports and other due diligence, costs to carry the Property prior to resale, costs of resale (e.g., commissions, attorneys' fees, and taxes), costs of deferred maintenance, repair, refurbishment and retrofit, costs of defending or settling litigation affecting the Property, and lost opportunity costs (if any), including the time value of money during any anticipated holding period by Lender; (iv) declining trends in real property values generally and with respect to properties similar to the Property; (v) anticipated discounts upon resale of the Property as a distressed or foreclosed property; (vi) the existence of additional collateral (if any), for the Secured Obligations; and (vii) such other factors or matters that Lender (in its sole and absolute discretion) deems appropriate. In regard to the above, Trustor acknowledges and agrees that: (viii) Lender is not required to use any or all of the foregoing factors to determine the amount of its credit bid; (ix) this paragraph does not impose upon Lender any additional obligations that are not imposed by law at the time the credit bid is made; (x) the amount of Lender's credit bid need not have any relation to any loan-to-value ratios specified in the Loan Documents or previously discussed between Trustor and Lender; (xi) Lender's credit bid may be (at Lender's sole and absolute discretion) higher or lower than any appraised value of the Property; and (xii) Trustor acknowledges and understands that Lender has no duty to act in Trustor's best interest and expects that Lender will act in Lender's best interest, as determined by Lender, in Lender's sole discretion;

(e)     Multiple Foreclosures. To resort to and realize upon the security hereunder and any other security now or later held by Lender concurrently or successively and in one or several consolidated or independent judicial actions or lawfully taken nonjudicial proceedings, or both, and to apply the proceeds received upon the Secured Obligations all in such order and manner as Trustee and Lender or either of them determine in their sole discretion;

(f)     Rights to Collateral. To exercise all rights Trustee or Lender may have with respect to the Collateral under this Deed of Trust, the UCC or otherwise at law; and

(g)     Other Rights. To exercise such other rights as Trustee or Lender may have at law or in equity or pursuant to the terms and conditions of this Deed of Trust or any of the other Loan Documents.

In connection with any sale or sales hereunder, Lender may elect to treat any of the Property that consists of a right in action or that is property that can be severed from the Property (including, without limitation, any Improvements) without causing structural damage thereto as if the same were personal property or a fixture, as the case may be, and dispose of the same in accordance with applicable law, separate and apart from the sale of the Property. Any sale of Collateral hereunder shall be conducted in any manner permitted by the UCC.

No specific right or remedy provided in this Section 7.3 may be construed, in each case, to create a duty for Lender to act or exercise any specific right or remedy or make Lender liable for any failure to exercise such right or remedy. Without limiting the generality of the immediately preceding sentence, nothing in this Section 7.3 may be construed to make Lender responsible for the Property; its operation, maintenance, or condition; or any circumstances occurring on the Land, in each case, prior to Lender taking title to the Land. No failure to exercise any right or remedy provided by this Section 7.3 may be construed as a waiver of such right or remedy by Lender or as any limitation on Lender's ability to exercise such right or remedy. The provisions of this Article 7 are intended to benefit Lender and Lender's interests preserving and enforcing its security interest in the Property and obtaining full and timely repayment of the Secured Obligations, and thus, the parties hereto intend that such provisions are interpreted consistent with the best interests of Lender, in Lender's determination thereof, to the fullest extent permitted by applicable law.

7.4.     Application of Foreclosure Sale Proceeds. If any foreclosure sale is effected, Trustee shall apply the proceeds of such sale in the following order of priority: First, to the costs, fees and expenses of exercising the power of sale and of the sale, including, without limitation, the payment of the Trustee's fees and attorneys' fees permitted pursuant to subdivision (b) of California Civil Code Section 2924d and

A-31

Security Instrument

HUNTLEY000082

subdivision (b) of Section 2924k; Second to the payment of the Secured Obligations that are secured by this Deed of Trust, in such order as Lender shall determine in its sole discretion; Third, to satisfy the outstanding balance of obligations secured by any junior liens or encumbrances in the order of their priority; and Fourth, to the Trustor or the Trustor's successor in interest, or in the event the Property has been sold or transferred to another, to the vested owner of record at the time of the Trustee's sale.

7.5. Waiver of Marshaling Rights. Trustor, for itself and for all parties claiming through or under Trustor, and for all parties who may acquire a lien on or interest in the Property, hereby waives all rights to have the Property and/or any other property, including, without limitation, the Collateral, which is now or later may be security for any Secured Obligation, marshaled upon any foreclosure of this Deed of Trust or on a foreclosure of any other security for any of the Secured Obligations.

7.6. No Cure or Waiver. Neither Lender's nor Trustee's nor any receiver's entry upon and taking possession of all or any part of the Property, nor any collection of rents, issues, profits, insurance proceeds, condemnation proceeds or damages, other security or proceeds of other security, or other sums, nor the application of any collected sum to any Secured Obligation, nor the exercise of any other right or remedy by Lender or Trustee or any receives cures or waives any Event of Default or notice of default under this Deed of Trust, or nullifies the effect of any notice of default or sale (unless all Secured Obligations then due have been paid or performed and Trustor has cured all other Events of Default hereunder, in each case, as determined by Lender), or impairs the status of the security, or prejudices Lender or Trustee in the exercise of any right or remedy, or may be construed as an affirmation by Lender of any tenancy, lease or option or a subordination of the lien of this Deed of Trust.

7.7. Power to File Notices and Cure Events of Default. Trustor hereby irrevocably appoints Lender and its successors and assigns, as its attorney-in-fact, which power of attorney is coupled with an interest, to perform any obligation of Trustor hereunder upon the occurrence of an event, act or omission that, with notice or passage of time or both, would constitute an Event of Default; provided, however, (a) Lender as such attorney-in-fact shall only be accountable for such funds as are actually received by Lender; and (b) Lender shall not be liable to Trustor or any other person or entity for any failure to act under this Section 7.8.

7.8. Remedies Cumulative. All rights and remedies of Lender and Trustee provided hereunder are cumulative and are in addition to all rights and remedies provided by applicable law (including specifically, and without limitation, that of foreclosure of this Deed of Trust as though it were a mortgage) or in any other agreements between Trustor and Lender. Lender may enforce any one or more remedies or rights hereunder successively or concurrently.

ARTICLE 8

ENVIRONMENTAL HAZARDS

8.1. Compliance. As a covenant of this Deed of Trust, separate and distinct from the obligations of the parties to the Environmental Indemnity Agreement, Trustor shall comply with all covenants, conditions, provisions, and obligations of Trustor under the Environmental Indemnity Agreement, and Trustor shall comply with all Hazard Substance Laws (as defined in the Environmental Indemnity Agreement).

8.2. Trustor's Representation and Warranty. Before signing this Deed of Trust, Trustor researched and inquired into the previous uses and ownership of the Land. Based on that due diligence, Trustor represents and warrants that to the best of its knowledge, no Hazardous Substances (as defined in the Environmental Indemnity Agreement) have been discharged, disposed of or released or otherwise exist in, on, under or to the Land, except as Trustor has disclosed to Lender in writing prior to Lender issuing any commitment to make the Loan.

8.3. Trustor's Indemnity. Trustor shall indemnify, hold harmless, protect and defend the Lender Group (as defined in Section 6.18 hereof) from and against any and all claims, liabilities, judgments, penalties, fines, losses, damages (including foreseeable and unforeseeable consequential damages), costs

A-32

Security Instrument

HUNTLEY000083

and expenses (including amounts paid in settlement of claims, consultants' and experts' fees and costs, and attorneys' fees and costs) directly or indirectly arising from, out of or in connection with, or attributable to: (i) any Hazardous Substance Activity that occurs or is alleged to have occurred; (ii) any violation of any applicable Hazardous Substance Laws (as defined in the Environmental Indemnity Agreement) relating to the Property or to the ownership, use, occupancy or operation thereof; or (iii) any investigation, inquiry, order, hearing, action, or other proceeding by or before any governmental agency in connection with any Hazardous Substance Activity. Without limiting the scope of the foregoing, the obligations of Trustor pursuant to this Section 8.3 include: the costs of any repair, cleanup or detoxification of the Property, including the preparation and implementation of any closure, remedial or other required plans; all costs, damages, liabilities and claims arising directly or indirectly from, out of or in connection with actual or alleged injury or damage to persons and property (including property other than the Property); all administrative costs and all other liabilities to governments and governmental entities; and all foreseeable and unforeseeable consequential damages.

8.4. <u>Compliance with Applicable Laws and Regulations</u>. Trustor has complied, and shall comply and cause all occupants of the Land and the Improvements to comply, with all Hazardous Substances that apply or pertain to the Property or the uses thereon or therein by Trustor or any tenant or other occupant. Trustor acknowledges that Hazardous Substances may permanently and materially impair the value and use of real property and that breach of this covenant constitutes willful misconduct and intentional waste of the Land.

8.5. <u>Notices to Lender</u>. Trustor shall give immediate written notice to Lender of: (i) any proceeding, inquiry, notice or other communication by or from any Governmental Authorities, including, but not limited to, the California State Department of Health Services and the Environmental Protection Agency, regarding the presence, release, discharge or existence of any Hazardous Substance on, under or about the Land or any migration thereof from or to the Property or any actual or alleged violation of any Hazardous Substance Laws; (ii) all claims made or threatened against Trustor or the Property relating to any damage, liability, potential liability, loss or injury resulting from or pertaining to any Hazardous Substance Activity or violation of any Hazardous Substance Laws; (iii) Trustor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Land that could cause the Land or the Improvements or any part thereof to be subject to any restrictions on ownership, occupancy, transferability or use, or subject the owner or any person having any interest in the Property to any liability, penalty or disability under any Hazardous Substance Laws, including, but not limited to, any that could cause the Land or any part thereof to be classified as "border-zone property" under the provisions of California Health & Safety Code Sections 25220 et seq. or any regulation thereunder or in connection therewith; and (iv) Trustor's receipt of any notice or discovery of any information regarding any actual, alleged or potential use, manufacture, production, storage, spillage, seepage, release, discharge, disposal or any other presence or existence of any Hazardous Substances on, under or about the Property (except as permitted under Section 8.6 hereof), or any violation of any Hazardous Substance Laws pertaining to Trustor or the Land. Immediately upon receipt of any of the following, Trustor shall deliver copies to Lender: any and all orders, notices, permits, applications, reports and other communications, documents and instruments pertaining to any Hazardous Substance Activity or the violation of any Hazardous Substance Laws pertaining to, in each case, Trustor or the Property. Lender shall have the right, but not the obligation, to join and participate in, as a party if it so elects, any legal proceedings or actions in connection with the Property involving any Hazardous Substance Activity or any Hazardous Substance Laws, and Trustor shall reimburse Lender upon demand for all of Lender's reasonable costs and expenses in connection therewith, including, without limitation, reasonable attorneys' fees.

8.6. <u>Covenants</u>. Trustor further agrees as follows:

(a) With or without notice, and without releasing Trustor from any obligation hereunder, to cure any default of Trustor and, in connection therewith, Lender or its agents, acting by themselves or through a court appointed receiver, may enter upon the Property or any part thereof and perform such acts and things as Lender deems necessary or desirable to inspect, investigate, assess, and protect the security hereof, including without limitation of any of its other rights: (i) to obtain a court order to enforce Lender's right to enter and inspect the Property under Section 2929.5 of the California Civil Code, to which the

A-33

Security Instrument

HUNTLEY000084

decision of Lender as to whether there exists a release or threatened release of Hazardous Substances in or onto the Property shall be deemed reasonable and conclusive as between the parties hereto; and (ii) to have a receiver appointed under Section 564 of the California Code of Civil Procedure to enforce Lender's right to enter and inspect the Property for Hazardous Substances. All costs and expenses reasonably incurred by Lender with respect to the audits, tests, inspections, and examinations that Lender or its agents, in each case, may conduct, including, without limitation, the fees of the engineers, laboratories, contractor, consultants, and attorneys, shall be paid by Trustor. All reimbursement costs and expenses incurred by Trustee and Lender pursuant to this subparagraph (including, without limitation, court costs, consultant fees and attorneys' fees, whether incurred in litigation or not and whether before or after judgment) shall be added to the Secured Obligations and shall bear interest at the Default Rate (as defined in the Note) from the date they are incurred until said sums have been paid.

(b)     Lender may seek a judgment that Trustor has breached its covenants, representations and/or warranties with respect to the environmental matters set forth herein, by commencing and maintaining an action or actions in any court of competent jurisdiction for breach of contract pursuant to Section 736 of the California Code of Civil Procedure, whether commenced prior to foreclosure of the Property, and to seek the recovery of any and all costs, damages, expenses, fees, penalties, fines, judgments, indemnification payments to third parties, and other out-of-pocket costs or expenses actually incurred by Lender (collectively, the "**Environmental Costs**") incurred or advanced by Lender relating to the cleanup, remediation or other response action, required by applicable law or to which Lender believes necessary to protect the Property, it being conclusively presumed between Lender and Trustor that all such Environmental Costs incurred or advanced by Lender relating to the cleanup, remediation, or other response action of or to the Property were made by Lender in good faith. All Environmental Costs incurred by Lender under this subparagraph (including, without limitation, court costs, consultant fees and attorneys' fees, whether incurred in litigation or not and whether before or after judgment) shall bear interest at the Default Rate (as defined in the Note) from the date of expenditure until said sums have been paid. Lender shall be entitled to bid, at the sale of the Property, the amount of said costs, expenses and interest in addition to the amount of the other obligations hereby secured as a credit bid, the equivalent of cash.

Trustor acknowledges and agrees that notwithstanding any term or provision contained herein or elsewhere, the Environmental Costs shall be exceptions to any limited recourse or exculpatory provision, if applicable, and Trustor shall be fully and personally liable for the Environmental Costs hereunder, and such liability shall not be limited to the original principal amount of the obligations secured by this Deed of Trust, and the Property or this Deed of Trust. For the purposes of any action brought under this subparagraph, Trustor hereby waives the defense of laches and any applicable statute of limitations.

(c)     Lender may waive its lien against the Property or any portion thereof, whether fixtures or personal property, to the extent such property is found to be environmentally impaired in accordance with Section 726.5 of the California Code of Civil Procedure and to exercise any and all rights and remedies of an unsecured creditor against Trustor and all of Trustor's assets and property for the recovery of any deficiency and Environmental Costs, including, but not limited to, seeking an attachment order under Section 483.010 of the California Code of Civil Procedure. As between Lender and Trustor, for purposes of Section 726.5 of the California Code of Civil Procedure, Trustor shall have the burden of proving that Trustor or any related party (or any affiliate or agent of Trustor or any related party) was not in any way negligent in permitting the release or threatened release of Hazardous Substances (it being understood that the provisions of the immediately preceding sentence represent a specific bargained-for allocation of risk between Lender and Trustor).

(d)     Trustor agrees that Lender shall have the right to bring one or more actions under this Article 8, in each case, (i) without acceleration of the Secured Obligations or commencement of foreclosure proceedings under this Deed of Trust and (ii) whether or not Borrower is in default under the Note and whether or not any Event of Default exists or has been declared by the Lender. Any such separate action arising under this Article 8 shall not be deemed to be an "action" within the meaning of California Code of Civil Procedure Section 726(a) or constitute a money judgment for a deficiency or a deficiency judgment within the meaning of California Code of Civil Procedure Sections 580a, 580b, or 726(b),

A-34

Security Instrument

HUNTLEY000085

respectively (it being understood that the obligations of Trustor under this Article 8 represent separate and distinct contractual duties owed to Lender provided by the terms hereof, irrespective of the Secured Obligations). Trustor shall be fully and personally liable for all judgments and awards entered against Trustor hereunder, and such liability shall not be limited to the original principal amount of the obligations secured by this Deed of Trust. Trustor's obligations to Lender pursuant to this Article 8 shall survive, in each case (i) foreclosure or the exercise of the power of sale under this Deed of Trust; (ii) the acceptance of deed in lieu of foreclosure; (iii) the release or satisfaction of this Deed of Trust; (iv) the reconveyance of the Property or any portion thereof; or (v) any other Transfer of the Property or any interest this Deed of Trust (it being understood that, without limiting the right of any future holder of the Note, Axos Bank shall retain the right to enforce or recover amounts owed pursuant this Article 8, even if it is no longer holder of the Note). For the purposes of any action brought under this Article 8, Trustor hereby waives the defense of laches and any applicable statute of limitations to the fullest extent permitted by applicable law. Trustor acknowledges and agrees that notwithstanding any term or provision contained herein or elsewhere, all judgments and awards entered against Trustor shall be exceptions to any nonrecourse or exculpatory provision that may exist in the Loan Documents.

8.7. <u>Distinct Covenants</u>. Notwithstanding anything to the contrary in this Article 8: (i) Trustor's obligations pursuant to this Article 8 are specific to this Deed of Trust; (ii) the Environmental Indemnity Agreement remains separate herefrom and shall survive, in each case, release, reconveyance, or other termination or satisfaction of this Deed of Trust; and (iii) consistent with Section 2.1 hereof, this Deed of Trust does not secure, in each case, the Environmental Indemnity Agreement or any environmental indemnity agreement.

ARTICLE 9

GENERAL PROVISIONS

9.1. <u>Integration and Additional Provisions</u>. The Loan Documents contain the complete and entire agreement of the parties with respect to matters contemplated by the Loan Documents, and the Loan Documents supersede all prior and contemporaneous agreements, negotiations, communications, understandings, and discussions, in each case, whether written or oral. The Loan Documents grant further rights to Lender and contain further agreements and affirmative and negative covenants by Trustor that apply to this Deed of Trust and to the Property and such further rights and agreements are incorporated herein by this reference. Without limiting the generality of the preceding provisions of this Section 9.1. IF THE TRUSTOR IS ALSO THE BORROWER, THE PROVISIONS OF THIS SECTION 9.1 SHALL SURVIVE THE TERMINATION AND RELEASE OF THIS DEED OF TRUST, BUT SUCH PROVISIONS SHALL REMAIN SUBJECT TO ANY LIMITATIONS SET FORTH IN THE NOTE.

9.2. <u>Non-Waiver</u>. By accepting payment of any amount secured hereby after its due date or late performance of any other Secured Obligation, Lender shall not waive its right against any person obligated directly or indirectly hereunder or on any Secured Obligation, either to require prompt payment or performance when due of all other sums and obligations so secured or to declare default for failure to make such prompt payment or performance. No exercise of any right or remedy by Lender or Trustee hereunder constitutes a waiver of any other right or remedy herein contained or provided by applicable law. No failure by Lender or Trustee to exercise any right or remedy hereunder arising upon any Event of Default may be construed to prejudice Lender's or Trustee's rights or remedies upon, in each case, the continued existence of such Event of Default or occurrence of any other or subsequent Event of Default. No delay by Lender or Trustee in exercising any such right or remedy may be construed to preclude Lender or Trustee from the exercise thereof at any time while that Event of Default is continuing. No notice to or demand on Trustor shall by itself or the fact that was provided, in each case, entitle Trustor to any other or further notice or demand in similar or other circumstances.

9.3. <u>Consents and Approvals</u>. Wherever Lender's consent, approval, acceptance or satisfaction is required under any provision of this Deed of Trust or any of the other Loan Documents, unless either applicable law or a specific provision of one of the Loan Documents requires a different

A-35

Security Instrument

HUNTLEY000086

standard of Lender, such consent, approval, acceptance or satisfaction shall be in Lender's sole and absolute discretion.

9.4.  Permitted Contests.  After prior written notice to Lender, Trustor may contest, by appropriate legal or other proceedings conducted in good faith and with due diligence, the amount, validity or application, in whole or in part, of any lien, levy, tax or assessment, or any lien of any laborer, mechanic, materialman, supplier or vendor, or the application to Trustor or the Property of any law or the validity thereof, the assertion or imposition of which, or the failure to pay when due, would constitute an Event of Default, subject to the requirements that: (a) Trustor pursues the contest diligently, in a manner that Lender determines is not prejudicial to Lender, and that does not impair the lien of this Deed of Trust; (b) the Property, or any part hereof or estate or interest therein, shall not be in any danger of being sold, forfeited, damaged, or lost by reason of such proceedings; (c) in the case of the contest of any law or other legal requirement, Lender shall not be in any danger of any civil or criminal liability; and (d) if required by Lender, Trustor deposits with Lender any funds or other forms of assurance (including a bond or letter of credit) satisfactory to Lender to protect Lender from the consequences of the contest being unsuccessful. Trustor's right to contest pursuant to the terms of this provision shall not relieve Trustor of its obligations under the Loan or to make payments to Lender as and when due.

9.5.  Further Assurances.  Trustor shall, upon demand by Lender or Trustee, execute, acknowledge (if appropriate) and deliver any and all documents and instruments and do or cause to be done all further acts reasonably necessary or appropriate to effectuate the provisions hereof.

9.6.  Attorneys' Fees.  In the event it is necessary for Lender to retain the services of an attorney or any other party to enforce or to commence any legal action to enforce the terms of this Deed of Trust, or any of the other Loan Documents, or any portion hereof or thereof, Trustor agrees to pay to Lender, in addition to damages or other relief, any and all costs and expenses, including, without limitation, expert witness fees and reasonable attorney's fees incurred by Lender as a result thereof.

9.7.  Trustor and Lender Defined.  The term "**Trustor**" includes both the original Trustor including all persons executing this Deed of Trust as a trustor and any subsequent owner or owners of any of the Property; however, while any subsequent owner may have duties under this Deed of Trust by having taken title subject to this Deed of Trust, this Security Agreement does not affirmatively grant any rights against Lender to a subsequent owner who did not take title to the Property through a Transfer that fully complies with the terms of this Deed of Trust. The term "**Lender**" includes the original Lender and any future owner or holder, including assignees, pledgees and participants, of the Note or any interest therein. Nothing in this Section 9.7 may be construed to authorize Trustor to make or participate in a Transfer prohibited by the terms of this Deed of Trust, including, without limitation, the provisions of Section 6.14 hereof.

9.8.  Disclaimers.

(a)  Relationship.  The relationship of Trustor and Lender under this Deed of Trust and the other Loan Documents is, and shall at all times remain, solely that of Trustor and Lender; and Lender neither undertakes nor assumes any responsibility or duty to Trustor or to any third party with respect to the Property. Notwithstanding any other provisions of this Deed of Trust and the other Loan Documents: (i) Lender is not, and shall not be construed to be, a partner, joint venturer, member, alter ego, manager, controlling person or other business associate or participant of any kind of Trustor, and Lender does not intend to ever assume such status; (ii) Lender's activities in connection with this Deed of Trust and the other Loan Documents shall not be "outside the scope of activities of a Lender of money" within the meaning of California Civil Code Section 3434 as amended or recodified from time to time, and Lender does not intend to ever assume any responsibility to any person for the quality, suitability, safety or condition of the Property; and (iii) Lender shall not be deemed responsible for or a participant in any acts, omissions or decisions of Trustor; and

(b)  No Liability.  Lender shall not be directly or indirectly liable or responsible for any loss, claim, cause of action, liability, indebtedness, damage or injury of any kind or character to any person

A-36

Security Instrument

HUNTLEY000087

or property arising from any construction on, or occupancy or use of, the Property, whether caused by or arising from: (i) any defect in any building, structure, grading, fill, landscaping or other improvements thereon or in any on-site or off-site improvement or other facility therein or thereon; (ii) any act or omission of Trustor or any of Trustor's agents, employees, independent contractors, licensees or invitees; (iii) any accident in or on the Property or any fire, flood or other casualty or hazard thereon; (iv) the failure of Trustor or any of Trustor's licensees, employees, invitees, agents, independent contractors or other representatives to maintain the Property in a safe condition; or (v) any nuisance made or suffered on any part of the Property.

9.9.    Severability.  Each representation, warranty, promise, covenant, or similar statement by the Trustor contained herein (in each case a "**Statement**") shall constitute a separate Statement upon which the Lender may rely.   Wherever possible, each Statement shall be interpreted in such manner as to be effective and valid under applicable law, but if any Statement of this Deed of Trust shall be prohibited by or invalid under applicable law, such Statement shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such Statement or the remaining Statements of this Deed of Trust.  If and only if a Statement cannot be interpreted in a manner to be valid under applicable law, such Statement deemed to be prohibited or invalid may be reformed to have the meaning as close as possible to the meaning provided in this Deed of Trust, as long as such reformed meaning is consistent with the intent and purpose of this Deed of Trust to benefit Lender's interests regarding (i) full and timely payment and performance of the Secured Obligations and (ii) Lender's protection of its interests in the Property and the Collateral.  Without limiting the preceding provisions of this Section 9.9, if any provision (for the avoidance of doubt, including not only Statements, but other terms of this Deed of Trust that would not be defined as "Statements") of this Deed of Trust is deemed, in a final non-appealable decision, by a competent court with jurisdiction over the parties and the subject matter to be prohibited or unenforceable under applicable law, the particular provision of this Deed of Trust shall be deemed modified so as to constitute a provision conforming as nearly as possible to the void or unenforceable provision while still remaining valid and enforceable under applicable law, and the remaining terms or provisions of this Deed of Trust shall not be affected thereby; however, if and only if, a provision is prohibited by or unenforceable under applicable law and cannot be reformed as contemplated by the preceding clauses of this Section 9.9, such void or unenforceable provision shall be ineffective to the extent it is void or unenforceable and be severed from the rest of this Deed of Trust without, in each case, invalidating this Deed of Trust; adversely affecting the other terms of this Deed of Trust; or limiting the enforceability of this Deed of Trust.

9.10.    Relationship of Articles.  The rights, remedies and interests of Lender under this Deed of Trust established by Article 1 and the security agreement established by Article 4 are independent and cumulative, and there shall not be a merger of any lien created by this Deed of Trust with any security interest created by any other pledge or security agreement, if any exists among the Loan Documents. Lender may elect to exercise or enforce any of its rights, remedies or interests under either or both this Deed of Trust and any other security agreement, if any, as Lender may from time to time deem appropriate. The Assignment of Rents and Leases established by Article 3 is similarly independent of and separate from this Deed of Trust and the Security Agreement and may be enforced separately without adversely affecting the priority or enforceability, in each case, of this Deed of Trust and the lien on the Property it creates.

9.11.    Merger.  No merger shall occur as a result of Lender's acquiring any other estate in, or any other lien on, the Property unless Lender consents to a merger in writing (signed by an officer of Lender holding the title of Executive Vice President or higher).

9.12.    Obligations of Trustor, Joint and Several.  If more than one person has executed this Deed of Trust as "**Trustor**," the obligations of all such persons hereunder shall be joint and several.

9.13.    Separate and Community Property.  Any married person who executes this Deed of Trust as a Trustor agrees that any money judgment that Lender or Trustee obtains pursuant to the terms of this Deed of Trust or any other obligation of that married person secured by this Deed of Trust may be collected by execution upon any separate property or community property of that person.

9.14.    Interpretation and Amendment.  The Loan Documents shall not be modified except by written instrument executed by all parties, and in the case of Lender, to be binding upon Lender, such

A-37

Security Instrument

written instrument must be signed by an officer of Lender holding the title of Executive Vice President or higher. With respect to this Deed of Trust, in addition to complying with the immediately foregoing sentence, to be valid, such amendment must also be recorded in the official records of the county in which the Land is situated, with Lender having expressly authorized such recording in writing. Any reference in any of the Loan Documents to the Property or Collateral shall include all or any part of the Property or Collateral. Any reference to the Loan Documents includes any amendments, renewals or extensions now or hereafter approved by Lender in writing pursuant to the terms hereof. When the identity of the parties or other circumstances make it appropriate, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. Article, section, and sub-section headings used herein are for convenience of reference only, are not part of this Agreement, and are not to affect the construction of or to be taken into consideration in interpreting this Agreement. This Agreement shall be construed without regard to which party drafted this Agreement (it being understood that the parties reject any rule of construction favoring a presumption against the drafter).

9.15. <u>Capitalized Terms</u>. Capitalized terms not otherwise defined herein shall have the meanings set forth in the Loan Documents.

9.16. <u>Successors in Interest</u>. The terms, covenants, and conditions herein contained shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties hereto. The foregoing sentence shall not be construed to permit Trustor to Transfer the Loan, the Property, or any interest it has in either the Loan or the Property, in each case, except as otherwise permitted under this Deed of Trust or the other Loan Documents, including, without limitation, the terms of Section 6.14 hereof.

9.17. <u>Governing Law</u>. This Deed of Trust and the other Loan Documents and the obligations arising hereunder and thereunder shall be governed by, and construed in accordance with, the laws of the State of California applicable to contracts made and performed in California and any applicable federal law, including, to the extent, with respect to Lender's rights and obligations, that federal law preempts the laws of the State of California. Except as provided in the immediately preceding sentence, Trustor hereby unconditionally and irrevocably waives, to the fullest extent permitted by law, any claim to assert that the law of any jurisdiction other than California governs this Deed of Trust and other Loan Documents.

9.18. <u>Consent to Jurisdiction</u>. Trustor irrevocably submits to the Jurisdiction of: (a) any state or federal court sitting in the State of California over any suit, action, or proceeding, brought by Trustor against Lender, arising out of or relating to this Deed of Trust or the Loan; (b) any state or federal court sitting in the state where the Property is located or the state in which Trustor's principal place of business is located over any suit, action or proceeding, brought by Lender against Trustor, arising out of or relating to this Deed of Trust or the Loan; and (c) any state court sitting in the county of the state where the Property is located over any suit, action, or proceeding, brought by Lender to exercise its STATUTORY POWER OF SALE under this Deed of Trust or any action brought by Lender to enforce its rights with respect to the Collateral. Trustor irrevocably waives, to the fullest extent permitted by law, any objection that Trustor may now or hereafter have to the laying of venue of any such suit, action, or proceeding brought in any such court and any claim that any such suit, action, or proceeding brought in any such court has been brought in an inconvenient forum.

9.19. <u>Exhibits</u>. Any and all Exhibits are incorporated into this Deed of Trust by this reference.

9.20. <u>Addresses; Request for Notice</u>. All notices and other communications that are required or permitted to be given to a party under this Deed of Trust shall be in writing, refer to the Loan number, and shall be sent to such party, either by personal delivery, by overnight delivery service, or by certified first-class mail, return receipt requested to the addressee below. All such notices and communications shall be effective upon receipt of such delivery, or if refused or deemed undeliverable, in each case, on the date the first delivery was attempted. The addresses of the parties are set forth on page 1 of this Deed of Trust. Trustor's principal place of business is at the address set forth on page 1 of this Deed of Trust.

Any Trustor whose address is set forth on page 1 of this Deed of Trust hereby requests that a copy of notice of default and notice of sale be delivered to it at that address. Failure to insert an address shall

A-38

Security Instrument

HUNTLEY000089

constitute a designation of Trustor's last known address as the address for such notice. Any party shall have the right to change its address for notice hereunder to any other location within the continental United States by giving thirty (30) days' notice to the other parties in the manner set forth above.

9.21. <u>Counterparts</u>. This Deed of Trust may be executed in any number of counterparts, each of which, when executed and delivered, will be deemed an original and all of which taken together, will be deemed to be one and the same instrument.

9.22. <u>Time is of the Essence</u>. Time is of the essence with respect to all of Trustor's obligations and agreements hereunder regarding, in each case, (i) the payment of money; (ii) where any deadline or period for performance is provided; and (iii) where notice, reports, financial statements, information concerning the Property and its operation, or other information is required to be delivered to Lender.

9.23. <u>Customer Identification - USA Patriot Act Notice</u>. Lender hereby notifies Trustor that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56, signed into law October 26, 2001), as amended (the "**Act**"), and Lender's policies and practices, Lender is required to obtain, verify and record certain information and documentation that identifies Trustor, which information includes the name and address of Trustor and such other information that will allow Lender to identify Trustor in accordance with the Act.

9.24. **<u>Waiver of Jury Trial and Dispute Resolution</u>**.

(a) TO THE FULLEST EXTENT PERMITTED BY LAW, TRUSTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE BY JURY AND WAIVES ANY RIGHT TO TRIAL BY JURY WITH REGARD TO THIS DEED OF TRUST OR ANY OTHER LOAN DOCUMENT, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY TRUSTOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. BENEFICIARY IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY TRUSTOR.

(b) With respect to any Dispute (as defined below) which arises under the terms of this Deed of Trust, the following paragraphs ("**Dispute Resolution Provision**") concern the resolution of any and all controversies or claims between Trustor (including any persons claiming by or through Trustor) and Lender, whether arising in contract or tort or by statute, that arise out of or relate to (i) this Deed of Trust (including any renewals, extensions or modifications) or (ii) any of the other Loan Documents (collectively, a "**Dispute**"); <u>provided, however</u>, in no event may any Collection Action (as defined herein) by Lender be within the meaning of a Dispute.

(i) As used herein, (i) the "**Act**" means the Federal Arbitration Act (Title 9, U.S. Code), and (ii) "**JAMS**" means JAMS (a/k/a JAMS Mediation, Arbitration, ADR Services) or any successor thereto.

(ii) If the Dispute arises from or relates to an obligation to Lender secured by real property located in California, unless all parties consent to submission of the Dispute to binding arbitration as provided below, the Dispute will be resolved as follows: Trustor and Lender will designate a referee (or a panel of referees) selected under the auspices of JAMS in the same manner as arbitrators are selected in proceedings administered under the rules and procedures for the arbitration of financial services disputes of JAMS. The designated referee(s) will be appointed by a court as provided in California Code of Civil Procedure Section 638 and the following related Sections. The referee (or the presiding referee of the panel) will be an active attorney or a retired judge. The award that results from the decision of the referee(s) will be entered as a judgment in

A-39

Security Instrument

HUNTLEY000090

the court that appointed the referee, in accordance with the provisions of California Code of Civil Procedure Sections 644 and 645.

(iii)     This Subsection (iii) of this Section 9.24(b) is itemized by paragraphs with numerals, as follows:

(1)     If and only if both Trustor and Lender so consent, any Dispute shall be resolved by binding arbitration in accordance with the Act. The Act shall apply even though this Deed of Trust provides that it is governed by the law of a specified state; however, the decision of the arbitrators shall be consistent with applicable law, to the extent not preempted by the Act (whether by law or by this Deed of Trust's election of the Act). Arbitration proceedings will be determined in accordance with the Act, the rules and procedures for the arbitration of financial services disputes of JAMS, and the terms of this Dispute Resolution Provision. In the event of any inconsistency, the terms of this Dispute Resolution Provision shall control.

(2)     The arbitration shall be administered by JAMS and conducted in any U.S. state where real or tangible personal property collateral for the Loan is located or, if there is no such collateral, in California. All Disputes shall be determined by one arbitrator; however, if any Dispute exceeds FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00), or if more than one Dispute is made at the same time and cumulatively the Disputes exceed FIVE MLLION AND 00/100 DOLLARS ($5,000,000.00), upon the request of any party, the Disputes shall be decided by three (3) arbitrators. All arbitration hearings shall commence within ninety (90) days of the demand for arbitration and close within ninety (90) days of commencement, and the award of the arbitrator(s) shall be issued within thirty (30) days of the close of the hearing. However, the arbitrator(s), upon a showing of good cause, may extend the commencement of the hearing for up to an additional sixty (60) days. The arbitrator(s) shall provide a concise written statement of reasons for the award. The arbitration award may be submitted to any court having jurisdiction to be confirmed and enforced.

(3)     The arbitrator(s) will have the authority to decide whether any Dispute is barred by the statute of limitations and, if so, to dismiss the arbitration on that basis. For purposes of the application of the statute of limitations, the service on JAMS under applicable JAMS rules of a notice of Dispute is the equivalent of the filing of a lawsuit. Any dispute concerning this arbitration provision or whether a Dispute is arbitrable shall be determined by the arbitrator(s). The arbitrator(s) shall have the power to award legal fees pursuant to the terms of this Deed of Trust.

(c)     This Dispute Resolution Provision shall not limit the right of Lender, in each case, to (v) exercise self-help remedies, when permitted by applicable law, including, without limitation, setoff or acting as an attorney-in-fact to receive Accounts; (w) initiate judicial or non-judicial foreclosure against any real or personal property (e.g., without limitation, the Property and the Collateral, in each case); (x) exercise any judicial or power of sale rights, (y) act in a court of law to obtain an interim remedy, including, without limitation and in each case, injunctive relief, writ of possession or appointment of a receiver, or additional or supplementary remedies, or (z) bring any action for payment. Each of the actions described in the foregoing subclauses (v) through (z) of this Section 9.24(d) shall constitute a "**Collection Action.**"

(d)     The filing of a court action is not intended to constitute a waiver of the right of Lender, including, without limitation, on behalf of the suing party, to require thereafter submission of the Dispute to a referee.

# ARTICLE 10
## WAIVER

To the extent such laws may otherwise apply, Trustor expressly waives any and all laws governing dwellings of one to four units, including but not limited to California Civil Code Section 2898, California Code of Civil

A-40

Security Instrument

HUNTLEY000091

A-41

Procedure 580(b)(a)(3) and any other law for which the legislative intent was to provide certain protection to owners of residential property as opposed to commercial property, including multi-family property of more than four units, regardless of whether a borrower occupied any unit for any purpose.

[Signature page follows]

A-41

Security Instrument

HUNTLEY000092

A-42

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust as of the day and year set forth above.

**TRUSTOR:**

**Huntley Avenue, LLC,**
a California limited liability company

By: _____
Avraham Farzan, Manager for Huntley Avenue, LLC

*Abraham FARZAN*

A-42

Security Instrument

HUNTLEY000093

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _California_
County of _Los Angeles_

On _November 1, 2022_, before me, _Leslie Flores_ , a notary public, personally appeared **AVRAHAM FARZAN** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _California_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

> LESLIE FLORES
> Notary Public - California
> Los Angeles County
> Commission # 2351348
> My Comm. Expires Mar 14, 2025

A-43

Security Instrument

HUNTLEY000094

# EXHIBIT A

The land referred to is situated in the County of Los Angeles, City of Culver City, State of California, and is described as follows:

PARCEL 1 (DD 76861-01 -01)

ALL OF LOT 144 AND A PORTION OF LOT 145 OF TRACT MAP NO. 7026, IN THE CITY OF CULVER CITY, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON MAP RECORDED IN BOOK 79 PAGE 42 OF MAPS, ACQUIRED BY THE STATE OF CALIFORNIA AS STATE PARCEL NO. 76861 RECORDED APRIL 3, 2003 AS INSTRUMENT NO. 03-0941023 OF OFFICIAL RECORDS, AND STATE PARCEL 76862 RECORDED OCTOBER 24, 2002 AS INSTRUMENT NO. 02-2508778 OF OFFICIAL RECORDS, ALL IN THE OFFICE OF THE REGISTRAR-RECORDER/COUNTY CLERK OF SAID COUNTY.

PARCEL 2 (76861-1 AND 76862-1)

EXCEPTING A HIGHWAY EASEMENT UNTO THE STATE OF CALIFORNIA, ITS SUCCESSORS AND ASSIGNS, OVER THOSE PORTIONS OF LOTS 144 AND 145 OF TRACT MAP NO. 7026, IN THE CITY OF CULVER CITY, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON MAP RECORDED IN BOOK 79 PAGE 42 OF MAPS, ACQUIRED BY THE STATE OF CALIFORNIA AS STATE PARCEL NO. 76861 RECORDED APRIL 3, 2003 AS INSTRUMENT NO. 03-0941023 OF OFFICIAL RECORDS, AND STATE PARCEL 76862 RECORDED OCTOBER 24, 2002 AS INSTRUMENT NO. 02-2508778 OF OFFICIAL RECORDS, ALL IN THE OFFICE OF THE REGISTRAR-RECORDER/COUNTY CLERK OF SAID COUNTY, LYING SOUTHWESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT THE MOST SOUTHERLY CORNER OF LOT 143 OF SAID TRACT, SAID CORNER BEING ON THE NORTHEASTERLY LINE OF HUNTLEY AVENUE, 50 FEET WIDE, AS SHOWN ON SAID TRACT MAP; THENCE ALONG SAID NORTHEASTERLY LINE NORTH 53° 35' 33" WEST, 6.160 METERS (20.21 FEET) TO THE BEGINNING OF A NON-TANGENT CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 13.564 METERS (44.50 FEET), TO WHICH BEGINNING OF CURVE A RADIAL BEARS SOUTH 62° 46' 46" WEST; THENCE NORTHERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 42° 34' 48", AN ARC DISTANCE OF 10.080 METERS (33.07 FEET) TO A POINT ON THE NORTHWESTERLY LINE OF SAID LOT 143, SAID POINT BEING 6.023 METERS (19.76 FEET) FROM THE MOST WESTERLY CORNER OF SAID LOT 143; THENCE CONTINUING ALONG SAID NORTHWESTERLY LINE NORTH 34° 13' 31" EAST, 4.656 METERS (15.28 FEET) TO THE BEGINNING OF A CURVE CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 13.944 METERS (45.75 FEET), TO WHICH BEGINNING OF CURVE A RADIAL BEARS SOUTH 72° 55' 16" EAST; THENCE NORTHERLY AND WESTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 135° 45' 14", AN ARC DISTANCE OF 33.038 METERS (108.39 FEET); THENCE NORTH 55° 46' 34" WEST, 1.701 METERS (5.58 FEET) TO A POINT ON THE NORTHWESTERLY LINE OF SAID LOT 145, SAID POINT BEING SOUTH 34° 13' 26" WEST, 22.895 METERS (75.11 FEET) FROM THE MOST NORTHERLY CORNER OF SAID LOT 145 AND THE END OF DESCRIBED LINE.

APNs: 4215-017-041 and 4215-017-042

HUNTLEY000095

# Exhibit C

HUNTLEY000096

THIS ALLONGE IS TO BE ATTACHED TO AND MADE AN INTEGRAL PART of the following instrument:

Note:    Secured Promissory Note
Dated:    November 1, 2022
Made by:   Huntley Avenue, LLC, a California limited liability company
Payable to the Order of: Axos Bank
Original Principal Amount: One Million Six Hundred Thousand and 00/100 Dollars
        ($1,600,000.00)

PAY TO THE ORDER OF CLI FUND 2 LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, WITHOUT RECOURSE AND WITHOUT REPRESENTATION OR WARRANTY, EXPRESS, IMPLIED OR BY OPERATION OF LAW, OF ANY KIND AND NATURE WHATSOEVER, EXCEPT AS SET FORTH IN SECTION 3.01 OF THAT CERTAIN NON-RESIDENTIAL MORTGAGE LOAN PURCHASE AND SALE AGREEMENT DATED AS OF SEPTEMBER 17, 2024 BETWEEN THE UNDERSIGNED AND CLI FUND 2 LLC.

[SIGNATURE ON NEXT PAGE]

HUNTLEY000097

**AXOS BANK**

By: _____

Name:  Thomas Constantine

Title:  EVP and Chief Credit Officer

Dated this 17th day of September, 2024

SIGNATURE PAGE
-1-

ALLONGE

HUNTLEY000098

# Exhibit D

HUNTLEY000099



**This page is part of your document - DO NOT DISCARD**



# 20250086603



**Pages:
0006**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

## 02/11/25 AT 08:00AM

| | |
|---|---|
| FEES: | 100.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 325.00 |



**L E A D S H E E T**



202502110270027

00025222399



015135201

**SEQ:
03**

**SECURE - 8:00AM**





**THIS FORM IS NOT TO BE DUPLICATED**

E656375



2676024789
HUNTLEY000100

RECORDING REQUESTED BY:
OLD REPUBLIC TITLE COMPANY


AND WHEN RECORDED MAIL TO:
CLI Fund 2 LLC
2625 Alcatraz Avenue #513,
Berkeley, California 94705

2676024067-48

SPACE ABOVE THIS LINE FOR RECORDER'S USE


## Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing

HUNTLEY000101

RECORDING REQUESTED BY:
OLD REPUBLIC TITLE COMPANY


AND WHEN RECORDED MAIL TO:
CLI Fund 2 LLC
2625 Alcatraz Avenue #513,
Berkeley, California 94705

267602 24067-48

SPACE ABOVE THIS LINE FOR RECORDER'S USE


## Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing

HUNTLEY000102

*Record & Return to:*

CLI FUND 2 LLC
2625 Alcatraz Avenue #513,
Berkeley, California 94705

2676 24067-48                                                    THIS SPACE ABOVE FOR RECORDER'S USE

## ASSIGNMENT OF DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

FOR VALUE RECEIVED, **AXOS BANK®**, a federally chartered savings association (**"Assignor"**) does hereby grant, sell, assign, transfer and convey, unto **CLI FUND 2 LLC**, a California limited liability company (**"Assignee"**), whose address is: 2625 Alcatraz Avenue #513, Berkeley, California 94705, without recourse and without warranty or representation other than as expressly set forth in Section 3.01 of that certain Non-Residential Mortgage Loan Purchase and Sale Agreement dated as of September 17, 2024, between Assignor and Assignee, all of Assignor's right, title and interest in, to and under that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of November 1, 2022, executed by Huntley Avenue, LLC, a California limited liability company (**"Trustor"**), as trustor, in favor of First American Title Insurance Company, as trustee, for the benefit of Axos Bank, as beneficiary (**"Original Beneficiary"**), recorded on November 14, 2022, as Document No. 20221068698 in the Official Records of Los Angeles County, California (the **"Deed of Trust"**).

TOGETHER WITH: (i) the note(s) described or referred to in the Deed of Trust, the money due or to become due thereon with interest, and all rights accrued or to accrue thereunder.

This Assignment is an absolute assignment. This Assignment is made by Assignor without recourse, representation or warranty, express or implied, other than as expressly set forth in that certain Non-Residential Mortgage Loan Purchase and Sale Agreement dated as of September 17, 2024 between Assignor and Assignee.

[SIGNATURE PAGE FOLLOWS]

SMRH:4862-4502-7809.2                     -1-                     ASSIGNMENT OF DEED OF TRUST

HUNTLEY000103

IN WITNESS WHEREOF, the undersigned has executed this Assignment of Deed of Trust on September *17* , 2024.

AXOS BANK

By: _____
Name:   Thomas Constantine
Title:   EVP and Chief Credit Officer

Thomas Constantine

SIGNATURE PAGE
-1-

ASSIGNMENT OF DEED OF TRUST

HUNTLEY000104

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _California_ )

COUNTY OF _San Diego_ )

On _Sept. 10th_, 2024, before me, _Jordana Mae Ainslie_, a Notary Public, personally appeared _Thomas Constantine_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

JORDANA MAE AINSLIE
COMM. #2480164
Notary Public · California
San Diego County
My Comm. Expires Jan. 25, 2028

ACKNOWLEDGMENT

-1-

ASSIGNMENT OF DEED OF TRUST

HUNTLEY000105

# TRUE COPY CERTIFICATION

(Government Code 27361.7)

_____Glendale_____, **California**

Place of Execution (City and State)

**I certify under penalty of perjury that this material is a true copy of the original material contained in this document.**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

State of _California_
County of _San Diego_

On _Sept. 10th, 2024_ before me, _Jordana Mae Ainslie_____, Notary Public
personally appeared ___Thomas Constantine_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

eRecording Partners Network

_____10-4-24_____              By:_____

**Date**                        **Signature of Declarant**

_____Miguel Casias_____

**Type or Print Name**

HUNTLEY000106

# Exhibit E

HUNTLEY000107

# A2 Capital, LLC

2625 Alcatraz Avenue, #214, Berkeley, CA 94705
Servicer for CLI Fund 2, LLC

**Payoff Demand - Loan #90099041998 (not valid after 29-Dec-2025)**

To:  Huntley Avenue, LLC                           As of Date:          29-Dec-2025

| | | | |
|---|---|---|---|
| Unpaid Principal Balance: | | $ | 1,600,000.00 |
| Accrued Interest | from 11/19/2024 to 4/23/2025 per diem: $344.44 | $ | 53,388.89 |
| Default Interest | from 4/23/2025 to 12/29/2025 per diem: $800.00 | $ | 200,000.00 |
| Dec 2024 Late Fee | 12/11/2024 | $ | 516.67 |
| Jan 2025 Late Fee | 1/11/2025 | $ | 516.67 |
| Feb 2025 Late Fee | 2/11/2025 | $ | 516.67 |
| Mar 2025 Late Fee | 3/11/2025 | $ | 516.67 |
| Apr 2025 Late Fee | 4/11/2025 | $ | 516.67 |
| Payment Suspense Credit | | $ | (139.86) |
| Escrow Balance | | $ | (28,688.68) |
| Doc Prep, Recording, Reconveyance Fee | | $ | 270.00 |
| Foreclosure & Recision Fees | | $ | 12,120.00 |
| Legal Fees | (continue to accrue) | $ | 107,636.00 |
| **Payoff Total as of** | **29-Dec-2025** | **$** | **1,947,169.68** |

Please make remittance by wire to:

| | |
|---|---|
| ABA Routing No. (Wires only) - | 122287251 |
| Account No. - | 890000181895 |
| Account Name - | A2 Capital, LLC |
| Bank Name - | Axos Bank |
| Bank Address - | 4350 La Jolla Village Dr., Ste 140 San Diego, CA 92122 |

*Please update before payoff.  No Authorization to record reconveyance until funds are wired as specified above.*

By: _____

HUNTLEY000108

# Exhibit F

HUNTLEY000109

# A2 Capital, LLC

2625 Alcatraz Avenue, #214, Berkeley, CA 94705
Servicer for CLI Fund 2, LLC

### Payoff Demand - Loan #90099041998 (not valid after 29-May-2026)

To: Huntley Avenue, LLC                  As of Date:          26-May-2026

| | | | |
|---|---|---|---:|
| Unpaid Principal Balance: | | $ | 1,600,000.00 |
| Accrued Interest | from 11/19/2024 to 4/23/2025 per diem: $344.44 | $ | 53,388.89 |
| Default Interest | from 4/23/2025 to 5/26/2026 per diem: $800.00 | $ | 318,400.00 |
| Dec 2024 Late Fee | 12/11/2024 | $ | 516.67 |
| Jan 2025 Late Fee | 1/11/2025 | $ | 516.67 |
| Feb 2025 Late Fee | 2/11/2025 | $ | 516.67 |
| Mar 2025 Late Fee | 3/11/2025 | $ | 516.67 |
| Apr 2025 Late Fee | 4/11/2025 | $ | 516.67 |
| Payment Suspense Credit | | $ | (139.86) |
| Escrow Balance | | $ | (22,697.20) |
| Doc Prep, Recording, Reconveyance Fee | | $ | 270.00 |
| Foreclosure & Recision Fees | | $ | 12,120.00 |
| Legal Fees | *estimated, continue to accrue* | $ | 223,650.00 |
| **Payoff Total as of** | **26-May-2026** | **$** | **2,187,575.16** |

*Add $800.00 per day after 26-May-2026*

Please make remittance by wire to:

ABA Routing No. (Wires only) -    122287251
Account No. -                     890000181895
Account Name -                    A2 Capital, LLC
Bank Name -                       Axos Bank
Bank Address -                    4350 La Jolla Village Dr., Ste 140
                                  San Diego, CA 92122

*Please update before payoff.  No Authorization to record reconveyance until funds are wired as specified above.*

By: *Vincent Phillips*

Vincent Phillips, COO

HUNTLEY000110